## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  ASBESTOS PRODUCTS LIABILTY LITIGATION (NO. VI) | ) ) ) | |
| This document relates to: | ) ) | |
| Cases from the law firm of Cascino Vaughan Law Offices, Ltd. | ) ) ) | **Civil Action No. MDL 875** |
| U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN, MADISON DIVISION | ) ) ) ) | |
| Suoja v. Owens-Illinois, Inc., et al., No. 99-0475 | ) ) | |

### NOTICE OF FILING

**PLEASE TAKE NOTICE** that on April 3, 2008, Defendant Owens-Illinois, Inc. filed with the above-captioned court its **Motion to Quash Plaintiff's Notice of Deposition and Rider**.

### CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a true and correct copy of this Notice and Defendant Owens-Illinois, Inc.'s **Motion to Quash Plaintiff's Notice of Deposition and Rider** was served upon Plaintiff's counsel via facsimile and regular mail on April 3, 2008.

_____
One of the attorneys for Owens-Illinois, Inc.

Robert H. Riley
Matthew J. Fischer
Renee C. Kelley
**SCHIFF HARDIN LLP**
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6473
Phone:        (312) 258-5500
Facsimile:   (312) 258-5600

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:  ASBESTOS PRODUCTS<br>LIABILTY LITIGATION (NO. VI)<br><br>This document relates to:<br><br>Cases from the law firm of<br>Cascino Vaughan Law Offices, Ltd.<br><br>U.S. DISTRICT COURT FOR THE<br>WESTERN DISTRICT OF WISCONSIN,<br>MADISON DIVISION<br><br>Suoja v. Owens-Illinois, Inc., et al.,<br>No. 99-0475 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)       Civil Action No. MDL 875<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

**DEFENDANT OWENS-ILLINOIS, INC.'S OBJECTIONS AND**
**MOTION TO QUASH**
**PLAINTIFF'S NOTICE OF DEPOSITION AND RIDER**

---

**NOW COMES** Defendant Owens-Illinois, Inc. ("Owens-Illinois") and for its Objections and Motion to Quash Plaintiff's Notice of Deposition and Rider, states the following:

1.  Plaintiff filed her complaint in this matter on August 5, 1999, in the United States District Court for the Western District of Wisconsin, alleging that her Decedent Oswald F. Suoja ("Decedent") contracted mesothelioma as a result of his alleged exposure to asbestos "at various job sites" in Wisconsin during his career as "an asbestos worker."

2.  The complaint named Owens-Illinois and T&N Ltd., f/k/a T&N PLC, as Defendants.   Plaintiff asserted products liability and conspiracy claims

against the Defendants and claims for loss of consortium and punitive damages.

3.  Owens-Illinois manufactured an asbestos containing insulation product called Kaylo in commercial quantities from 1948 to 1958.  In 1958, it sold that business to Owens Corning Fiberglass Corporation, a separate company.  Between 1953 and April 30, 1958, Owens Corning Fiberglass was a distributor of kaylo manufactured by Owens-Illinois.

4.  Exhibit B to Plaintiff's complaint alleges that Decedent worked as follows:

| 1951-52 | Indiana Michigan Power Co. | Lawrenceburg, Indiana |
|---------|---------------------------|-----------------------|
| 1952-54 | Milwaukee House of Correction | Milwaukee, Wisconsin |
| 1954-56 | Badger Ordnance Works | Baraboo, Wisconsin |
| 1970's | Sundstrand | Rockford, Illinois |

There are no other allegations of exposure.  There are no witnesses disclosed to provide any factual basis for Plaintiff's claims.

5.  This case was transferred from the Western District of Wisconsin to the Eastern District of Pennsylvania's Asbestos MDL No. 875.  Plaintiff filed a Motion to Suggest Remand on February 20, 2008.  That motion has not been ruled upon.

6.  On March 31, 2008, counsel for Owens-Illinois received, via U.S. mail, Plaintiff's Notice of Deposition "pursuant to Federal Rules of Civil Procedure Rules 26 and 30" of "the person(s) described on the attached Rider," to be taken on April 10, 2008, at 10:00 a.m. in Chicago, Illinois. The Rider states in full:

> The deponent's name is unknown.  The deponent(s) shall be a corporate representative familiar with the records that Owens Corning provided to Owens-Illinois for sales and/or shipments of asbestos.  The deponent shall be able to identify all such records and testify as to what was turned over to Owens Illinois and provide details relating to those records.

A copy of the Notice is attached as Exhibit A.

7.   Owens-Illinois objects to the Notice and Rider as improper and defective in a number of ways, and asks that this Court quash the Notice and Rider.

8.   First, Plaintiff presumes that Owens Corning provided records to Owens-Illinois "for sales and/or shipments of asbestos."  Owens-Illinois has never sold or shipped asbestos to customers.  Asbestos was sold and shipped to Owens-Illinois and used as a material in the production of Kaylo products, but Owens-Illinois was never a commercial seller or shipper of asbestos.  Moreover, Owens-Illinois is unaware that any usable records relating to the sales or shipment of Kaylo were provided to it by Owens Corning.  In fact, Owens-Illinois tried to get the Owens Corning database in a usable form from Owens Corning but was unable to do so, as indicated in the attached transcript (Exhibit B).  Plaintiff's notice thus requests information possessed not by Owens-Illinois, but by Owens Corning Fiberglass.  Plaintiff may obtain the information from that source.

9.   Second, Plaintiff's request is grossly overbroad.  Of the four job sites identified by Plaintiff as relevant to this lawsuit, only two – The Milwaukee House of Corrections between 1952 and 1954 and Badger

Ordinance Works between 1954 and 1956 – could possibly be relevant. Nonetheless, Plaintiff wishes to conduct discovery of Owens-Illinois without any limitation in scope, time or geography.  Plaintiff asks for discovery of nationwide sales over a unilateral period of time. Accordingly, Plaintiff's request is not reasonably calculated to lead to admissible evidence.

