## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| GARY SOUJA, Individually and as Special Administrator for the Estate of OSWALD F. SUOJA, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No. 99-cv-0475 |
| | ) | |
| OWENS-ILLINOIS, INC., | ) ) | |
| Defendant.[1] | ) | |
| BARBARA CONNELL, Individually and as Special Administrator for the Estate of DANIEL CONNELL, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No. 05-cv-00219 |
| | ) | |
| OWENS-ILLINOIS, INC., | ) ) | |
| Defendant. | ) | |

## OWENS-ILLINOIS, INC.'S
## MOTION TO BAR THE "ANY EXPOSURE" CAUSATION OPINION

Owens-Illinois, Inc. moves to exclude the "any exposure" theory of causation, and any opinions based on this theory, offered by Plaintiffs' experts, Arthur Frank, M.D., Henry Anderson, M.D., and Arnold R. Brody, Ph.D., under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). If necessary, Owens-Illinois requests a *Daubert* hearing to determine the admissibility.

---

[1] Counsel for Owens-Illinois and Plaintiff agreed in writing to settle the *Suoja* case on December 18, 2014, but the final release has not been executed. Pursuant to the court-ordered deadlines leading to trial, Owens-Illinois submits this *Daubert* motion out of an abundance of caution and without prejudice to the parties' settlement agreement. *See* Order, Aug. 5, 2014, ECF No. 20.

## INTRODUCTION

Plaintiffs' experts intend to testify, or offer opinions based on the theory, that any exposure to asbestos, no matter how slight, remote, or insignificant, is a cause or substantial contributing factor in causing Plaintiffs' diseases (the "any exposure" opinion). Worse still, Plaintiffs would have their experts concoct a new, undisclosed "hypothetical" opinion at trial — purportedly to disguise the any exposure opinion and its unsupported speculation.  That testimony fails Rule 702 and *Daubert* scrutiny, and is contrary to the substantive law in this case.  Indeed, a court last year conducted a *Daubert* hearing with the same experts and counsel, and excluded this any exposure opinion in *Krik v. Crane Co.*, --- F. Supp. 3d ----, 2014 WL 7330901 (N.D. Ill. Dec. 22, 2014).[2]  More than thirty other federal and state courts, since 2005, have also excluded the any exposure opinion and held it is not scientifically reliable.  Owens-Illinois requests that this Court, in its gatekeeping role under Rule 702 and *Daubert*, follow the well-established precedent by excluding the any exposure opinion.

## BACKGROUND

The any exposure opinion is a one-size-fits-all approach that Plaintiffs' experts created to offer a causation opinion against whatever defendant, from whatever product, in whatever amount, remains at trial.  As the expert reports show, they have

---

[2] As a semantic ploy, Plaintiffs' experts may change the name of their theory in response to these court rulings.  Other monikers include the "each and every asbestos fiber contributes," there is "no safe level" of asbestos exposure, "each and every exposure above background contributes," "each significant, special, or occupational exposure contributes," and "the cumulative dose caused the disease." Though the wording varies, the theory does not. *Krik*, 2014 WL 7330901, at *2 n.2.

no information about the actual asbestos exposure Plaintiffs have sustained from any product and, in fact, they readily admit that they do not consider this information. *See* Arthur Frank (Ex. A) at 1, Aug. 7, 2012; Henry Anderson Rep. (Ex. B) at 1-2, Oct. 28, 2011; Arnold Brody (Ex. C) at 1-4, October 14, 2011.

Plaintiffs' experts would testify that any exposure to asbestos, even the very first one, regardless of dosage, is sufficient to cause the Plaintiffs' diseases:

### Arthur Frank (*Suoja*)

Q.   Do you still hold the opinion that any exposure to asbestos from an asbestos-containing product is above background?

**A.    Yes.**

Q.   You hold the opinion that each and every exposure above background is a significant contributing factor, even if it's a single exposure; correct?

**A.    Yes. . . .**

Q.   And in your opinion, the only exposure to a product that is not a substantial contributing factor is the exposure to a product that did not occur?

**A.    Correct.**

Arthur Frank Dep. 9-12, June 5, 2012.

### Henry Anderson (*Connell*)

Q.   Does that mean, then, that each exposure is considered a contributing cause?

**A.    Yes.**

. . . .

