# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| GARY SOUJA, Individually and as Special Administrator for the Estate of OSWALD F. SUOJA, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99-cv-0475 |
| | ) | |
| OWENS-ILLINOIS, INC., | ) | |
| | ) | |
| Defendant.[1] | ) | |
| BARBARA CONNELL, Individually and as Special Administrator for the Estate of DANIEL CONNELL, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-00219 |
| | ) | |
| OWENS-ILLINOIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OWENS-ILLINOIS, INC.'S MOTION TO BAR
## THE LONGO/MAS VIDEOTAPED EXPERIMENTS AND RELATED TESTIMONY

Owens-Illinois, Inc. ("Owens-Illinois") moves to exclude the videotaped experiments conducted by Plaintiffs' improperly disclosed expert, William Longo Ph.D. ("Longo") and his company Materials Analytical Services ("MAS"), and any testimony related to those experiments under Federal Rule of Civil Procedure 37, Federal Rule of

---

[1] Counsel for Owens-Illinois and Plaintiff agreed in writing to settle the *Suoja* case on December 18, 2014, but the final release has not been executed. Pursuant to the court-ordered deadlines leading to trial, Owens-Illinois submits this *Daubert* motion out of an abundance of caution and without prejudice to the parties' settlement agreement. *See* Order, Aug. 5, 2014, ECF No. 20.

Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  If necessary, Owens-Illinois requests a *Daubert* hearing to determine the admissibility.

## INTRODUCTION

The Longo/MAS experiments are no stranger to *Daubert* scrutiny.  Most recently, after a *Daubert* hearing a few months ago, a court in this circuit excluded the Longo/MAS experiments because they are "junk science," "were created as part of a generalized litigation strategy developed before this case was even filed," and are "not the product of 'reliable principles' and 'methods' as required by Rule 702."  *Krik v. Crane Co.*, ___ F. Supp. 3d ___, 2014 WL 5350463, at *3-7 (N.D. Ill. Oct. 21, 2014) (citations omitted).  Last year, another federal court also excluded the Longo/MAS experiments after a *Daubert* hearing, and found they "suffer from serious deficiencies," "they are not reliable," and they "are pseudo-science at best."  *In re Garlock Sealing Tech., LLC*, 504 B.R. 71, 79 (Bankr. W.D.N.C. 2014).  The experiments have failed *Daubert* review, similarly and repeatedly, over the last decade.  *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-cv-3013, 2013 WL 2477077 (C.D. Cal. May 9, 2013); *In re Lamar County Asbestos Litig.*, No. 2000-3559, 2001 WL 35918974 (Tex. Dist. Ct. July 5, 2001); *Tyre v. CSX Transp., Inc.*, No. 16–2002–CA–4837, 2003 WL 26474173 (Fla. Cir. Ct. Sept. 24, 2003).

Owens-Illinois requests the same result in these cases.  As discussed in more detail below, the Longo/MAS experiments should be excluded because: (1) they were not disclosed properly; (2) they do not "fit" the facts of these cases; (3) they are not the product of reliable principles and methods; (4) they are not relevant to understand the evidence or to determine a factual issue; and (5) they only will unfairly prejudice

- 2 -

Owens-Illinois and mislead the members of the jury.

## THE LONGO/MAS EXPERIMENTS

Longo is neither a medical doctor nor an industrial hygienist.  He was never formally educated in industrial hygiene or public health, nor has he ever received any education or training on how to measure asbestos in the workplace.  William Longo Dep. 77:3-78:4, Feb. 12, 2007.  Indeed, Longo has never used or observed asbestos-containing thermal insulation products in real-life work environments and never published, and therefore subjected to the peer-review process, the Longo/MAS experiments at issue here.

Decades ago, Longo brought various asbestos-containing products into a small containment chamber and manipulated them to create dust.  These experiments did not simulate real-world work environments or attempt to re-create conditions similar to any particular plaintiff's alleged exposure or product use.  William Longo Dep. 28:12-29:6, Feb. 12, 2007.  Instead, they were generic dust generation experiments videotaped in a dark room with theatrical lighting.  Although the products varied in type and asbestos content, the visual effect was always the same — clouds of dust floating through a high-powered light beam and set-off against a black background.  The experimenters wore facemasks, air tanks, and in some cases special anti-contamination suits.

