**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| GARY SOUJA, Individually and as Special Administrator for the Estate of OSWALD F. SUOJA, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) ) | Case No. 99-cv-0475 |
| OWENS-ILLINOIS, INC., | ) ) | |
| Defendant.[1] | ) | |
| BARBARA CONNELL, Individually and as Special Administrator for the Estate of DANIEL CONNELL, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-00219 |
| | ) | |
| OWENS-ILLINOIS, INC., | ) ) | |
| Defendant. | ) | |

**OWENS-ILLINOIS, INC.'S**
**MOTION TO EXCLUDE BARRY CASTLEMAN, SC.D.**

Owens-Illinois, Inc. ("Owens-Illinois") moves to exclude Barry Castleman Sc.D. from testifying at all, or alternatively, from testifying about the specific knowledge or conduct of Owens-Illinois (*e.g.*, what it knew or should have known) and the fields in which he has little or no expertise (*e.g.*, medicine, industrial hygiene, toxicology, corporate ethics) under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

---

[1] Counsel for Owens-Illinois and Plaintiff agreed in writing to settle the *Suoja* case on December 18, 2014, but the final release has not been executed. Pursuant to the court-ordered deadlines leading to trial, Owens-Illinois submits this *Daubert* motion out of an abundance of caution and without prejudice to the parties' settlement agreement. *See* Order, Aug. 5, 2014, ECF No. 20.

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  If necessary, Owens-Illinois further requests a *Daubert* hearing to determine the admissibility of Castleman's testimony.

## BACKGROUND

Castleman is a creature of this litigation.  He is not a medical doctor, not an industrial hygienist, and not a historian in those areas.  He brings no recognized field of intellectual, scientific, or experience-based discipline to the courtroom.  Instead, he is a polemicist who seeks to substitute his own opinions for the jury's review of the actual evidence. Indeed, since he was a graduate student, Castleman has been a paid "researcher" for the asbestos plaintiffs' bar. In 1977 he prepared his first opinionated book report on "The Development of Knowledge About Asbestos Disease," at the request of an asbestos plaintiffs' lawyer, as something "which he [the lawyer, not Castleman] could use to present the evidence in court." Barry Castleman Dep. 26-27, Aug. 13, 1982.

Years later, Castleman turned this advocacy-driven "research" into a doctoral thesis and book, *Asbestos: Medical and Legal Aspects*.  The dust jacket informs the reader exactly why Castleman wrote his book:



Barry Castleman, *Asbestos: Medical and Legal Aspects* (1st ed. 1984). Inside, Castleman also dutifully acknowledged the asbestos plaintiffs' lawyers "who gave generously of their time to assist in the compilation of material and review its presentation." *Id.* at xxi.

Castleman's opinions are more political than scientific. From his role as an anti-corporate, anti-asbestos activist, Castleman employs no principles or methods that professionals in scientific fields apply to their work. His expert report and book, which is incorporated into his expert report, read less like an expert's unbiased assessment and more like an improper closing argument. *See* Barry Castleman Rep. 1-14 (adopting and incorporating book), attached as Ex. A; *e.g.*, *Asbestos: Medical and Legal Aspects* 769 (5th ed. 2005), attached as Ex. B. In one of many illustrations, Castleman takes on corporate ethics and criminology with a section called "Criminal Sanctions and Personal Responsibility." *Id.* at 765. Plaintiffs would have Castleman testify that, "The members of this privileged class decide what will be manufactured, where and how it will be made and sold. The asbestos epidemic, whose toll of preventable deaths in the U.S. alone will at least be in the hundreds of thousands, offers opportunity to see how the criminal law or lack of it relates to public health." *Id.* at 769-70.

Indeed, Castleman has repeatedly testified in favor of criminal liability against former manufacturers and sellers of asbestos-containing products:

> Individuals who profit by murder would be punished for wantonly endangering the people in this country. It was never the "American Way" to sell death in Kaylo boxes and call the stuff non-toxic. If we want to prevent that business from continuing, the rules of the marketplace will have to be changed. Those who conceal deadly truths from their workers and customers are almost: never confronted personally with the

fact that they have committed a monstrous crime. My own feeling is that no one in the executive suites would lightly risk imprisonment and humiliation for a quick buck.

Barry Castleman Cong. Test. 28, Nov. 15, 1979, attached as Ex. C.

I think there should be personal, criminal liability for selling [asbestos-containing products] without warnings to consumers . . . . The history of asbestos product marketing is unfortunately replete with stories of what many people might regard as toxic corporate crime.

Barry Castleman Cong. Test. 83, July 31, 2001, attached as Ex. D.