10.    Third, Plaintiff's counsel entirely failed to confer with Defendant's counsel as to the time, location, or availability of the witness(es) for deposition.  Plaintiff's counsel made no attempt to determine whether an Owens-Illinois "corporate representative" was available to be deposed on April 10 and no attempt to determine whether such a representative would be available in Chicago on that date.

11.    Fourth, the Notice is defective because, although it refers generically to "Rule 30," it fails to specify whether Plaintiff seeks to take the deposition pursuant to Rule 30(b)(1) or to Rule 30(b)(6).   *See Sears v. Amer. Entertainment Group, Inc.,* No. 94-C-0165, 1995 WL 66411, at *1 (N.D. Ill. Feb. 13, 1995)(holding notice of deposition was defective because it failed to specify whether deposition taken pursuant to Rule 30(b)(1) or 30(b)(6) and did not designate whether deponents were to testify on behalf of corporation or in their individual capacities).

12.    Under Rule 30(b)(6), the proper procedure is to name the corporation as the deponent and request that it designate one or more employees to testify on its behalf.  Fed. R. Civ. P. 30(b)(6); *see Payne v. McKune,* No.

06-3010-JWL, 2007 WL 3036190, at *1 (D. Kan. Oct. 16, 2007)(motion to quash granted where notice and subpoena did not designate the corporate party as the deponent but rather designated "unnamed corporate officers"); *compare* Fed. R. Civ. P. 30(b)(1) ("If the [deponent's] name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs."). Plaintiff's Notice does not name Owens-Illinois as the deponent.

13. In contrast to a Rule 30(b)(6) deposition, a witness whose deposition is noticed pursuant to Rule 30(b)(1) generally testifies in his individual capacity, even if the witness is an employee of the defendant corporation. *See Sears,* 1995 WL 66411, at *1. Only an officer, director, or managing agent of a defendant corporation can provide testimony that will bind the corporation in a Rule 30(b)(1) deposition. *See id.; Stone v. Morton Int'l, Inc.,* 170 F.R.D. 498, 502-03 (D. Utah 1997).

14. Further, if Plaintiff seeks to depose pursuant to Rule 30(b)(1) a corporate employee or agent who is not an officer, director, or managing agent, Plaintiff's Notice is defective because it must be accompanied by a subpoena pursuant to Fed. R. Civ. P. 45. *See Stone,* 170 F.R.D. at 503 (only officers, directors, and managing agents are subject to deposition by notice).

15. Moreover, if Plaintiff in fact seeks to depose an Owens-Illinois corporate representative pursuant to Rule 30(b)(6), the deposition must proceed at

Owens-Illinois' principal place of business, in Toledo, Ohio, unless Plaintiff demonstrates that "unusual circumstances" justify conducting the deposition in another location. *See, e.g., Tailift USA, Inc. v. Tailift Co., Ltd.,* No. 03-CV-0196-M, 2004 WL 722244, at *1-2 (N.D. Tex. Mar. 26, 2004)(plaintiff's burden to show peculiar circumstances justify taking a corporate representative's deposition in a location other than principal place of business); *Sears,* 1995 WL 66411, at *1 (corporation's objection to a deposition noticed for a location other than its principal place of business should be sustained unless plaintiff shows unusual circumstances justify such an inconvenience to the corporation). Such circumstances do not exist here, and Plaintiff cannot establish that they do, nor has she attempted to do so.

16. Owens-Illinois also objects to the Notice and Rider, and asks the Court to quash same, on the basis that Plaintiff is abusing the deposition procedures and is seeking discovery in a manner that is unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i), the Court may limit the extent of discovery which "can be obtained form some other source that is more convenient, less burdensome, or less expensive." Plaintiff has not even attempted to use the significantly less expensive, less burdensome mechanism of interrogatories to seek information about "the records that Owens Corning provided to Owens-Illinois for sales and/or shipments of asbestos." Owens Corning is on record as being willing to answer specific requests with the advantage of its searchable

database.   That less expensive and more reasonable option can and should be pursued.

**WHEREFORE,** Defendant Owens-Illinois respectfully requests that this Court quash Plaintiff's Notice of Deposition and Rider, and grant Owens-Illinois all other appropriate relief.


**SCHIFF HARDIN LLP**

By: _____
     One of the Attorneys for Defendant
     OWENS-ILLINOIS, INC.

Robert H. Riley
Matthew J. Fischer
Renee C. Kelley
**SCHIFF HARDIN LLP**
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6473
Phone:      (312) 258-5500
Facsimile:  (312) 258-5600

CH2\2419231.1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

This Document Relates To:

Cases from the law firm of
Cascino Vaughan Law Offices, Ltd.

U.S. DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN,
MADISON DIVISION

Suoja v. Owens-Illinois, et al.,
Case No. 99-0475



Civil Action No.  MDL 875

### NOTICE OF DEPOSITION

TO:     Robert Riley
        Schiff Hardin LLP
        233 S Wacker Drive
        Chicago, IL 60606

        PLEASE TAKE NOTICE that the deposition of the person(s) described on the attached

Rider  will be taken pursuant to Federal Rules of Civil Procedure Rules 26 and 30, before a court

reporter, on April 10, 2008, at 10:00 a.m. at Cascino Vaughan Law Offices, 220 South Ashland

Avenue, Chicago, Illinois.