Q.   Whatever asbestos [plaintiff] breathed in throughout his lifetime is a cause of his mesothelioma?

**A.    Yes.**

Q.   Every fiber?

**A.    Every fiber.**

Henry Anderson Hr'g Tr. 36, 162-63, Jan. 14, 2013.

Accordingly, Plaintiffs' experts have not, and cannot, answer the fundamental question in a causation analysis: dose-response. They have no information as to how much exposure Plaintiffs actually experienced and whether that dosage was sufficient to cause their diseases. *See* Arthur Frank (Ex. A) at 1, Aug. 7, 2012; Henry Anderson Rep. (Ex. B) at 1-2, Oct. 28, 2011; Arnold Brody (Ex. C) at 1-4, October 14, 2011.[3] The most basic information for a causation analysis — that of sufficient facts or data — is entirely absent from their any exposure opinion:

### Arthur Frank (*Suoja*)

Q.   Your opinion about the each and every exposure above background being a significant contributing factor, you hold opinion regardless of the intensity or the duration of the exposure; correct?

**A.   Yes.**

Q.   You also hold that opinion regardless of fiber type; correct?

**A.   Yes.**

Arthur Frank Dep. 9-12, June 5, 2012.

### Henry Anderson (*Connell*)

Q.   It's one of your opinions that each and every exposure to asbestos that [plaintiff] would have had while he was working at the plant is a cause of his mesothelioma?

**A.   Contributed to his mesothelioma, yes, it's a cause.**

Henry Anderson Hr'g Tr. 162, Jan. 14, 2013.

That opinion is neither relevant evidence nor scientifically reliable under *Daubert*. It also removes the *substantial* element from the causation standard in Wisconsin and

---

[3] Expert reports "must be sufficiently complete to satisfy the criteria of the *Daubert* decision, and one of those criteria, as we have been at pains to emphasize, is that the expert show how his conclusion is grounded in—follows from—an expert study of the problem." *Smith v. Sofamor, S.N.C.*, 21 F. Supp. 2d 918, 922 (W.D. Wis. 1998).

shifts the plaintiffs' burden of proof on causation onto the defendants:

> Q.     I guess, what I hear you saying is that you do hold the opinion, but there may be courts that don't think that that opinion should be admissible; but you still hold that opinion nonetheless?
>
> **A.     Yes. Because I'm not being governed by legal rulings. I'm being governed as a scientist by what I understand science to be.**
>
> . . . .
>
> Q.     And in your opinion, the only exposure to a product that is not a substantial contributing factor is the exposure to a product that did not occur?
>
> **A.     Correct.**
>
> Arthur Frank Dep. 9-12, June 5, 2012.

No medical doctor or scientist has ever published this opinion—that every exposure to asbestos should be considered an actual cause of disease—thereby subjecting this baseless theory to criticism by their scientific community. Nor do Plaintiffs' experts cite any published studies for their any exposure opinion. In fact, the opinion is inconsistent with our own daily lives: millions of asbestos fibers are ingested by the general population without causing disease. *See* National Research Council, Committee on Non-Occupational Health Risks of Asbestos Formed Fibers, *Asbestiform Fibers Non-Occupational Health Risks* 63 (1984), *available at* http://goo.gl/KHeJyT. It cannot be true that our own exposure to millions of asbestos fibers does not cause disease, and yet every exposure in an asbestos personal injury case must have caused the plaintiff's disease.

Despite our own daily experiences, however, Plaintiffs' experts would testify every asbestos fiber that we all breathe every day, without developing disease, was a

cause of the Plaintiffs' diseases:

> Q.   So if I live in Wisconsin for forty years and I breathe every day and I take in twenty cubic meters of air every day, by the time I'm forty I'm going to have about 29 million asbestos fibers that I breathed in; correct?
>
> **A.   I haven't done the math.  If you have done the math -- I don't know.**
>
> . . . .
>
> Q.   And I'm really asking you about your opinion, and your opinion is every one of those 29 million asbestos fibers caused that person's disease.
>
> **A.   If they develop a mesothelioma, it contributed to their total exposure.**

Henry Anderson Hr'g Tr. 163-64, Jan. 14, 2013.

In essence, Plaintiffs would have their experts nullify the substantial contributing factor test — a legal standard that must distinguish *substantial* exposures from *insubstantial* exposures under Wisconsin law — by testifying in their opinion that any exposure to asbestos *whatsoever* constitutes a cause of disease. Under Rule 702 and *Daubert*, the federal courts have rejected such nullification by refusing to allow the any exposure opinion at trial.  The any exposure opinion, as the court in *Krik* explained to Plaintiffs' own experts and counsel, "is not an acceptable approach for a causation expert to take."  2014 WL 7330901, at *4.