Longo's videotaped experiments — more than 80 exist covering dozens of products — were created generically for asbestos litigation.  The videos were sold at $2,500 apiece to plaintiffs' lawyers across the country for their asbestos personal injury cases, just like this case, *see Tyre*, 2003 WL 26474173, at *3, and Longo began advertising

his services as an expert witness soon after starting MAS:



Longo readily admits that Longo/MAS experiments do not simulate the exposure of any particular plaintiff or his work environment.  William Longo Dep. 28:12-29:6, Feb. 12, 2007.  These experiments were not conducted to demonstrate, re-create, or illustrate Plaintiffs' alleged work environment at all.  In fact, the experiments Plaintiffs intend to offer, the "Kaylo III: A Work Practice Study" and "Kaylo IV: A Work Practice Study," were created decades before any fact and expert discovery was ever conducted in these cases.  *See* Pl.'s Supplementation, No. 3:99-cv-00475-bbc, ECF No. 22; Pl.'s Supplementation, No. 3:05-cv-00219-bbc, ECF No. 24.

The Kaylo experiments, like the scores of other Longo/MAS experiments, were all conducted inside a dark-lined containment chamber, where high-intensity theatrical

- 4 -

lights were repeatedly switched off and on, and directed to shine through the dust. The beams of light were then directed at an angle to maximize the light "scatter" on the dust particles to create a "Tyndall effect" (similar to turning on a car's high beams during a snow storm). But the videos and light scattering created by the "Tyndall effect" provide no quantitative information about the intensity, dose, duration, fiber type, fiber length, or human exposure to respirable asbestos fiber. In fact, none of what is actually visible on the video is respirable asbestos. For assessing the actual exposure that may occur from an asbestos-containing product from a health standpoint, it is only the respirable asbestos that enters a person's breathing zone that is relevant.

The Longo/MAS videos simply do not show respirable asbestos, but rather dramatize generic dust, which is created from manipulating the products, including particles nowhere near the breathing zone:



Longo admits that "[w]e don't try to quantitate with Tyndall lighting."  William Longo Dep. 28:4-5, Feb. 12, 2007.  According to Longo, "a very large portion of the Kaylo dust we see would be of no interest to us from an industrial hygiene point of view," because "most of what's there is not asbestos."  William Longo Test. 1132:15-1133:13, Sept. 16, 2003.  He also admits that, by looking at the videos, there is no way to distinguish the asbestos fibers from the non-asbestos dust, quantify the asbestos fibers, or determine what percentage of the dust is respirable versus non-respirable.  William Longo Dep. 120:16-21, 121:6-18, 125:7-14, 108:13-18, Feb. 12, 2007.  So Longo would speculate that, while the "majority" of the dust seen in his videos is not asbestos, the percentage of asbestos in the visible dust should be similar to the percentage of asbestos in the product (*i.e.*, if a product has 15 percent asbestos, then 15 percent of the visible dust is asbestos).  *Id.* at 48:17-49:1.  Longo's unsupported speculation is not only wrong, it is proved false as well.

As explained by the noted Stanford University physicist, and expert in the field of optics and light scattering, Dr. Lambertus Hesselink, respirable asbestos fibers are too small to be seen on the Longo/MAS experiments and the resolution of the videotape technology is incapable of capturing light that might scatter off of a respirable asbestos fiber.  *See* Lambertus Hesselink Aff. ¶¶ 1-8, March 7, 2012.  In other words, the scientific claims made in support of the Longo videos literally defy the laws of physics.  *See id*.  What is seen on the video is light scattering off of the large particles of the *non-asbestos* portion of the products (which make up 80 to 85 percent is some of the experiments) or aggregations of *non-respirable* materials.  None of the visible dust is relevant.

Moreover, as explained by Dr. Hesselink, neither respirable asbestos fibers nor light scattering from these fibers are visible in the videos. *Id.* at ¶¶ 1-8. Not only is the video equipment and technology not generally accepted as a method to show fibers of the size at issue (which are microscopic), the optical technique is too insensitive by orders of magnitude to record light scattered by the fibers (which are measured by a microscope). *Id.* at ¶ 5. The fact that asbestos is released when asbestos-containing thermal insulation, like Owens-Illinois Kaylo, is cut or sawed is not disputed in these cases; what is disputed is how much asbestos. The Longo/MAS experiments do not answer that question, and in fact, they obfuscate it and grossly mislead the jury — which is, of course, their true purpose.