The asbestos industry is a quasi-criminal industry in much of the world today, using its power to corrupt political processes and control the media when challenged.

Barry Castleman Cong. Test. 13, Mar. 1, 2007, attached as Ex. E.

With his activist's review of history, Castleman is neither scientifically legitimate nor principled.  He is not a trained historian, and does not apply the scientific principles of the historical method.  Barry Castleman Dep. 22:15-24:12, May 27, 2008 ("I don't know what you mean by 'historical method.' That sounds like lawyer talk to me."). Instead, Castleman only reads the historical records that he is willing to consider, based on his pre-determined opinions, and then refuses to look for, or even read, records that may be contrary to his opinions:

> Q.    And it's fair to say, Doctor, that you haven't looked for that material [testimony of Owens-Illinois Kaylo Division employees] either, right?
>
> **A.    That material has its way of finding me. . . .**
>
>                             . . . .
>
> Q.    My question, however, is whether or not you have done anything independently to go out and search out information that would add to your body of knowledge about Owens-Illinois' perspective when it manufactured and sold Kaylo in the 1940s and '50s?
>
> **A.    No.**

Barry Castleman Dep. 48:17-20, 50:8-19, Jan. 3, 2002.

Castleman then excuses his failure to look for relevant information, which may be contrary to his opinions, by rationalizing that "the stuff, if it was significant, would have come to my attention and hasn't." *Id.* at 44:18-20.   In fact, Castleman refuses to read the testimony of the corporate witnesses whose conduct he vilifies:

> Q.    Have you ever testified that you did not read the testimony of Mr. Hazard?
>
> **A.    I may have. Like I say, I think I've probably seen excerpts of it. And my memory of what I saw may not be totally consistent in all the times I've been asked about it. It's not something that I've written about, it's not something that I paid particular attention to.**
>
> Q.    It's not discussed in your book, right; that is, Mr. Hazard's testimony is not discussed in your book?
>
> **A.    I don't think so. I think that's correct.**
>
> Q.    And Mr. Grimmie's testimony is not discussed in your book, right?
>
> **A.    That's right.**

Barry Castleman Dep. 36:9-25, Sept. 28, 2010.

Castleman's belief that he has no obligation to test or confirm his assumptions is blatantly unscientific and will always support his personal view that corporations are criminals.   Indeed, his unwillingness to consider all facts and data — including those which may contradict his opinions — is the antithesis of good science.   Castleman is the quintessential expert for hire, whose knowledge does not and cannot compare to the actual subject matter of his testimony, and consists of nothing more than his subjective beliefs or unsupported speculation.

Accordingly, three courts in this circuit and two courts in Wisconsin have

excluded Castleman's testimony in their gatekeeping role.  As these courts and others nationwide have held, Castleman's advocacy is inconsistent with the standards for legitimate expert testimony.   Plaintiffs will not, and cannot, answer the crucial questions: (1) what is Castleman's actual field of expertise, and (2) what reliable principles and methods for that field has he applied to testify as an expert witness?  In fact, Castleman admits that his opinions have no value for the jury:

> Q.     And did you say in the Neal case when you were asked if in your testimony you thought you could give opinions, did you say,
>
>> I think that it really doesn't aid the jury a great deal to know what I think about all this stuff.  I think that it is, and of course this opinion may or may not be shared by other parties involved in these actions, but I think that the documentation, if it can be presented in a reasonably complete way, speaks well enough for itself that a jury should be able to understand it and evaluate it.
>
> **A.      I still think that's true.**

Barry Castleman Test. 1900:3-14, Mar. 21, 1986; Barry Castleman Dep. 76:15-18, Aug. 13, 1982 ("I could make factual statements that go to the question of accessibility of the information. But I don't think that it would be useful to go beyond that into the realm of opinion.").

## <u>LEGAL STANDARD</u>

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  By its terms, Rule 702 allows testimony only by an "expert," someone with the requisite "knowledge, skill, experience, training, or education,"

where (a) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

*Daubert* therefore requires the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements are satisfied before allowing the jury to hear a proffered expert. 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). District courts have broad discretion in deciding the admissibility of expert evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'" (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011))). It is clear, however, that while a district court has wide latitude to decide how to measure reliability, it must do so. *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002).

Before admitting expert evidence, a district court employs a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Bielskis*, 663 F.3d at 893-94. "The purpose of the *Daubert* inquiry is to scrutinize the proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field' so as to be deemed reliable enough to present

to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152).   The

proponent of the expert bears the burden of showing that the expert's evidence would

satisfy the *Daubert* standard by a preponderance of the evidence.   *Lewis v. CITGO*

*Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

**I.      Courts Have Rejected Castleman Repeatedly in this Circuit and Wisconsin.**

Castleman has made a career in asbestos litigation as a paid advocate. In this

circuit and Wisconsin, however, his testimony has been excluded by at least five courts.