Michael P. Cascino
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Ave.
Chicago, IL 60607
(312) 944-0600

## **RIDER**

The deponent's name is unknown.  The deponent(s) shall be a corporate representative familiar with the records that Owens Corning provided to Owens-Illinois for sales and/or shipments of asbestos.  The deponent shall be able to identify all such records and testify as to what was turned over to Owens Illinois and provide details relating to these records.



## CERTIFICATE OF SERVICE

I hereby certify under penalties as provided under 28 U.S.C. Sec. 1746 that I served this

Notice of Deposition to Owens-Illinois upon the attorney listed below by depositing a true and

correct copy of same in the U.S. mail, with proper postage prepaid, at 220 S. Ashland Ave.,

Chicago, IL 60607, on March 11, 2008.

Robert Riley
Schiff Hardin LLP
233 S Wacker Drive
Chicago, IL 60606

RECEIVED
MAR 1 2 2008

_Arlene J. Kaminski_

Arlene J. Kaminski

Michael P. Cascino
Cascino Vaughan Law Offices
220 S. Ashland Ave.
Chicago, IL 60607
(312) 944-0600
mcascino@cvlo.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

This Document Relates To:

Cases from the law firm of
Cascino Vaughan Law Offices, Ltd.

U.S. DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN,
MADISON DIVISION

Suoja v. Owens-Illinois, et al.,
Case No. 99-0475



Civil Action No. MDL 875

### REQUEST FOR PRODUCTION OF DOCUMENTS TO OWENS-ILLINOIS

Now comes Plaintiff, Delores Suoja, individually and as special administrator for the

estate of Oswald F. Suoja, by one of her attorneys, Michael P. Cascino, and pursuant to Federal

Rules of Civil Procedure Rules 26 and 34, requests defendant Owens-Illinois to produce the

following documents. Said documents are to be produced within 30 days of service at Cascino

Vaughan Law Offices, Ltd., 220 S. Ashland Avenue, Chicago, IL 60607, or such location as

mutually agreed upon by counsel.

### PRIVILEGE

1.     Identify all documents for which privilege is claimed and state the basis for the claim.

### REQUEST FOR PRODUCTION

1.     All documents including invoices that were given to Owens-Illinois by Owens Corning

for sales and/or shipment of asbestos during the years 1951 through 1980 to the job sites

listed on Exhibit "A."

2.   All documents including affidavits of asbestos exposure used for settlements of asbestos

claims and all depositions in Owens-Illinois' possession which concern the job sites listed

on Exhibit "A" during the period of 1951 through 1984.  This does not seek affidavits

provided by the Cascino Vaughan law firm).

3.   All batch records for Kaylo production during the time period of 1951 through 1958.


_____

One of Plaintiff's Attorneys


Michael P. Cascino
Cascino Vaughan Law Offices
220 S. Ashland Avenue
Chicago, Illinois 60607
(312) 944-0600


2



RECEIVED
MAR 1 2 2008

## Verified Work History

I, Gary Suoja being duly sworn, according to law, depose and state as follows:

1. My name is Gary Suoja, and my social security number is 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. I reside at 4880 90th Place SE, Mercer Island, WA 98040. Oswald F. Suoja was my Father and his social security number was 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.
   (Relation)

2. To the best of my recollection, Oswald F. Suoja worked as an asbestos worker at the following sites:

| Site | City | State | First Year at Site | Last Year at Site |
|------|------|-------|--------------------|-------------------|
| Badger Ordnance Works | Baraboo | WI | 1954 | 1956 |
| Barber Colman | Rockford | IL | 1953 | 1984 |
| Borg Warner | Ottawa | IL | 1953 | 1984 |
| Commonwealth Edison | Joliet | IL | 1953 | 1984 |
| Dean Foods Company | Harvard | IL | 1953 | 1984 |
| Del Monte Corp | Rochelle | IL | 1953 | 1984 |
| Greenlee Tool | Rockford | IL | 1953 | 1984 |
| Kelsey-Hayes-Gunite Division | Rockford | IL | 1953 | 1984 |
| Litton/ Gardner Machine Shop | South Beloit | IL | 1953 | 1984 |
| Milwaukee House Of Correction | Milwaukee | WI | 1952 | 1954 |
| Quaker Oats | Rockford | IL | 1953 | 1984 |
| Rochelle Company Generating Company | Rochelle | IL | 1953 | 1984 |
| Rockford Drop Forge | Rockford | IL | 1953 | 1984 |
| Rockford Memorial Hospital | Rockford | IL | 1953 | 1984 |
| Sundstrand | Rockford | IL | 1950s | 1970s |
| Tanners Creek Power Station | Lawrenceburg | IN | 1951 | 1952 |
| Truck Components Gunite | Rockford | IL | 1953 | 1984 |
| Warner Lambert | Rockford | IL | 1953 | 1984 |
| White Sundstrand | Belvedere | IL | 1953 | 1984 |

Further Affiant Sayeth Naught.

Subscribed and sworn to before me
this 19th day of Dec , 2006

_____
Notary Public

Kathleen C. McCusker
Commission Expires
Notary Public
12-09-09
State Of Washington

_____
Signature
Personal Representative of
Oswald F. Suoja

*Exhibit "A"*

## CERTIFICATE OF SERVICE

I hereby certify under penalties as provided under 28 U.S.C. Sec. 1746 that I served this Request for Production of Documents upon the attorney listed below by depositing a true and correct copy of same in the U.S. mail, with proper postage prepaid, at 220 S. Ashland Ave., Chicago, IL 60607, on March 11, 2008.