## LEGAL STANDARD

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  By its terms, Rule 702 allows testimony only by an "expert," someone with the requisite "knowledge, skill, experience, training, or education,"

where (a) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

*Daubert* requires a district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements are satisfied before allowing the jury to hear a proffered expert.  509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). District courts have broad discretion in deciding the admissibility of expert evidence.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'" (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011))).  It is clear, however, that while a district court has wide latitude to decide how to measure reliability, it must do so.  *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002).

Before admitting expert evidence, a district court employs a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue.  *Bielskis*, 663 F.3d at 893-94. "The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152). The proponent of the expert bears the burden of showing that the expert's evidence would satisfy the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

### I.    The Any Exposure Opinion Is Not Relevant or Helpful.

Under *Daubert*, expert testimony that does not relate to any issue in the case is neither relevant nor helpful.  509 U.S. at 591 (citations omitted). Wisconsin law, like Illinois and many other states' common law, has adopted the "substantial contributing factor" test for asbestos causation. *Singer v. Pneumo Abex, LLC*, 2012 WI App 27, ¶ 16, 339 Wis. 2d 490, *review denied*, 2012 WI 77, 342 Wis. 2d 156; *Risse v. Bldg. Servs. Indus. Sales Co.*, 2012 WI App 97, ¶ 18, 344 Wis. 2d 124, 820 N.W.2d 156; *see also Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 433–34 (7th Cir. 2013) (benzene case; Wisconsin law).

Here, as in *Krik*, the any exposure opinion should be excluded because it is not relevant or helpful to the case, and contradicts the "substantial contributing factor" test for asbestos causation. 2014 WL 7330901, at *4. In contrast to the experts in *Schultz*, Plaintiffs' experts here (and in *Krik*) do not have any information as to how much asbestos exposure the Plaintiffs experienced from any product and whether that exposure was a substantial factor in the development of their diseases.  *Id.* (citing *Schultz*, 721 F.3d at 432).  Plaintiffs' experts have no idea "when, how much, or how often" Owens-Illinois products were used.  *See Schultz*, 721 F.3d at 434.

Instead, Plaintiffs would have their experts rely upon the any exposure theory —
claiming that the first asbestos exposure is enough and every other exposure
substantially contributed in the development of disease as well.  Arthur Frank Dep. 9-
12, June 5, 2012; Henry Anderson Hr'g Tr. 36, 163, Jan. 14, 2013.  This any exposure
opinion violates the causation standard and offers the jury no scientific basis to decide
whether Plaintiffs were exposed to any defendant's product sufficient to cause their
diseases.

**II.     The Any Exposure Opinion Is Not Reliable and Not Based on Science.**

"Since *Daubert*, moreover, parties relying on expert evidence have had notice of
the *exacting* standards of reliability such evidence must meet." *Weisgram v. Marley Co.*,
528 U.S. 440, 455 (2000) (emphasis added).  In toxic tort cases, the Seventh Circuit has
warned that a "supremely qualified expert cannot waltz into the courtroom and render
opinions unless those opinions are based upon some recognized scientific method and
are reliable."  *Lewis*, 561 F.3d at 705.  But the any exposure opinion represents a highly
unscientific and entirely unreliable approach to causation.

**A.     The Any Exposure Opinion Ignores the Fundamental Principle of
Toxicology — Establishing the Dose Necessary to Cause Disease.**

The science of toxicology rests on the bedrock principle that "the dose makes the
poison." Federal Judicial Center, *Reference Manual on Scientific Evidence* 403, 475, 603, 651
(3d ed. 2011). "Dose is the single most important factor to consider in evaluating
whether an alleged exposure caused a specific adverse effect." David Eaton, *Scientific
Judgment and Toxic Torts: A Primer in Toxicology for Judges and Lawyers*, 12 J.L. & Poly 5

(2003) ("*Toxicology for Judges*"). The any exposure opinion, however, disregards this most important principle of toxicology and is not consistent with the standards for legitimate expert testimony.