## LEGAL STANDARD

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). By its terms, Rule 702 allows testimony only by an "expert," someone with the requisite "knowledge, skill, experience, training, or education," where (a) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

*Daubert* therefore requires the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements are satisfied before allowing the jury to hear a proffered expert. 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147-49

(1999); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012).  District courts have broad discretion in deciding the admissibility of expert evidence.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)).  It is clear, however, that while a district court has wide latitude to decide how to measure reliability, it must do so.  *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002).

Before admitting expert evidence, a district court employs a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue.  *Bielskis*, 663 F.3d at 893-94. "The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152).  The proponent of the expert bears the burden of showing that the expert's evidence would satisfy the *Daubert* standard by a preponderance of the evidence.  *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

### I.     The Longo/MAS Experiments Were Not Properly Disclosed.

To begin with, Plaintiffs did not disclose an expert report by Longo, or any other MAS representative, under the Scheduling Order and Federal Rule of Civil Procedure

- 8 -

26(a)(2)(B).  Plaintiffs' expert reports were due by August 15, 2012.  *See* Order 1, Sept. 10, 2012, attached as Ex. A.  Two years later, Plaintiffs filed a supplementation that included Longo's curriculum vitae, the "Kaylo III: A Work Practice Study" dated October 2006, and the "Kaylo IV: A Work Practice Study" dated April 2008. *See* Pl.'s Supplementation, No. 3:99-cv-00475-bbc, ECF No. 22; Pl.'s Supplementation, No. 3:05-cv-00219-bbc, ECF No. 24.

Not only was Plaintiffs' disclosure two years late, but it also failed to satisfy the clear federal requirements.  Fed. R. Civ. P. 26(a)(2)(B); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998).[2]  This supplementation does not include any report that was signed, does not specify whether any exhibits would be used, does not state the expert's compensation, and does not list the cases the expert had testified in. *See* Pl.'s Supplementation, No. 3:99-cv-00475-bbc, ECF No. 22; Pl.'s Supplementation, No. 3:05-cv-00219-bbc, ECF No. 24.  Indeed, the supplementation does not even state the expert's opinions.  *Id.*  It merely contains some computations and related papers.  *Id.*

A.   **There Is No Justification for Plaintiffs' Disclosure Violations.**

The Federal Rules of Civil Procedure are clear that, when a party fails to obey a court order requiring disclosure, the party cannot use the evidence at trial.  Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 16(f).  The Seventh Circuit has held that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its

---

[2] Expert reports also "must be sufficiently complete to satisfy the criteria of the *Daubert* decision, and one of those criteria, as we have been at pains to emphasize, is that the expert show how his conclusion is grounded in—follows from—an expert study of the problem." *Smith v. Sofamor, S.N.C.*, 21 F. Supp. 2d 918, 922 (W.D. Wis. 1998) (quoting *Navarro v. Fuji Heavy Indus., Ltd.*, 117 F.3d 1027, 1031 (7th Cir. 1997)).

violation of Rule 26(a) was either justified or harmless." *Salgado*, 150 F.3d at 742; *accord Tamari v. Bache & Co.*, 729 F.2d 469, 472 (7th Cir. 1984) ("culpability of a party who fails to comply with a court order determines only which sanctions the court should impose and not whether any sanctions are appropriate at all").  In fact, the Seventh Circuit has affirmed sanctions for similar misconduct in two asbestos cases. *Shine v. Owens-Illinois, Inc.*, 979 F.2d 93, 96 (7th Cir. 1992); *Harris v. Owens-Corning Fiberglas Corp.*, 102 F.3d 1429, 1433 (7th Cir. 1996).

Much like the plaintiffs in *Salgado*, *Shine*, and *Harris*, Plaintiffs here failed to disclose Longo and the Longo/MAS experiments under the Scheduling Order and Federal Rules of Civil Procedure.  Any misunderstanding about the deadlines, and potential ambiguities or difficulties in meeting them, is not substantial justification. *Shine*, 979 F.2d at 95; *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012).  Nor are Plaintiffs excused from their attorneys' failures. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client."); *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004); *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003).  "Aside from the fact that the 'district court is not required to fire a warning shot' prior to imposing sanctions," *Shine*, 979 F.2d at 96, the MDL 875 court's scheduling orders provided by their very language adequate — indeed, explicit — notice that evidence not disclosed under the orders could be excluded.  There simply is no justification for the Plaintiffs' disclosure violations.