*Krik v. Crane Co.*, ___ F. Supp. 3d ___, 2014 WL 5350463, at *2-3 (N.D. Ill. Oct. 21, 2014);

*Rutkowski v. Occidental Chem. Corp.*, No. 83 C 2339, 1989 WL 32030, at *1-2 (N.D. Ill. Feb.

16, 1989); *Flood v. Owens-Illinois, Inc.*, No. 86 C 8947, Hr'g Tr. 13:25-14:1 (N.D. Ill. Mar.

15, 2004), attached as Ex. F; *Vandermeuse v. Allied Insulation Supply Co., Inc.*, No. 07 CV

55, slip op. at 1-2 (Cir. Ct. Kewaunee Cty. Wis. Feb. 5, 2014), attached as Ex. G; *Sorcic v.*

*Keene Corp.*, No. 657-163, slip op. at 1-3 (Cir. Ct. Milwaukee Cty. Wis. Apr. 3, 1989),

attached as Ex. H.

As the Northern District of Illinois held in *Rutkowski*, Castleman is simply an

unqualified "librarian of asbestos research" who "lacks the medical background and

experience to evaluate and analyze the articles in order to identify which parts of the

articles best summarize the author's conclusions." *Rutkowski*, 1989 WL 32030, at *1.  In

*Flood*, the court accurately summed up Castleman when it granted Owens-Illinois's

*Daubert* motion to exclude his testimony:

- 8 -

> What he has done, if you ask me, is purely subjective. . . . He is, if you will, acting a middleman, and I do not think that is sufficient expertise to do anything in this case relevant to giving him a license to both offer his opinions de facto or de jur[e].  He offers opinions de facto be selecting those things he wants the jury to hear.

> *Flood*, Tr. 13:25-14:1.

Most recently, the court in *Krik* ruled that Castleman could not testify (1) "as to what any particular Defendant knew or should have known at any given time regarding asbestos," or (2) in the "areas in which Dr. Castleman has little or no demonstrated expertise (such as medical literature)." *Krik*, 2014 WL 5350463, at *3.

Likewise, Wisconsin courts have held Castleman's opinions to be baseless.  In *Sorcic*, the trial court excluded Castleman and explained that, rather than Castleman, "we could just have lay witnesses come up here and read a list of everything they found in the Milwaukee County library or any other library that he felt inclined to list."  *Sorcic*, slip op. at 1-3.  Similarly, the trial court in *Vandermeuse* ruled that Castleman could only "offer factual testimony regarding the dates of publication and contents of historical documents and literature" and that he was "precluded from offering any opinions regarding Owens-Illinois."  *Vandermeuse*, slip op. at 1-2.  As the precedent in *Rutkowski*, *Flood*, *Krik*, *Sorcic*, and *Vandermeuse* makes clear, Castleman's opinions are not proper expert testimony and should be excluded.

## II.     Castleman's Opinions Do Not Satisfy the *Daubert* Standard.

### A.     Castleman Is Not Qualified to Offer His Opinions.

Castleman's academic credentials do not, and cannot, qualify him to testify in fields where he has no relevant expertise. "Whether a witness is qualified as an expert

can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616, 617 (7th Cir. 2010) (citations and brackets omitted). But Castleman holds no specialized knowledge in the fields of history, medicine, toxicology, industrial hygiene, or corporate ethics. His opinions are unrelated to whatever expertise he may have. *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion" (citation omitted)).

As federal courts across the nation have held, Castleman lacks any qualification to offer medical opinions. He does not "possess the expertise necessary to read complex, technical medical articles and discern which portions of the articles would best summarize the authors' conclusions." *In re Related Asbestos Cases*, 543 F. Supp. 1142, 1149-50 (N.D. Cal. 1982) (refusing to qualify Castleman as an expert); *Franz v. Celotex Corp.*, No. 84-1316, slip op. at 1 (W.D. Pa. Jan. 24, 1989) (finding "Castleman may testify as a bibliographer only; therefore he will not be permitted to express any opinion on the content of the articles or be allowed to testify as an expert"), attached as Ex. I; *Kendrick v. Owens Corning Fiberglas Corp.*, No. C-85-178 AAM, slip op. at 8, ¶ 15 (E.D. Wash. May 9, 1986) (excluding Castleman in accordance with *In Re Related Asbestos Cases*), attached as Ex. J; *Rutkowski*, 1989 WL 32030, at *1 (finding Castleman "lacks the medical background and experience to evaluate and analyze the articles in order to identify which parts of the articles best summarize the author's conclusions"); *Krik*, 2014 WL 5350463, at *3 (precluding Castleman from "areas in which Dr. Castleman has little

or no demonstrated expertise (such as medical literature)").