       Robert Riley
       Schiff Hardin LLP
       233 S Wacker Drive
       Chicago, IL 60606

                                    Arlene J. Kaminski

Michael P. Cascino
Cascino Vaughan Law Offices
220 S. Ashland Ave.
Chicago, IL 60607
(312) 944-0600
mcascino@cvlo.com



RECEIVED
MAR 1 2 2008

3

# EXHIBIT B

Owens

FILED

2002 NOV 12 PM 1:

1
2
UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

BANKRUPTCY COURT
DISTRICT OF DELAWARE

3
4
5
6
IN RE:                              .        Chapter 11
                                    .
Owens Corning, et al.,              .
                                    .
        Debtor(s).                  .     · Bankruptcy #00-03837 (JKF)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

7
8
Wilmington, DE
October 28, 2002
3:00 p.m.

9
10
TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

11
12
APPEARANCES:

13
14
For Debtor(s):                  Kate Stickles, Esq.
                                Saul, Ewing, LLP
                                222 Delaware Ave.
                                Wilmington, DE 19899

15
16
                                Charles O. Monk, II, Esq.
                                Saul, Ewing, LLP
                                100 South Charles Street
                                Baltimore, MD 21201

17
18
19
                                William A. DeStefano, Esq.
                                Saul, Ewing, LLP
                                Centre Sq. West
                                1500 Market st.-38th Fl.
                                Philadelphia, PA 19102

20
21
22
                                Mary Beth Hogan, Esq.
                                Debevoise & Plimpton
                                919 Third Ave.
                                New York, NY 10022

23
24
25

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-329-0191*



2

```
 1    For Owens Illinois:            Paul Bradley, Esq.
                                     McCarter & English
 2                                   919 N. Market Ste.
                                     Wilmington, DE 19899
 3
      For Bank of America:           Eric Sutty, Esq.
 4                                   The Bayard Firm
                                     222 Delaware Ave.-Ste. 900
 5                                   Wilmington, DE 19899

 6                                   Josef Athanas, Esq.
                                     Latham & Watkins
 7                                   Sears Tower
                                     233 South Wacker Dr.-Ste. 5800
 8                                   Chicago, IL 60606

 9    For New York Packaging:        Richard Parks, Esq.
      Corporation                    McDonald, Illig, Jones
10                                   & Britton, LLP
                                     100 State St.-Ste. 700
11                                   Erie, PA 16507

12    For Creditor's Committee:      William Sudell, Esq.
                                     Morris, Nichols, Arsht
13                                   & Tunnell
                                     1201 North Market Street
14                                   Wilmington, DE 19899

15                                   James I. McClammy, Esq.
                                     Davis, Polk & Wardwell
16                                   450 Lexington Ave.
                                     New York, NY 10017
17
                                     Laura Jankolovits, Esq.
18                                   Mayer, Brown, Rowe
                                     & Maw
19                                   190 South LaSalle St.
                                     Chicago, IL 60603
20
      For Futures:                   Edmund M. Emrich, Esq.
21                                   Kaye, Scholer, LLP
                                     425 Park Ave.
22                                   New York, NY 10022

23

24

25
```

3

```
 1                                      Sharon Zieg, Esq.
                                        Young, Conaway, Stargatt
 2                                      & Taylor, LLP
                                        The Brandywine Bldg.
 3                                      1000 West St.~17th Fl.
                                        Wilmington, DE 19801
 4
      For Official Committes of:        Walter Slocombe, Esq.
 5    Asbestos Claimants                Caplin & Drysdale
                                        One thomas Circle, N.W.
 6                                      Washington, DC 20005

 7                                      Marla R. Eskin, Esq.
                                        Campbell & Levine, LLC
 8                                      1201 North Market St.~Ste. 1501
                                        Wilmington, DE 19801
 9
      Special Counsel For:              Brian J. McLaughlin, Esq.
10    Creditor's Committee              Walsh, Monzack & Monaco, PA
                                        1201 Orange st.~Ste. 400
11                                      Wilmington, DE 19801

12                                      John Berringer, Esq.
                                        Anderson, Kill & Olick
13                                      1251 Ave. of the Americas
                                        New York, NY 10020
14
      For U.S. Trustee:                 Frank J. Perch, III, Esq.
15                                      U.S. Trustee's Office
                                        844 King Street-Ste. 2313
16                                      Lock Box 35
                                        Wilmington, DE 19801
17
      Audio Operator:                   Sherry Scaruzzi
18
      Transcribing Firm:                Writer's Cramp, Inc.
19                                      6 Norton Rd.
                                        Monmouth Jct., NJ 08852
20                                      732-329-0191

21    Proceedings recorded by electronic sound recording, transcript
      produced by transcription service.
22

23

24

25
```

4

1    THE COURT:  Ready in _Owens_?  Okay.

2    (Pause in proceedings)

3    THE COURT:  I guess we're waiting for a few people to

4  call in, but maybe we can get a couple of entries of

5  appearances.  Mr. Glassman and Mr. Winiarski?

6    MS. STICKLES:  Mr. Winarski will not be appearing

7  now, Your Honor, unless his appearance becomes necessary.  So

8  I believe the only person appearing telephonically is Mr.

9  Glassman.

10    THE COURT:  Okay.  Well, he should be calling in

11  shortly, so go ahead and enter you appearance and we'll see --

12    MS. STICKLES:  Good afternoon, Your Honor.  Kate

13  Stickles on behalf of Owens Corning, et al.  With me today is

14  Charles Monk from Saul, Ewing, as well as William DeStefano

15  from Saul, Ewing, and also with the Debtors is Mary Beth

16  Hogan, from the Debevoise lawfirm.

17    THE COURT:  All right.  Anyone on this side want to

18  enter appearances, or only if you speak?

19    ALL:  (No verbal response).

20    THE COURT:  Okay.  If you speak, then tell me your

21  name before you do, please.  Can we deal with anything without

22  Mr. Glassman?

23    ALL:  (No verbal response).

24    THE COURT:  Well, I guess I can tell you what I've

25  taken care of.  All right.