Diseases occur when exposures reach a "threshold" level that overwhelms our natural defenses. Aspirin, water, sunlight, or even known "poisons," such as arsenic, are harmful only at high enough doses and are harmless—or even beneficial—at lower doses.  For any given response, there is a dose at which the effect begins to appear and a dose below which it does not.  The dose matters.  This principle of "dose-response" holds true for carcinogens, such as asbestos, just as much as it does for any other toxins:

> Most chemicals that have been identified to have "cancer-causing" potential (carcinogens) do so only following long-term, repeated exposure for many years.  Single exposures or even repeated exposures for relatively short periods of time (e.g., weeks or months) generally have little effect on the risk of cancer, unless the exposure was remarkably high and associated with other toxic effects.

*Toxicology for Judges* at 9.

Asbestos is not a known carcinogen until levels exceed human tolerance. *Reference Manual on Scientific Evidence* at 603, 635.  The most apparent evidence is the background exposures we all receive in our own lives. In fact, among the general population in this country, the average person is exposed to roughly 100 million asbestos fibers during his or her lifetime.[4]   Every exposure we encounter is not, however, a cause of asbestos disease.  Minor asbestos exposures, while the subject of

---

[4] *See* National Research Council, Committee on Non-Occupational Health Risks of Asbestos Formed Fibers, *Asbestiform Fibers Non-Occupational Health Risks* 63 (1984), *available at* http://goo.gl/KHeJyT.

frequent regulatory comment and action, have never appeared in epidemiology studies as a significant cause of disease.

As explained by the Seventh Circuit in *Schultz* and applied by the *Krik* court, a proper causation analysis begins with a measurement, or at least a reasonable estimate, of the dose received by plaintiff.  *Krik*, 2014 WL 7330901, at *4 (citing *Schultz*, 721 F.3d at 432-34).  A causation expert then compares that dose (without speculation) to the dose that scientific studies confirm to cause the disease, typically demonstrated in a series of epidemiological studies of various exposed populations.  *Id.*

Under Rule 702 and *Daubert*, it is incumbent on causation experts to prove the dose that is a potential cause, under scientific studies, and not merely presume that any amount of occupational exposure is sufficient. "[T]he notion that it is theoretically possible that any amount of exposure could cause injury is different from an opinion that the particular level of dosage experienced by a plaintiff was sufficient to cause his or her particular injury."  *Id.* (citing *Schultz*, 721 F.3d at 432).

Unlike the causation expert in *Schultz*, however, Plaintiffs' experts cannot identify any scientific studies that confirm the danger of asbestos exposure above what they call "background":

### Arthur Frank (*Suoja*)

Q.   Have you ever published in the peer reviewed literature your every-fiber-contributes-to-the-development-of-mesothelioma opinion?

**A.   No.**

Q.   Has anyone else to your knowledge?

**A.   Not that I recall. Not that specific statement. There's certainly been many publications about the role of**

**carcinogens and the fact that any amount of any carcinogen can produce cancer, but not the specific about every fiber as you put it to me.**

Q.   And as you sit here right now, you can't cite any article in the peer review published literature authored by anyone that cites that specific opinion?

A.   **That specific opinion being that each and every fiber from any product, et cetera, no.**

Q.   Have you ever published in the peer reviewed literature your opinion that every product exposure is a substantial factor?

A.   **No, because I generally don't write in the peer reviewed literature in any way talking about individual products. I talk about the nature of the material, which is asbestos. I don't think I've ever mentioned specific products.**

Q.   Are you aware of anyone else publishing in the peer review literature the opinion that every product exposure is a substantial factor?

A.   **No.**

Q.   . . . . Have you ever published in the peer reviewed literature your opinion that every exposure to every product individually and cumulatively are substantial factors?

A.   **I've never published that personally in the peer reviewed scientific literature. I'm not aware that anybody else has published that statement.**

Arthur Frank Dep. 57:16-59:16, Jan. 3, 2007.


### Henry Anderson (*Connell*)

Q.   The EPA, OSHA, NIOSH criteria documents actually say that they are going to go down to zero because they don't -- there is no evidence where the threshold is; right? They don't say there is no threshold; correct?

A.   **I haven't parsed the words, but they are basically saying the goal is zero and there is no evidence of a threshold.**

Q.   Right. But the EPA itself says that there is no scientific data to support the low threshold model; right?

A.   **That's correct.**

> Q.      So they don't have any data to support that model;
>          correct?
>
> **A.      Right.**

Henry Anderson Hr'g Tr. 107:18-108:7, Jan. 16, 2013.