**B.      There Is Harm in Plaintiffs' Disclosure Violations.**

Plaintiff also cannot show their disclosure violations were harmless.  In deciding whether non-compliance could be harmless, district courts may consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble*, 670 F.3d at 760.

Here, the MDL 875 Court has already evaluated these factors and entered Rule 37 sanctions against Plaintiffs and their counsel.  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 289 F.R.D. 424 (E.D. Pa. 2013).  The MDL 875 Court struck Plaintiffs' expert report and found clear and willful disregard: "While we hesitate to assign willfulness to any counsel who appears before us representing truly injured parties, we have no difficulty making such a conclusion here where CVLO, throughout the litigation of these cases, has been repeatedly reminded of its obligations to follow the scheduling orders and to provide complete and timely discovery."  *Id.* at 427.

Owens-Illinois requests that this Court, in its post-remand and trial court role, follow the lead of the pretrial proceedings in MDL 875, *id.*, as well as the decisions by the Seventh Circuit in other asbestos cases, *see Shine*, 979 F.2d at 95; *Harris*, 102 F.3d at 1434.  Allowing the new "supplementation" would require either reopening discovery (and possibly delaying trial) or denying Owens-Illinois the opportunity to cross-examine Longo on his new, undisclosed opinions and an adequate chance to offer expert testimony in rebuttal. These are exactly the types of "harms" that disclosure

deadlines are intended to prevent. *See* Fed. R. Civ. P. 26, Advisory Comm. Notes (1993) (explaining that expert disclosure requirements allow an opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses").

Faced with this motion, Plaintiffs may try again to avoid, not meet, their disclosure obligations with an apparent belief that their case should be different. The myth that Plaintiffs are entitled to special, reduced burdens of production, procedural shortcuts, and relaxed evidentiary standards has no foundation in law. The substantive, procedural, and evidentiary rules are well-established, and they are the same rules that apply in every other federal case. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 289 F.R.D. at 424-27; *Shine*, 979 F.2d at 96; *Harris*, 102 F.3d at 1433. Plaintiffs must be required to, and must in fact, meet their burden and comply with the rules and court orders in the same manner, and to the same extent, as every other litigant and attorney in federal court. Because Plaintiffs cannot show their disclosure violations were either substantially justified or harmless, the Longo/MAS experiments should be excluded.

## II.    The Longo/MAS Experiments Do Not Fit the Facts.

Putting aside the issue of improper disclosure, the Longo/MAS experiments should be excluded because they do not "fit" the facts of these cases under *Daubert* and Rule 702. *Krik v. Crane Co.*, ___ F. Supp. 3d ___, 2014 WL 5350463, at *4 (N.D. Ill. Oct. 21, 2014); *Daubert*, 509 U.S. at 591. The Longo/MAS experiments were not, and could not have been, designed to show the exposures or conditions that Plaintiffs sustained, as they were created decades before discovery. As the Supreme Court explained, experts

must offer evidence "sufficiently tied to the facts of the case" so as to "fit" the case. *Daubert*, 509 U.S. at 591; *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996) (excluding videotaped demonstration where the forklift model in the video was not sufficiently similar to the forklift in the accident).

### A.   Insufficient Environmental Fit.

In the generic Longo/MAS experiments, however, the environmental conditions are in no way tied or fit to the facts in these cases, nor were they designed to be sufficiently tied or fit.  Unlike Plaintiffs' alleged exposures, Longo's demonstrations were performed in a "containment chamber," with controlled airflow and temperature, dark walls, little ambient light, and theatrical spotlights.  A variety of industrial hygiene factors distinguishes these made-for-litigation videos from the actual conditions in these cases, such as room size, ventilation, dust suppression techniques, products used, duration of exposure, and variability of exposure.  *See generally* Reference Guide on Exposure Science, in *Reference Manual on Scientific Evidence* 505-48 (Fed. Judicial Ctr. 3d ed. 2011).