Likewise, a historian may be qualified to offer opinions how knowledge of asbestos health risks developed. Historians have reliable principles and methods to review historical materials. *E.g.*, G. Reiner, *History: Its Purpose and Method* (1950); R. Shafer, *A Guide to Historical Method* (1974). Trained historians apply the historical method to historical material to explain the context of the day: (1) they collect a defined universe of materials, (2) they prioritize the materials, (3) they search for corroborating and contrary evidence, and (4) they test the product of their research. Castleman is not a historian of any type and not qualified to apply their method in any way. In fact, Castleman does not even know what the historical method is: "I don't know what you mean by 'historical method.' That sounds like lawyer talk to me." Barry Castleman Dep. 22:15-24:12, May 27, 2008.

To the extent Castleman's expertise is reading hearsay sources and interpreting them for jurors, that is no expertise at all. *Baldonado*, 2012 WL 1802066, at *4. That "expertise" makes him just a "librarian of asbestos research," *Rutkowski*, 1989 WL 32030, at *1, and it is not a librarian's job to read books and tell you what they mean. Expert witnesses must have expertise in a relevant field to offer opinions in federal court, and yet there is no field where Castleman practices as an expert outside the courtroom or qualifies him as an expert inside the courtroom. Such an expert "witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Electronics Corp. v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Castleman is a paid advocate with no qualifications in any

relevant field.  Accordingly, this Court should reach the same conclusion as courts in this circuit, Wisconsin, and across the nation, and exclude Castleman from testifying.

**B.**     **Castleman's Opinions Are Not Reliable.**

Even if Castleman had some relevant field of expertise (which he does not), his proposed testimony is not reliable, providing a second reason to exclude his testimony. Since *Daubert*, "parties relying on expert evidence have had notice of the *exacting* standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (emphasis added).  The Seventh Circuit has made clear that a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*."  *Lewis*, 561 F.3d at 705 (citation omitted).

As *Daubert* teaches, the reliability of an expert's principles and methods should be examined by factors: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  509 U.S. at 593-94.  This test "make[s] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152.

Castleman has no field of expertise, however, for this Court to ensure he applied

the same rigorous analysis to his courtroom opinions as he would in his professional work. He has no scientific or principled methodology at all, much less a method that has reliability. He is a self-employed, anti-asbestos, and anti-corporate advocate. *See* Barry Castleman Cong. Test. 28, November 15, 1979; Barry Castleman Cong. Test. 82-86, July 31, 2001; Barry Castleman Cong. Test. 5-13, Mar. 1, 2007. He holds a viewpoint, which is consistent with Plaintiffs' theory of the case, and then he selects and interprets hearsay materials as counsel's early closing argument. The Seventh Circuit has held, however, an "experts' work is admissible only to the extent that it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (citation omitted).

Because Castleman's opinions are so subjective, it is impossible to determine their reliability or validity. Plaintiffs cannot meet their burden to show Castleman's proposed testimony is based on reliable methods. Each of the *Daubert* factors shows a lack of any reliability:

- **Whether the scientific theory or technique can be (and has been) tested.** There is no hypothesis in Castleman's "theory or technique." He only reads the materials he wants to read. He believes that if he is unaware of relevant material, he has no obligation to look for it. *See* Barry Castleman Dep. 44:18-20, 48:17-20, 50:8-19, Jan. 3, 2002. There is no experiment which Castleman has conducted which can be repeated.

- **Whether the theory or technique has been subjected to peer review and publication.** There is no peer review for Castleman's opinions. His book (which serves as the basis for his expert report and is incorporated into his expert report) has never been subject to peer review. Neither has his research in testifying.

- **Whether a particular technique has a known potential rate of error.** It is impossible to consider Castleman's error rate because he has never considered opinions contrary to his own. The fatal flaw in Castleman's technique is he has never done anything to investigate, research, or even consider the possibility that his historical views are incorrect.

- **Whether the theory or technique is generally accepted in the relevant scientific community.** There are absolutely no standards to Castleman's "theory or technique." He does not do random sampling. He does not read from a defined universe of materials. Castleman just reads what he wants to read. Indeed, even when he is furnished with records, Castleman refuses to read them. Barry Castleman Dep. 36:9-25, Sept. 28, 2010.