1  I have entered Orders as they were presented in the

2  hearing binders, on Items #7 through 13.  And also, 1 and 2.

3  I have entered Orders.  I have not yet found that -- an Order

4  with respect to Item #1, that you indicated has not hit the

5  docket yet, so I'm still looking to see what happened.  I

6  thought I signed that at the last hearing, but apparently it

7  hasn't made the docket, so I'll be contacting you if I can't

8  find it, to get another copy of it.  But in any event, I've

9  entered the seventh Order, which is the one that you sent in

10  with the CNO, but I'm still looking for the sixth.  Okay.

11  That's on agenda #1.

12  On agenda #4, I entered the First Supplemental Order

13  that you sent to the hotel.  On agenda #5, I entered the Order

14  that permits the reply brief.  On agenda #14, I added a "So

15  Ordered" line to the Notice of Withdrawal of that motion.  On

16  agenda #15, I signed an Order --

17  (The Court locates document)

18  THE COURT:  -- oh.  The one that was attached to the

19  Certification of the Counsel.  That permits the Debtor to

20  extend and modify the D-I-P financing term.

21  Also, continued for hearing according to the agenda,

22  despite the Orders that I've entered, are item numbers 1, 2,

23  3, 4 and 6.  On 3, you told me that a stipulation is due.  I

24  don't know whether you have that today, or if that's something

25  you're going to be filing.

6

1    MS. STICKLES:  Your Honor, that stipulation will be

2  filed.  It's not complete yet.

3    THE COURT:  Okay.  So, then, for hearing today,

4  according to what I understand, I should be have -- have

5  hearings on items 5, 16, 17 and the status report on 18.

6    MS. STICKLES:  That is your correct -- that is

7  correct, Your Honor.  As I can tell from the docket, all of

8  the Orders you've signed have been docketed except for the

9  Order with regard to agenda item 10.

10    THE COURT:  Miss Bello indicated right at lunch time

11  that she hadn't gotten that one done yet.  That there was one.

12  She didn't tell me the number.  But wait, I'm not sure I

13  entered one on 10.  Yes, I did.  6 through 13.  That must be

14  the one that she hasn't -- hadn't gotten as of lunch time.  So

15  it should be on today.

16    MS. STICKLES:  Thank you, Your Honor.  Then without

17  further comment, I'd like to turn the podium over to Owens-

18  Illinois counsel for agenda item 5, which is that Motion to

19  Lift Stay.

20    THE COURT:  Do we need Mr. Glassman for this?

21    MR. ATHANAS:  Your Honor, I'm Joe Athanas, I

22  represent McNamara, Diamond, Mr. Glassman's lead counsel.  We

23  don't need him.

24    THE COURT:  All right.  Thank you.

25    MS. STICKLES:  Thank you.

7

1        (Counsel steps forward)

2            MR. BRADLEY:  Good afternoon, Your Honor.

3            THE COURT:  Good afternoon.

4            MR. BRADLEY:  Paul Bradley on behalf of Owens-

5    Illinois.  Owens-Illinois has asked the Court to lift the stay

6    so that it can obtain, in essence, sales invoices for Owens

7    Corning Kalo product from 1953 through about 1972.  These

8    invoices are contained on CD-ROMs and the controversy is

9    resolved in some part, because Owens Corning agreed to produce

10   the 16 CD-ROMs that have the actual invoices on them, as well

11   as allow access in the event that we need hard copies, if for

12   some reason they're illegible.

13       The one remaining contention is that they should not

14   be required to produce the -- I believe it's a CD that has the

15   database on it.  The database is the critical part of the

16   entire set, which allows anyone using the 16 CDs to perform a

17   search to find out, for instance, where a Kalo product was

18   shipped in a period of time from '53 to '72, and without that

19   ability to search the CDs, they're, in essence, useless.

20   We're talking about over -- or approximately 100,000 documents

21   that are contained on this 16-CD set.

22       In the papers, Owens Corning has alleged that

23   production of this database is protected by the Work Product

24   Doctrine by opinion work product.  And our position is that it

25   is not covered by opinion work product, that, indeed, if there

8

1   is opinion work product on this database somehow, then they

2   are free to redact it.  We don't want that information.  What

3   we want is what you might call the objective fields which show

4   where the product was shipped to, the dates that it was

5   shipped, the purchaser, if that's identified.

6         At best, it could be characterized as factual work

7   product, because they did prepare it at some point, I think,

8   during the course of the asbestos personal injury litigation,

9   and in that respect there's obviously substantial need by my

10  client.  My client is still involved in thousands of personal

11  injury cases that are pending throughout the United States,

12  and they need the information in order to defend themselves

13  against certain allegations of product exposure.  For

14  instance, a plaintiff claims he was exposed at Plant A in

15  Wilmington, Delaware, and this database can be used to

16  demonstrate that Kalo was not shipped to that particular site

17  during the relevant years for Owens-Illinois, which would be

18  the period of time of '53 to 1958 in these circumstances.  So,

19  therefore, it's obviously a very important tool that could be

20  used by Owens-Illinois.

21        Also, it -- the plaintiffs in the cases -- obviously,

22  the events that we're talking about occurred in the 1950s so

23  these events occurred 40 and 50 years ago, and their

24  recollection at this point in time about what product was

25  shipped where or whether it was present at a site that they

1  worked on is pretty much unreliable.  And the only proof

2  that's out there of what was actually shipped, where it was

3  shipped and how much, is in the control of Owens Corning and

4  this database which allows one to search on it.

5      THE COURT:  And why can't you develop your own

6  database to allow a search?