Here, unlike *Schultz*, this Court's "concern about an ill-defined floor" is unquestionably justified with Plaintiffs' experts and their baseless any exposure opinion. *Krik*, 2014 WL 7330901, at *4 (quoting *Schultz*, 721 F.3d at 432).

In other toxic tort cases, like the Seventh Circuit in *Schultz* and the court in *Krik*, federal courts have consistently held that a causation expert must offer proof of an actual dose under *Daubert* and Rule 702.[5]  It is not enough to opine that a plaintiff was "exposed."  "Dose" must be distinguished from "exposure."  The fact of exposure in itself says virtually nothing about the likelihood that the exposure caused a plaintiff's disease. *Moeller v. Garlock Sealing Techns., Inc.*, 660 F.3d 950, 955 (6th Cir. 2011) ("saying that exposure to Garlock gaskets was a substantial cause of Robert's mesothelioma would be akin to saying that one who pours a bucket of water into the ocean has

---

[5] *E.g.*, *McLain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005) ("In toxic tort cases, [s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that [the] plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden."); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir.) (upholding exclusion of expert witness who "made no attempt to determine what amount of PCB exposure"), *cert. denied*, 534 U.S. 822 (2001); *Mitchell v. Gencorp., Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) ("[A] plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover"); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278 (5th Cir. 1998), *cert. denied*, 526 U.S. 1064 (1999) ("Because he had no accurate information on the level of Moore's exposure to the fumes, Dr. Jenkins necessarily had no support for the opinion that the level of chemicals to which Moore was exposed caused RADS."); *Abuan v. General Elec. Co.*, 3 F.3d 329, 332-34 (9th Cir. 1993) ("In cases claiming personal injury from exposure to toxic substances, it is essential that the plaintiff demonstrate that she was, in fact, exposed to harmful levels of such substances"), *cert. denied*, 510 U.S. 1116 (U.S. 1994).

substantially contributed to the ocean's volume").

As discussed above, Plaintiffs' expert testimony exemplifies the misuse of any exposure opinions. They tout the any exposure theory with little to no evaluation of the actual facts in these cases. They admit that they do not consider the dose, duration, or source of Plaintiffs' asbestos exposure — whether the exposure was for four minutes or forty years, or to a high dose or low dose, makes no difference in their opinion. *See* Arthur Frank Dep. 9-12, June 5, 2012; Henry Anderson Hr'g Tr. 36, 163, Jan. 14, 2013. Instead, Plaintiffs' experts would opine that any exposure to asbestos, no matter how small the dose, is a substantial contributing cause of Plaintiffs' diseases. *Id.* That approach ignores fundamental toxicology principles and is without scientific foundation. *Krik*, 2014 WL 7330901, at *4-5 (citing *Schultz*, 721 F.3d at 432).

**B.      The Any Exposure Opinion Is Speculation, Not Scientific Analysis.**

The any exposure opinion stands in sharp contrast to an appropriate scientific causation analysis. *Krik*, 2014 WL 7330901, at *4-5 (discussing *Schultz*, 721 F.3d at 432). Indeed, Plaintiffs' opinions have not applied any scientific methodology at all; they are based entirely on the unsupported speculation that any exposure to asbestos, regardless of dose, contributes in a meaningful way to the development of disease. Under *Daubert* and Rule 702, the Supreme Court and the Seventh Circuit prohibit litigation experts, like Dr. Frank, who testify to methods that are not used "when [experts] are doing their regular professional work rather than being paid to give an opinion helpful to one side in a lawsuit." *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996).

Courts nationwide have recognized that the any exposure opinion has no

grounding in the peer-reviewed scientific literature, nor has the opinion been adequately and repeatedly tested for reliability. *Krik*, 2014 WL 7330901, at *5 (collecting cases). Recently, the District Court of Utah rejected this opinion as unproven:

> This court agrees with the general assessment of these various state and federal courts that the every exposure theory does not qualify as admissible expert testimony. The *Butler* court summed up expert testimony regarding the every exposure theory accurately by stating that an expert's "any exposure theory is, at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis."

*Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL 214378, at *5 (D. Utah Jan. 18, 2013) (quoting *Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 552 (Ga. Ct. App. 2011)). Such an unproven hypothesis is not a permissible basis for expert testimony because a "medical expert's ultimate opinion must be grounded in the scientific process and may not be merely a subjective belief or unsupported conjecture." *Lewis*, 561 F.3d at 705 (affirming district court's exclusion).