As the court held in *Krik*, the "Longo/MAS Videos simply have nothing to do with [the plaintiff] at all and instead were created as part of a generalized litigation strategy developed before this case was even filed." 2014 WL 5350463, at *5. The Longo/MAS experiments are non-specific demonstrations that show dust clouds from the manipulation of products in an artificial setting.  They do not resemble the working conditions in these cases.  They do not attempt to re-create, simulate, demonstrate, or quantify how much asbestos exposure Plaintiffs may have sustained — nor could they

since they were created decades before the parties conducted discovery.

Indeed, Longo admits that the Longo/MAS experiments "do not recreate the workplace environment." William Longo Dep. 28:18-19, Feb. 12, 2007. Longo also concedes that, "We don't ever claim that the levels that we found are the exact levels that any one plaintiff may have been exposed to." *Id.* at 29:4-6. And Longo's own published work outside of the asbestos litigation confirms that the Longo/MAS experiments are not valid simulations because they are not faithful reproductions. *Krik*, 2014 WL 5350463, at *5. As Longo admits, "a simulation 'is only valid if the simulation is realistic, this is, if the work conditions and worker performance are faithfully reproduced.'" *Id.* (quoting Dale Keyes *et al.*, Baseline Studies of Asbestos Exposure During Operation and Maintenance Activities, 9 *Appl. Occup. Envtl. Hyg.* 853, 854 (Nov. 1994), attached as Ex. B)).

## B. Insufficient Product Fit.

Moreover, Longo has never performed the Longo/MAS experiments on what he can prove was Owens-Illinois's Kaylo insulation. *See Krik*, 2014 WL 5350463, at *4. The Kaylo product that Longo tested in his original study was manufactured, he believes, sometime around 1966 — well after Owens-Illinois had sold the Kaylo business to another company, Owens-Corning Fiberglas. William Longo Dep. 30:1-17, Apr. 30, 2007. Longo has admitted that he does not know (and has no way of knowing) whether any of the pipe or block insulation he has seen was manufactured by Owens-Illinois. *Id.* at 147:1-13.

Longo's unscientific position is that, while he cannot prove whether he tested

actual Owens-Illinois Kaylo, it does not matter because every asbestos-containing calcium silicate insulation will "behave the same."   William Longo Dep. 80:23-81:9, 92:12-93:19, Feb. 23, 2013.   As explained below, however, Longo's own work disproves his fungibility assumption.   Plaintiffs and Longo cannot carry their burden under *Daubert* and Rule 702 because the Longo/MAS experiments are neither tied to these Plaintiffs' cases nor tied to the product in these cases, and are not based on any facts, data, or real-world conditions relevant to these cases.  *Krik*, 2014 WL 5350463, at *4.

### III.   The Longo/MAS Experiments Are Not Scientifically Reliable.

Plaintiffs also cannot sustain their burden that Longo's reasoning or methodology is scientifically reliable under *Daubert* and Rule 702.   *Krik*, 2014 WL 5350463, at *4-5.  Since *Daubert*, "parties relying on expert evidence have had notice of the *exacting* standards of reliability such evidence must meet."  *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (emphasis added).

As the Supreme Court held, the reliability of an expert's principles and methods should be examined by factors: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community.   509 U.S. at 593-94.   These factors "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152.

Longo's experiments, and his unsupported speculation that you can see respirable asbestos fibers, fail to meet the exacting standards required for expert evidence under *Daubert*.  He has never subjected his videos to peer review and publication; never proved these videos as accepted in the scientific community; never proved that his theory or technique can be (and has been) tested; and never demonstrated the potential rate of error in his videotaped demonstrations.  *Krik*, 2014 WL 5350463, at *4-5.  The Longo/MAS experiments are not based on the conditions and product in these cases, as discussed above, and completely lack any type of "reliable foundation."  *Daubert*, 509 U.S. at 597.  As many courts have held, the Longo/MAS experiments "are not the product of 'reliable principles' and methods' as required by Rule 702."  *Krik*, 2014 WL 5350463, at *5 n.5 (quoting *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-cv-3013, 2013 WL 2477077 (C.D. Cal. May 9, 2013)).

Furthermore, the lighting and video used by Longo for "his visualization" of asbestos fiber exposure are not accepted or generally reliable in the field of light scattering, optics, image processing, and data analysis and visualization.  Lambertus Hesselink Aff. ¶ 7.  Longo's video camera, videotape, and television are the wrong media to show invisible particles.  They take a large image (the size of a room) and shrink it down (to the size of a television screen), which de-magnifies the image.  Respirable asbestos fibers of the size measured by Longo are invisible to the naked eye and must be magnified hundreds to thousands of times to become visible.  *Id.* at ¶ 8.