Under each reliability factor, Castleman's method is not scientifically legitimate or principled. The *Daubert* Court explained that an expert's "knowledge connotes more than subjective belief or unsupported speculation," 509 U.S. at 589, but Castleman's knowledge is nothing more than his subjective view of history based on hand-picked hearsay that he considers "significant" or "found" him. Barry Castleman Dep. 44:18-20, 48:17-20, 50:8-19, Jan. 3, 2002; Barry Castleman Dep. 36:9-25, Sept. 28, 2010. Castleman's

opinions are neither based on sufficient facts or data, nor the product of reliable principles and methods, as *Daubert* and Rule 702 demand.

### C.    Castleman's Opinions Are Not Relevant.

Because Castleman follows no methodology and his opinions are pure advocacy, his testimony will not assist the members of the jury.  His opinions are just that — his opinions.  They are filtered through his justified view, and anything contrary to his worldview is rejected or ignored.  Everything he knows was learned from hearsay sources or what he has been told by plaintiffs' counsel.  Just last year, the Supreme Court of Delaware vacated a jury verdict where Castleman offered his own unsubstantiated, prejudicial, and completely improper opinion that the defendant's employees were "liars" and that it spent millions of dollars "buying senators."  *R.T. Vanderbilt Co. Inc. v. Galliher*, 98 A.3d 122, 129-30 (Del. 2014).  *Daubert* must prohibit experts, like Castleman, who "testify for a fee to propositions that they have not arrived at through the methods that they use when they are doing their regular professional work rather than being paid to give an opinion helpful to one side in a lawsuit." *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996).

Castleman admits that his opinions have no value to jurors. *See* Barry Castleman Test. 1900:3-14, Mar. 21, 1986 ("I think that it really doesn't aid the jury a great deal to know what I think about all this stuff.").  As a matter of fact, when given evidence from Owens-Illinois's company witnesses and admissible records with a proper foundation and authentication, the jurors can reach their own decisions — they do not need expert testimony on what the evidence means from a "librarian of asbestos research,"

"bibliographer," or "middleman." *Rutkowski*, 1989 WL 32030, at *1; *Franz*, slip op. at 1; *Flood*, Hr'g Tr. 13:25-14:1.

There is no such thing as an expert inference-drawer. "Indeed, allowing [an expert, like Castleman,] to testify based on nothing more than his review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself." *Baldonado*, 2012 WL 1802066, at *4 (citation omitted). Moreover, Castleman's inflammatory testimony (like his corporate bribery theories, *see Galliher*, 98 A.3d at 129-30; his corporate criminal theories, *see* Barry Castleman Cong. Test. 83, July 31, 2001; and his meritless corporate conspiracy theories, *see McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 266-67 (Ill. 1999)) certainly highlights the importance of this Court's role as the gatekeeper under *Daubert*.

Castleman's improper, highly prejudicial opinions are exactly what Plaintiffs seek to present to the jurors in an early closing argument through the "credentialed" Castleman.  Such an "expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403." *Hall*, 93 F.3d at 1343. In similar circumstances, courts have asked, "If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?" *Baldonado*, 2012 WL 1802066, at *4 (citation omitted).  As the many *Daubert* rulings show and Castleman himself admits, the answer is emphatically "No."

## <u>CONCLUSION</u>

Castleman is not a qualified expert within the meaning of Rule 702 and *Daubert*. He follows no scientific or principled methodology, and his opinions are not reliable

evidence to present to a jury. Instead, Castleman's advocacy-driven testimony is Owens-Illinois should be held liable because he feels the "asbestos industry is a quasi-criminal industry in much of the world today, using its power to corrupt political processes and control the media when challenged." Castleman Cong. Test. 13, Mar. 1, 2007.  His testimony will not help the jury to understand the evidence or decide issues.

For these reasons, Owens-Illinois, Inc. requests that this Court exclude Barry Castleman Sc.D. from testifying at all or, alternatively, from testifying about the knowledge and conduct of Owens-Illinois (e.g., what it knew or should have known) and the fields in which he has little or no demonstrated expertise (e.g., medicine, industrial hygiene, history, business ethics) under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated: January 8, 2015                    Respectfully submitted,

By:   /s/ Brian O. Watson
                                          Edward Casmere
                                          Brian O. Watson
                                          Rachel A. Remke
                                          Schiff Hardin LLP
                                          233 S. Wacker Dr. Suite 6600
                                          Chicago, Illinois  60606
                                          (312) 258-5500
                                          (312) 258-5600 (facsimile)

                                          *Attorneys for Defendant*
                                          *Owens-Illinois, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on January 8, 2015, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

15640-0889
CH2\15932876.2

- 18 -