7      MR. BRADLEY:  We actually -- a plaintiff's firm did

8  develop a database to do just that.  Owens-Illinois

9  participated -- or, didn't participate to develop it, but

10  bought into that and used it and it was completely, totally,

11  unusable, has disappeared now.  It's not even something that

12  can be used.  So based on that experience, it's their belief

13  that they need the Owens Corning database CD.  In addition to

14  that, it would be an undue hardship to require this company to

15  expend time, effort and money --

16      THE COURT:  Why?  Otherwise you'll get hard copies

17  and what are you gonna use to search then?

18      MR. BRADLEY:  Well, that's the point.  This database

19  that they have is already in existence and before they came

20  into the Bankruptcy Court, Owens-Illinois had the opportunity

21  to go to Owens Corning in the course of litigation out there,

22  and say, "We need invoices for Plant A in Wilmington, Delaware

23  for this period of time," and Owens Corning would produce that

24  information, and on occasion, a witness would be deposed to

25  authenticate that information in order to prove that that

10

1  exposure did not occur or that the product was delivered

2  later, in 1960s, or something to that effect.

3          So if you look at pre-bankruptcy, we had access to

4  this information and we used it and it was available through

5  the regular Court system.  Now, the reason it's not available

6  is simply because of the bankruptcy status.

7          THE COURT:  Well, the work product issue wouldn't

8  change whether there's a bankruptcy or not a bankruptcy.  And

9  I'm not --

10         MR. BRADLEY:  Well --

11         THE COURT:  -- hearing that there's an objection

12 because the Debtor is bankruptcy, I'm hearing there's an

13 objection because they think that there's something on -- that

14 will either lead to someone to conclude what their attorneys

15 feel is a litigation strategy or something else to deal with

16 the way the data's put together that you're not -- your client

17 and no one else is entitled to.  They're agreeing to give you

18 the underlying data.

19         MR. BRADLEY:  Correct.  But the issue is that without

20 the ability to search these hundred thousand documents,

21 they're, in essence, useless to anyone.  In --

22         THE COURT:  But that's what I'm -- I'm still not

23 gathering.  Is the software in which the database was put

24 together proprietary?

25         MR. BRADLEY:  I don't have an answer to that, Your

11

1   Honor.   I know that in one case that they cited in California,

2   the Judge ordered them to produce the database with certain

3   fields revealed and to redact -- apparently redact what they

4   believed was opinion work product.  We're, in essence, asking

5   a similar thing here.  Produce the fields that aren't opinion

6   work product, redact those fields that are, and if there's

7   then an issue about it, we could approach the Court and have

8   the Court examine it in camera.

9        But at least one Court has already required them to

10   produce that, and if they had a work product issue, before

11   this -- before the bankruptcy, they clearly gave this

12   information to other parties.  They've controlled it, but they

13   -- you -- the process was to go to Owens Corning, request the

14   information you needed, and you would get it.  And I don't

15   think, based on what's in the record to date, that there's any

16   evidence or proof that there's any material in this that's

17   covered by the opinion work product rule.

18        In addition, you asked about the cost and expense and

19   why doesn't Owens-Illinois just go do it on its own.  In, I

20   think it's the Washington Bank Corp. case that I cited in our

21   reply brief, the Court was faced with a similar situation.  It

22   was an index prepared by the one party to about 2500 boxes of

23   documents, and the other side said, "Hey, go prepare your own

24   index.  You can do that as easily as we did it."  And the

25   Court there held that that would be an undue hardship

1  because --

2      THE COURT:  But you're not asking for a database,

3  you're asking for a search function, and what I don't -- what

4  I'm still not gathering is what -- what is the software in

5  which this data has been logged onto the CDs?  If it's

6  searchable data, then you ought to be able to do a search

7  function.  So if what you need is source code to let you

8  develop a search function, I don't know why you can't be given

9  that information, but I'm not sure why I should require the

10  Debtor to turn over something that's work product.

11      MR. BRADLEY:  If I -- I'm not asking for any opinion

12  work product.  If they have codes that we can use to then make

13  the same database, then that's a potential solution.  I'm not

14  sure about that.  I don't know.  We don't have that

15  information available to us.

16      THE COURT:  Well, let me find out from the Debtor

17  what they can do.

18      MR. BRADLEY:  Thank you.

19      MS. HOGAN:  Good afternoon.  Mary Beth Hogan for the

20  Debtor.  There seems to be a little -- a few misunderstandings

21  or -- lack of clarity about what we're talking about.  O-I

22  raises the point that in -- when we were in the tort system,

23  when Owens Corning was in the tort system, they could ask for

24  searches of particular work sites or particular years or

25  geographic areas, and that was fine with them and we complied

1   with those requests, and now that we're in the bankruptcy,

2   that's not -- no longer available.  That's incorrect.  We have

3   no problem with providing discreet answers to discreet

4   questions, and that happened all the time in the tort

5   litigation, and we will respond then as -- now as we did then.

6   The fact of the bankruptcy, as you pointed out, makes

7   difference.

8          The -- in the tort system, what happened was -- the

9   regular way that this proceeded was there would be discovery

10  requests or interrogatory requests for information about a

11  particular site, and we would provide that.  Sometimes

12  plaintiffs would push harder and want all the sites in

13  Illinois, or all the sites in Illinois for 30 years, and we

14  would say, "No, that's too broad.  We won't go that far

15  because it's irrelevant to this particular case."

16         Every once in a while, someone asks for the whole

17  database, which is what O-I is asking for now.  And no Court

18  has ever ordered the production of the entire database, and it

19  is not merely fact work product.  A very detailed, year-long

20  process went into making this database, and it involved first

21  selecting certain fields from the hard copy invoices that O-I

22  has; certain fields that Debtor's lawyers felt was important

23  to the litigation.  After the fields were selected and that

24  information was input into the database, then lawyers for the

25  Debtors standardized all the information.  Sometimes there

14

1  would be one company referred to in four different ways, for

2  example, over the course of the 30-year distribution period.