### C.    Courts Across the Nation Have Rejected the Any Exposure Opinion.

In the last few years, courts across the nation have carefully examined the any exposure opinion and have routinely rejected it as unscientific. The courts rejecting this opinion include the Sixth Circuit Court of Appeals, Ninth Circuit Court of Appeals, at least eleven federal district courts, the highest courts of Texas, New York, Pennsylvania, and Virginia, and trial and state appellate courts in Texas, Georgia, Florida, Delaware, Ohio, Mississippi, and Pennsylvania, among others.[6]

---

[6] Federal court cases include *Moeller v. Garlock Sealing Techs., LLC*, 660 F.3d 950 (6th Cir. 2011); *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439 (6th Cir. 2009);

In the federal courts, the Sixth Circuit has repeatedly rejected the any exposure
opinion as a basis for asbestos causation.  *Martin*, 561 F.3d at 439; *Lindstrom*, 424 F.3d at
488; *Moeller*, 660 F.3d at 950.   The Sixth Circuit found the inconsistency in the any
exposure opinion:  it "would make every incidental exposure to asbestos a substantial
factor."  *Martin*, 561 F.3d at 443; *Moeller*, 660 F.3d at 955.

Since 2013, seven federal district courts have rejected the any exposure opinion
with very strong language:

> [The] opinion is, as a matter of law, unsupported by sufficient or
> reliable scientific research, data, investigations or studies, and is
> inadmissible under Rule 702. . . . the every exposure theory as

---

*Lindstrom v. A–C Prod. Liab. Tr.,* 424 F.3d 488 (6th Cir. 2005); *Barabin v. AstenJohnson, Inc.*,
700 F.3d 428 (9th Cir. 2012) (reversing trial verdict based in part on any exposure
opinion due to trial court's *Daubert* analysis); *Krik v. Crane Co.*, --- F. Supp. 3d ----, 2014
WL 7330901 (N.D. Ill. Dec. 22, 2014); *Comardelle v. Pennsylvania Gen. Ins.*, No. 13-6555, ---
F. Supp. 3d ----, 2015 WL 64279 (E.D. La. Jan. 5, 2015); *Davidson v. Georgia Pacific LLC*,
No. 12–1463, 2014 WL 3510268 (W.D. La. Jul. 14, 2014); *Anderson v. Ford Motor Co.*, 950 F.
Supp. 2d 1217 (D. Utah 2013); *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-CV-3013, 2013
WL 2477077 (C.D. Cal. May 9, 2013); *Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL
214378 (D. Utah Jan. 18, 2013); *Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26 (D.D.C.
2013); *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603 (N.D. Ohio 2004*); Henricksen v.
ConocoPhillips Co.*, 605 F. Supp. 2d 1142 (E.D. Wash. 2009); *In re W.R. Grace & Co.*, 355
B.R. 462 (Bankr. D. Del. 2006), *appeal denied*, 2007 WL 1074094 (D. Del. Mar. 26, 2007).
   State court cases include *Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332 (Tex. 2014);
*Howard v. A.W. Chesterton Co.*, 78 A.3d 605 (Pa. 2013); *Ford Motor Co. v. Boomer*, 736
S.E.2d 724 (Va. 2013) (requiring plaintiff's experts to "opine as to what level of exposure
is sufficient to cause mesothelioma, and whether the levels of exposure at issue in this
case were sufficient"); *Betz v. Pneumo Abex, LLC*, 44 A.3d 27 (Pa. 2012); *Parker v. Mobil
Oil Corp.*, 857 N.E.2d 1114 (N.Y. 2006); *Butler v. Union Carbide Corp.*, 712 S.E.2d 537 (Ga.
Ct. App. 2011); *Brooks v. Stone Architecture, P.A.*, 934 So. 2d 350 (Miss. Ct. App. 2006);
*Daly v. Arvinmeritor, Inc.*, 2009 WL 4662280 (Ha. Cir. Ct. Broward County Nov. 30, 2009);
*In re Asbestos Litig. (Certain Asbestos Friction Cases Involving Chrysler LLC)*, 2008 WL
4600385 (Pa. Ct. Com. Pl. Phila. Cty. Sept. 24, 2008); *Free v. Ametek*, 2008 WL 728387
(Wash. Super. Ct. King Cty. Feb. 28, 2008); *Basile v. American Honda Motor Co., Inc.*, 2007
WL 712049 (Pa. Ct. Com. Pl. Indiana Cty. Feb. 22, 2007*).