The Supreme Court and the Seventh Circuit prohibit experts, like Longo, who will testify to courtroom methods that are not used "when [experts] are doing their

regular professional work rather than being paid to give an opinion helpful to one side in a lawsuit." *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996). The same is true here. The Longo/MAS experiments, which were "specifically prepared for purposes of litigation are not, by definition, 'of a type reasonably relied upon by experts in the particular field.'" *United States v. Marine Shale Processors*, 81 F.3d 1361, 1370 (5th Cir. 1996) (quoting *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994)). They are exactly the type of junk science that *Daubert* should exclude, as the courts in *Krik* and across the country have held. *Krik*, 2014 WL 5350463, at *4-5 (collecting cases). Based on the clear precedent in *Krik*, *Sclafani*, *Lamar*, and *Tyre*, the Longo/MAS experiments are not scientifically reliable and should be excluded. *Id.*

## IV.   The Longo/MAS Experiments Are Not Relevant and Will Not Assist the Jury.

Furthermore, the Longo/MAS experiments are improper because they are not relevant and will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591 ("This condition goes primarily to relevance."). These videos bear no relation to the Plaintiffs' alleged exposures to Owens-Illinois Kaylo. Moreover, the Longo/MAS experiments are not helpful to the members of the jury because respirable asbestos fibers are not visible on the videos, and the visible dust does not reflect the amount of asbestos exposure.

### A.   Respirable Asbestos Is Not Visible on the Longo/MAS Experiments.

First, the Longo/MAS experiments provide no information as to how much asbestos the Plaintiffs were exposed to, and, in fact, they will confuse and deceive the jury. We cannot see respirable asbestos fibers with the naked eye. Looking at the

videos does not give the jurors any indication as to how much asbestos could be inhaled.  As Dr. Hesselink testifies in his affidavit, respirable asbestos fibers are not visible from the Longo/MAS experiments.  Lambertus Hesselink Aff. ¶ 5.  The videotapes also do not depict asbestos fibers because the size of the fibers, as allegedly measured by Longo, is too small to see with his video techniques.  *Id.* at ¶ 5(a).

The technique used by Longo to videotape the demonstrations is far too insensitive — by several orders of magnitude — to record the light scattered by asbestos fibers.  Additionally, Longo's methodology is not accepted as a method to show particles this small.  The proper instrument for observing sub-micron particles is an optical microscope or an electron microscope, which would magnify small particles and make them visible to the human eye or a camera.  By contrast, Longo's video equipment actually reduces the image of the particles, making it even more difficult to see sub-micron particles.  *Id.* at ¶ 5(e).  In other words, the videotaped demonstrations cannot depict or "visualize" any of the asbestos fibers that Longo measured.  *Id.* at ¶ 5(f).  Thus, the Longo/MAS experiments could mislead the jurors to believe that the dust they see is respirable asbestos, when in reality this belief is far from the truth.

**B.    Visible Dust Does Not Quantify Asbestos Exposure.**

Second, the visible dust in the Longo/MAS experiments does not show the amount of asbestos exposure at all.  Over the decades, Longo has used several asbestos-containing insulation products in his experiments.  Most of these products contained about 15% asbestos, but at least one, Unibestos, contained at least 60% asbestos.  Despite this massive difference in asbestos content, Longo admits the insulation products look

essentially the same in his videos — even though the amount of asbestos exposure is dramatically different. William Longo Dep. 48:10-48:14, 53:15-53:17, Feb. 12, 2007; William Longo Dep. 19:9-20:10, May 1, 2006.  Longo has even admitted that amount of dust visualized using the "Tyndall effect" would be the same if he was cutting *asbestos-free*, or asbestos-containing Kaylo.  William Longo Dep. 137:6-10, Sept. 19, 1997.