3  And it was important that we figure out all of the shipments

4  to a certain particular site.  The lawyers used their

5  experience in the asbestos litigation to standardize that.

6  The lawyers then enhanced the facts that came from the

7  invoices in several different ways, all of which are protected

8  opinion work product.

9        For example, there would be situations where there

10  would be a day in the -- a month, a day and a year, and the

11  year would be missing, and then the attorneys would look at

12  the hard copies and try to figure out if there was some other

13  information on that invoice that they could glean the year

14  from.  If not, the attorneys often did outside research based

15  on their experience in the asbestos litigation in different

16  areas of the country, and they filled in information that is

17  not contained on the 97,000 hard copy invoices.  So there is

18  extra material that was devised by then Owens Corning defense

19  counsel for use in the litigation.

20        And so, the -- our position is that it is opinion

21  work product, and even if the Court were to find that it was

22  not opinion work product, or that part of it was not opinion

23  work product, there's been no showing that there's a

24  substantial need or undue hardship present here.  O-I has been

25  in this litigation for 30 years without our database and has

1  actually managed to stay out of bankruptcy during that whole
2  time.  To say that it has a substantial need, that it can't go
3  forward, it -- it just doesn't make sense, especially in light
4  of the fact that we will provide it with the answers to
5  reasonable search requests.
6         THE COURT:  All right.  Well, I'm still confused.  If
7  Owens Corning is able to extract only certain fields that it
8  knows were taken from the hard documents, and provide that
9  information on CD-ROM, then the question still is why can't
10 you provide a search function for that database?  So that you
11 can delete whatever it is that you feel is protected.
12        MS. HOGAN:  Well, because the work product is
13 imbedded.  There --
14        THE COURT:  Well, then, how can you produce it at
15 all?
16        MS. HOGAN:  Because --
17        THE COURT:  How can you produce the data at all if --
18        MS. HOGAN:  Well, no --
19        THE COURT:  -- work product is imbedded?
20        MS. HOGAN:  What we do is we get a request, say, O-I
21 has a case involving the Weyerhauser plant in Wisconsin, and
22 they say, "Please produce all Kalo invoices to the Weyerhauser
23 plant between the years 1953 and 1972."  We use the database
24 to do a search on the Weyerhauser plant, and we can produce
25 the hard copy invoices, all of them, however many there are,

1  2, 20, 200, to the Weyerhauser plant, and then they have that

2  for their cross examination of plaintiffs or claimants or co-

3  workers.  That's all they need.  The database has extra things

4  on it that Owens Corning lawyers put on there.

5  THE COURT:  Yes, but they're not -- Owens-Illinois

6  isn't asking for the extra things.  It's asking for the copies

7  of the invoices --

8  MS. HOGAN:  Which it has.

9  THE COURT:  -- for all of the Kalo -- all of the Kalo

10  invoices, let's put it that way, and some search key that lets

11  it search through those invoices.  So -- I'll just make this

12  up, because obviously I don't what the litigation's about --

13  but, let's say Owens-Illinois is trying to find out whether

14  the same plaintiff has made a claim for working in more than

15  one plant and it wants to search on the plaintiff's name.

16  Then it wants to be able to hit whatever key you'd -- it would

17  bring up a search field, let you type in the name of the

18  plaintiff and find out whether that same plaintiff has made a

19  claim in -- for working at the same time period in more than

20  one plant.  So --

21  MS. HOGAN:  Well -- that example, the database

22  wouldn't include any plaintiff-specific information.

23  THE COURT:  Okay.  Then --

24  MS. HOGAN:  It only --

25  THE COURT:  -- let's say --

1     MS. HOGAN:  -- it only --

2     THE COURT:  -- all right.  It includes the plants.

3     MS. HOGAN:  It would have plants, right.  And so if

4 O-I said to us, "We think this guy also worked at an Owens

5 Corning plant, give us the invoices for the Owens Corning

6 plant," we would do that.  We would use the database and

7 provide that to them.  We would give them what they need.

8 What we don't want to give them is the database which has the

9 imbedded work product in it.

10     THE COURT:  So it's not the invoices that have the

11 imbedded work product, it's your --

12     MS. HOGAN:  Correct.

13     THE COURT:  -- search function database.

14     MS. HOGAN:  Correct.

15     THE COURT:  Okay.  Then the question is, why can't

16 the source code -- because I don't know how this is created --

17 is it possible to do -- to provide a search function without

18 providing the imbedded information?

19     MS. HOGAN:  My understanding is that in one Court in

20 California has so ordered, that, I think, five different

21 fields are not opinion work product, and they include invoice

22 number -- there are a number of other fields that I can get

23 you if you're interested.

24     THE COURT:  I've got it in papers.

25     MS. HOGAN:  Okay.  And that is something, you know,

18

1  we think the whole thing should be protected, but if there's

2  gonna be any disclosure, we would, you know, the disclosure of

3  those five fields, we could live with that.

4      THE COURT:  Okay.  But I don't know whether that gets

5  to the issue of search function.

6      MS. HOGAN:  Well, I don't think it gets to the issue

7  of where the product was shipped, which is, I think, their --

8  the principal thing that O-I -- has identified as wanting.

9  And the reason that it doesn't -- that no Court has ever

10  ordered that field, we call it the "ship-to" field, produced,

11  is that it is heavily imbedded with work product.  It took a

12  lot of discerning from the raw data to get to the information

13  that is now contained in the ship-to field.