> offered as a basis for legal liability is inadmissible speculation that is devoid of responsible scientific support. . . .
>
> The every exposure theory does not hold up under careful examination. . . . It is questionable whether it can even properly be called a theory. . . . The every exposure theory is based on the opposite: a lack of facts and data. . . . It seeks to avoid not only the rules of evidence but more importantly the burden of proof.

*Smith*, 2013 WL 214378, at *5; *Krik*, 2014 WL 7330901, at *4 (quoting and relying on *Smith*); *Comardelle*, 2015 WL 64279, at *3-4 (same); *Davidson*, 2014 WL 3510268, at *4 (same); *Anderson*, 950 F. Supp. 2d at 1223 (same); *accord Sclafani*, 2013 WL 2477077; *Wannall*, 292 F.R.D. at 41-43.  Indeed, the *Comardelle* court concluded this week that plaintiffs' "proposed specific causation opinions in this case are unreliable and inadmissible, essentially for the reasons articulated by the thoughtful opinions in *Smith*, *Anderson*, *Davidson*, and *Krik*."  2015 WL 64279, at *4.

State supreme courts also reject the any exposure opinion. The Pennsylvania Supreme Court in a unanimous 53-page decision affirmed the exclusion of testimony based on the any exposure opinion.  *Betz v. Pneumo Abex, LLC*, 44 A.3d 27 (Pa. 2012). The *Betz* Court found that the any exposure opinion was in "irreconcilable conflict with itself" because "one cannot simultaneously maintain that a single fiber among millions is substantially causative, while also conceding that a disease is dose responsive."  *Id.* at 56.  The overwhelming majority of courts have concluded that the any exposure opinion is not reliable expert evidence, and it should be excluded here under the exacting standards of Rule 702 and *Daubert*.

III.   **The Prejudicial and Misleading Effect of the Any Exposure Opinion Far Outweighs Any Probative Value.**

Finally but importantly, expert evidence "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.  District courts therefore should exercise "more control over experts" under *Daubert* and Rule 403.  *Id.* (citation omitted).

The any exposure opinion misleads jurors based on a theory of causation that contradicts the legal standard.  *Krik*, 2014 WL 7330901, at *4 (plaintiffs' argument "that a single exposure or a *de minimis* exposure satisfies the substantial contributing factor test under Illinois law incorrectly states the controlling law"); *Singer*, 339 Wis. 2d 490 (substantial factor test under Wisconsin law); *Risse*, 344 Wis. 2d 124 (same).  Indeed, the opinion flips the causation standard and burden of proof:

> Q.   It's your opinion that there is no such thing as an insubstantial exposure.  If you have an exposure at any level it's substantial?
>
> **A.   Yes.**
>
> Q.   In a sense your opinion is that every exposure is essentially guilty until proven innocent and in your view the only innocent exposure is the one that did not exist?
>
> **A.   That would be one way to say it.  The one that didn't exist couldn't have caused the disease if it didn't exist.  But otherwise, there is – there is no exposure that could ever be said to be innocent.**

Arthur Frank Dep. 18-22, Jan. 3, 2007.

As discussed above, Wisconsin law and *Daubert* reject the notion that experts can avoid the legal standard by cloaking their nullification in the form of a "medical opinion."   Under the any exposure opinion, however, Plaintiffs' experts will confuse

and mislead the fact finder from the true causation issue:  whether the exposure to asbestos from an Owens-Illinois product was sufficient to cause Plaintiffs' diseases. Because "the probative value of such unsupported speculation by [any exposure experts] is substantially outweighed by the danger of unfair prejudice, as well as being confusing, and presenting a danger of misleading the jury," it should be excluded. *Smith*, 2013 214378, at *2.

## CONCLUSION

For these reasons, Owens-Illinois, Inc. respectfully requests that this Court exclude the "any exposure" opinion of causation, and any opinions based on this theory, by Arthur Frank, Henry Anderson, Arnold Brody, and any other experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated: January 8, 2015              Respectfully submitted,

By:   /s/ Brian O. Watson
Edward Casmere
Brian O. Watson
Rachel A. Remke
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois  60606
(312) 258-5500
(312) 258-5600 (facsimile)

*Attorneys for Defendant*
*Owens-Illinois, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on January 8, 2015, these papers were filed with the Clerk of the Court for the United States District Court for the Western District of Wisconsin using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

15640-1133
CH2\15912092.1