The unsupported speculation that the amount of asbestos in the visible dust equals the amount of asbestos in the product (i.e., if the product had fifteen percent asbestos, then fifteen percent of the dust you see is asbestos) is flat-out wrong.  From Longo's own experiments, Unibestos insulation released more than five times the amount of asbestos than other insulation materials.  William Longo Dep. 19:9-20:10, May 1, 2006 (identifying 1.72 fibers of asbestos per cubic centimeter (f/cc) for Unibestos and .39 f/cc for Kaylo).  As yet another example, Pabco insulation and Owens-Corning Fiberglas insulation have about 15% asbestos, but Pabco insulation created an exposure nearly double the amount of asbestos fibers when Longo manipulated them.  *Id.* at 19:9-20:10 (identifying .7 f/cc for Pabco and .39 f/cc for Kaylo).  What you see is not what you get.  Although the videos of cutting insulation all look the same, according to Longo, the asbestos exposure varies enormously.  You simply cannot see respirable asbestos in the Longo/MAS experiments.  Accordingly, Longo's experiments will not help the jurors to evaluate actual asbestos exposure.

**V.    The Prejudicial and Misleading Effect of the Longo/MAS Experiments Far Outweighs Any Probative Value.**

Finally and critically, the Longo/MAS experiments should be excluded because

any probative value is substantially outweighed by their prejudicial effect and their potential for misleading the jury. *Krik*, 2014 WL 5350463, at *6. As *Daubert* teaches, expert evidence "can be both powerful and quite misleading because of the difficulty in evaluating it." 509 U.S. at 595. District courts should therefore exercise "more control over experts" under Rule 403 under *Daubert*. *Id.* (citation omitted).

That control is especially true for videotaped expert evidence. *Krik*, 2014 WL 5350463, at *6; *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996) (excluding videotape under *Daubert* "where technical information is involved, it is easier for the jury to get lost in the labyrinth of concepts," and it "is especially true because the unreliable evidence here would have been presented in a [videotape] format"); *Finchum v. Ford Motor Co.*, 57 F.3d 526, 530 (7th Cir. 1995) (excluding videotape which is "just similar enough to the Finchums' accident to confuse the jury and leave jurors with the prejudicial suggestion"); *Swajian v. Gen. Motors Corp.*, 916 F.2d 31, 36 (1st Cir. 1990) (excluding videotape and holding that "[i]f a videotaped test is insufficiently comparable to the circumstances in the case, the videotape is inadmissible").

As the court explained in *Krik*, if the Longo/MAS experiments have "any probative value at all, it is substantially outweighed by the prejudicial impact that such stark videos would have upon the jury and would cause significant jury confusion." 2014 WL 5350463, at *6. The only result from these experiments is showing jurors a highly exaggerated "snow storm" of dust surrounding the workers in the chamber, and giving them the prejudicial impression that the "snow storm" is asbestos. None of what they see is asbestos. The videos also show a small, ominous, dark chamber, with

- 20 -

theatrical lighting, and a soundtrack that vacillates from eerie silence to loud buzzing noises. That prejudice is exacerbated when the courtroom lights are dimmed to display the videotapes, while Longo wears various breathing protection that further insinuate that something extremely dangerous is being performed. The "DANGER" label on the waste container is yet another source of unfair prejudice. All of this imagery will, by design or not, inflame the jury and severely prejudice Owens-Illinois.

<u>CONCLUSION</u>

The Longo/MAS experiments are not reliable evidence, and they are not relevant to the facts in these cases in any event. They do not depict respirable asbestos fibers, they do not provide quantitative data on exposure, and they are neither designed to, nor do they, simulate the Plaintiffs' alleged asbestos exposure. At a minimum, Owens-Illinois requests that this Court exclude the videotaped experiments conducted by Plaintiffs' improperly disclosed expert, William Longo Ph.D. and his company Materials Analytical Services, as well as any other evidence or testimony related to those experiments under Federal Rule of Civil Procedure 37, Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated: January 8, 2015              Respectfully submitted,

                                    By:   /s/ Brian O. Watson
                                          Edward Casmere
                                          Brian O. Watson
                                          Rachel A. Remke
                                          Schiff Hardin LLP
                                          233 S. Wacker Dr. Suite 6600
                                          Chicago, Illinois  60606
                                          (312) 258-5500
                                          (312) 258-5600 (facsimile)

                                          *Attorneys for Defendant*
                                          *Owens-Illinois, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on January 8, 2015, these papers were filed with the Clerk of the Court for the United States District Court for the Western District of Wisconsin using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

15640-0889
CH2\15927076.2