14      And this is -- this is not something that is gone and

15  it has disappeared in importance to OC now that it's in

16  bankruptcy.  We have an insurance coverage litigation.  We've

17  claimed the privilege and the results of that could impact on

18  the recovery of the Estate for the Estate.

19      So what I would suggest is that if O-I, in the

20  future, has particular cases that it needs information from

21  the Kalo database, it -- we can set up some kind of a contact

22  person for them to deal with at either Owens Corning or

23  outside counsel and those search results will be provided.

24      THE COURT:  All right.  These invoices, were they

25  scanned in somehow?  Is that what you're looking at, a

19

1    scanned-in image?

2           MS. HOGAN:  Yes.  They're -- we have hard copies and

3    then there are 16 CDs of scanned-in images.  And some of those

4    images are apparently imperfect, which is why we have offered

5    O-I any hard copies it wants if it finds a scanned image

6    that's -- in some way is inadequate for them.

7           THE COURT:  Okay.  All right.  Thank you.  Mr.

8    Bradley?  What exactly are you trying to search for?

9           MR. BRADLEY:  We're trying to search -- the invoices

10   contain information about the -- the number of feet that Kalo

11   was -- of Kalo that was sold to company A, that would be on

12   the invoice.  On the invoice would be "shipped to" company A's

13   plant in Wilmington, Delaware and the dates that that was

14   shipped or purchased.  That's what we're looking for.  That is

15   all factual information.  It has nothing to do with opinion

16   work product.

17          THE COURT:  But apparently it does, because the --

18   the way the database is created, the information is not taken

19   from the invoice, it is taken from something that the

20   attorneys have superimposed from the invoices.  So what you

21   really want is the capability of searching through a scanned

22   document.  It seems to me you hire your software people, you

23   give them the scanned documents, and you tell them to go

24   search.  Otherwise, the Debtor's made a reasonable proposal,

25   which is, tell them what else you want and they'll respond to

1  it using the database for you, but they're not going to give

2  you their proprietary information, and I don't think they need

3  to.

4          MR. BRADLEY:  Your Honor, there is -- I'm not sure of

5  the number of pending cases against Owens-Illinois.  There's

6  probably 15, 16 thousand cases.  So, as long -- if they're

7  willing to, when Owens-Illinois believes they have the need to

8  get the information, and set up a contact person to have that

9  information, and the Court's gonna rule against us, then we

10  have no choice.

11          MS. HOGAN:  That's fine.  I would just like to add

12  that, as when we were in the tort system, the requests need to

13  be narrowly tailored, and the copying costs and associated

14  costs should be borne by Owens-Illinois.

15          THE COURT:  Owens-Illinois.  Oh, sure.  It seems to

16  me the costs are Owens-Illinois', their discovery costs.  That

17  will have to be paid for, but I assume that the requests are

18  going to be reasonable.  And definitely they should be limited

19  to whatever the context of the particular litigation is,

20  because if I'm overruling the request or not granting the

21  request for a wholesale disclosure, I'm not going to do it on

22  a piecemeal basis, either.  But they've offered, and unless

23  there's a problem with their compliance with their offer --

24  and if there is, I assume I'll hear from you, Mr. Bradley --

25  then I think that's a reasonable request.

21

1          MR. BRADLEY:  Thank you.  Okay, Your Honor.  The -- I

2    just want to say that the -- the purposes of us coming here

3    was to save the Debtor the expense of doing this, but, you

4    know, in 16,000 cases, we're gonna have to approach them to

5    get the information.

6          THE COURT:  Well, I don't know if you do in 16,000

7    cases.  They've given you the invoices.  And I'm not sure that

8    anybody, any law, requires the Debtor to do the discovery for

9    another company.  They have to produce the documents that are

10   relevant.  They are doing that.  If you want to have somebody

11   develop a search function, go to it.  Those 16 discs are

12   yours.

13         MR. BRADLEY:  Thank you, Your Honor.

14         THE COURT:  Okay.  I'm not sure what form of an Order

15   you need, since you've agreed to -- have you already received

16   the CDs that they've --

17         MR. BRADLEY:  No.

18         THE COURT:  All right.  So I need an Order that's

19   going to compel the Debtor to produce the invoices on CD-ROM,

20   and I think your concept of backup of the hard copy in the

21   event that the material is illegible is fine, and denies the

22   request for anything else without prejudice, based on the

23   Debtor's offer at this point to answer reasonable discovery

24   requests.  So are you -- will the Debtor submit that Order,

25   run it by Mr. Bradley and then submit it?

22

1          MS. HOGAN:  Yes.

2          THE COURT:  Okay.

3          MR. BRADLEY:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5      (Pause in proceedings)

6          THE COURT:  Miss Stickles?

7          MS. STICKLES:  Your Honor, the next item on the

8  agenda is item #16, which is New York Packaging Company's

9  Motion for Summary Judgment, and I'd also note a related item

10  is item 17, the Debtor's Motion for Summary Judgment with

11  regard to the same underlying motion.

12          THE COURT:  Yes.  I think we probably should just

13  argue both of these together.  It doesn't really make much

14  sense, since they're sort of flip sides of the same coin, if

15  that's okay with you.

16          MR. PARKS:  That's fine, Your Honor.

17          THE COURT:  Good afternoon.

18          MR. PARKS:  Good afternoon, Your Honor.  Richard

19  Parks on behalf of New York Packaging Corporation.

20          May it please the Court, this is the Motion for

21  Summary Judgment filed on behalf of New York Packaging in what

22  I believe to be a simple sales contract by the post-petition

23  Debtor, Owens Corning, for the sale of plastic sheets which

24  are used by Owens Corning at its refineries in order to stack

25  its products, its asphalt products, to keep them from sticking

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*