

Exhibit F

```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
     MRS. EUNICE FLOOD, Special         )   Docket No. 86 C 8947
 4   Administrator of the Estate of     )
     MAURICE Flood, deceased,           )
 5                                      )
                         Plaintiff,     )
 6                                      )
               vs.                      )
 7                                      )
     OWENS-ILLINOIS, INC.,              )   Chicago, Illinois
 8                                      )   March 15, 2004
                         Defendant.     )   12:15 o'clock p.m.
 9

10          EXCERPT OF PROCEEDINGS - MOTIONS IN LIMINE
               BEFORE THE HONORABLE CHARLES P. KOCORAS
11

12   APPEARANCES:

13
     For the Plaintiff:    MESSRS. HOLLAND & KNIGHT
14                         BY:  MR. ROBERT W. QUEENEY
                                MS. LAURA A. DERWIN
15                         131 S. Dearborn St., 30th Floor
                           Chicago, Illinois   60603
16
                           MESSRS. MOTLEY, RICE
17                         BY:  MR. JOHN HERRICK
                                MR. FRITZ JEKEL
18                         28 Bridgeside Boulevard
                           P.O. Box 1792
19                         Mt. Pleasant, South Carolina   29465

20
     For the Defendant:    MESSRS. SCHIFF, HARDIN & WAITE
21                         BY:  MR. JOSEPH O'HARA
                                MR. MATTHEW FISCHER
22                              MS. TRACY CAMPBELL
                           6600 Sears Tower
23                         Chicago, Illinois   60606

24

25
```

```
 1   APPEARANCES:  (Continued:)

 2
     Court Reporter:        MS. JOENE HANHARDT
 3                          Official Court Reporter
                            219 S. Dearborn Street, Suite 2524-A
 4                          Chicago, Illinois   60604
                            (312) 435-6874
 5

 6                 * * * * * * * * * * * * * * * * *

 7
                       PROCEEDINGS RECORDED BY
 8                      MECHANICAL STENOGRAPHY
                    TRANSCRIPT PRODUCED BY COMPUTER
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1            THE CLERK:  86 C 8947, Flood vs. Owens-Illinois.  On
 2   trial.
 3                        *   *   *   *   *
 4            THE COURT:  Please be seated.
 5            The motions in limine that I have reference to are as
 6   follows:  There is plaintiff's motion in limine to bar the
 7   testimony of Peter Neushul; a like motion to bar the testimony
 8   of Dr. James Lockey; a ruling I am going revisit, which we
 9   issued an opinion on pretrial; and, then, we have
10   Owens-Illinois' motion to exclude the testimony of Barry
11   Castleman; and, then, I am just going to briefly address the
12   motion in limine to bar or limit the testimony of Lennard
13   Wharton and John Spencer.
14            The first order of business is to tell you that in a
15   prior ruling, when you moved to exclude the deposition
16   testimony of a witness who was not a deposition witness in this
17   case, but in a related case, where the other side had the
18   opportunity to examine him on the subject matter that is,
19   essentially, the same as in this case, with the same motivation
20   on the part of the lawyers to develop the testimony -- because
21   the rule of evidence is broader than that relied on in my
22   opinion, in which case the opinion said since he was not a
23   deponent in this case, he could not testify in this case by way
24   of deposition -- that ruling is, in fact, in error because the
25   rule of evidence is much broader than that.
```

4

1          It permits, where you have similar motivations on the
2    part of the examining lawyers to develop the testimony,
3    therefore, that evidence can come in.
4          And the witness I have reference to is William Hazard.
5          So, I am now reversing that ruling and we will permit
6    that deposition evidence to come in.
7          With respect to the testimony of Lennard Wharton and
8    John Spencer, we deferred that. Those motions were denied
9    without prejudice for re-presentment at trial, and that is
10   exactly how we are going to handle those. I will not take
11   those up presently, but I will take them up when and if it is
12   propitious to do so.
13         Now, insofar as the other motions to bar two putative
14   experts on one side and one putative expert on the other side,
15   I would like to hear from the plaintiff as to what you
16   specifically object to with respect to the testimony of Peter
17   Neushul.
18         Why is he not qualified to offer opinions in this
19   case?
20         MR. HERRICK: Your Honor, at this time plaintiff will
21   withdraw the motions with respect to Peter Neushul and with
22   respect to Mr. -- or Dr. -- Lockey.
23         THE COURT: All right.
24         Then I need not decide those, since those motions are
25   no longer pending.

5

```
1              Then we have the defense motion to bar the testimony
2     of Barry Castleman.
3              Are you persisting in that motion?
4              MR. FISCHER:  Yes, we are.
5              THE COURT:  All right.
6              I will hear the plaintiff's argument as to why I
7     should not grant that motion.
8              MR. QUEENEY:  Judge, if I might, the motion was based
9     upon, as set forth in my response, what I think to be some
10    serious misrepresentations as to his opinion and as to the
11    methodology that he undertook to get to his opinion.
12             His opinion is not replete with personal opinions, as
13    alleged by the defendant Owens-Illinois.  Instead, pursuant to
14    his experience, which is legion -- which is in his curriculum
15    vitae -- he has conducted the most authoritative and
16    comprehensive examination of over a thousand documents with
17    respect to asbestos, when asbestos was --
18             THE COURT:  He is not a medical doctor or had medical
19    training?
20             MR. QUEENEY:  He does not have medical training, no.
21             THE COURT:  And are you saying the materials he
22    reviewed were medical in content?
23             MR. QUEENEY:  Some of them were.  Some of them were.
24             THE COURT:  What makes him qualified to read an
25    article -- aside from whether it is helpful to the jury -- what
```

1   makes him qualified to read a medical paper, not being a
2   doctor, had any medical training as such, and interpret that
3   document for the benefit of the jury?  What makes him qualified
4   to do that?
5           MR. QUEENEY:  He is not interpreting any medical
6   opinions.  He is recounting facts that are found within
7   hundreds or thousands of documents and relaying those facts.
8   He is not adding or changing a medical opinion.  He is saying
9   that Dr. Gloyne in 1935 --
10          THE COURT:  Is he not highlighting medical opinion?
11          MR. QUEENEY:  He is identifying medical opinion, which
12  is, I believe, something that would clearly assist the jury.
13          Short of that --
14          THE COURT:  Did not Judge Grady find him unqualified
15  to do that?
16          MR. QUEENEY:  Judge Grady did because Judge Grady
17  thought that he was going to, in fact, interpret medical
18  evidence -- medical opinions.
19          THE COURT:  Well, is it not a necessary function on
20  his part, when he reads a medical paper -- which you say is
21  full of facts, right?  He is just highlighting facts?
22          MR. QUEENEY:  That is correct.
23          THE COURT:  You are not suggesting every medical paper
24  is so objective in its tenor, that no medical opinion or views
25  of the author creep in, which requires some evaluation?

7

```
 1              You are not saying that, are you?
 2              MR. QUEENEY:  I am not saying -- I am saying it won't
 3    creep into his opinion in this case.
 4              THE COURT:  But is it not a necessary adjunct in him
 5    picking and choosing what facts are expostulated in this paper,
 6    to have a medical basis to do so?
 7              MR. QUEENEY:  No, no.
 8              When the Saranac Laboratory indicates that they have
 9    been hired by Owens-Illinois, and they report back to them and
10    they report back and say, "It causes a fibrosis of the lungs,"
11    in October and November of 1948, that is a fact.
12              THE COURT:  Let me ask this:  What prevents you from,
13    in the appropriate way and with the appropriate foundation,
14    from presenting this paper to the jury and let the jury decide
15    for itself what is contained in that paper?  Especially if it
16    is fact intensive, as you suggest.
17              What prevents the jury from eliminating the middleman
18    and reading the paper for itself and deciding what it says?
19              MR. QUEENEY:  Well, I certainly intend to argue the
20    paper; but, to identify which papers were, in fact, published,
21    when you have over a thousand publications --
22              THE COURT:  Do you mean you could not prove what was
23    published without the use of this man?
24              MR. QUEENEY:  You are certainly going expedite it.
25              THE COURT:  Well, do you mean he is going to stand
```

8

```
 1   back as some sort of data processor and say, "This was
 2   published and this was not"; and, "These are the facts
 3   contained in this paper," and "These are the facts contained in
 4   that paper"?
 5           MR. QUEENEY:  He is, indeed.  And he will identify the
 6   dates when -- for, example one of the questions --
 7           THE COURT:  What scientific basis does he lend to the
 8   exercise?
 9           MR. QUEENEY:  It is not a scientific basis to the
10   selection of the report, but it is of assistance to the jury to
11   say that these documents were available at these periods of
12   time, which goes directly to their duty to determine and
13   discover that information.
14           THE COURT:  He has discriminated among publications
15   and documents that he is going to rely on to present facts to
16   the jury?
17           MR. QUEENEY:  No.
18           THE COURT:  He does not?  He is going to do them all
19   -- every paper ever written on the topic of asbestos and
20   asbestosis and mesothelioma -- without discrimination?
21           That cannot be, can it?
22           MR. QUEENEY:  Well, he is going to select from the
23   mass of publications.
24           THE COURT:  Right.
25           And my question is:  In order to satisfy Daubert,
```

1   there has to be some testing -- some methodology; whether it is
2   subject to the standards of peer review or in some other way --
3   it cannot be purely subjective.  There must be some recognized
4   method that we can have confidence in.
5           And my question is:  What method is there to evaluate
6   whether his selection process was done in a way that other
7   people in the field would recognize as being appropriate,
8   whether scientific or whatever other standard you use?
9           MR. QUEENEY:  Well, I think if you look at his CV, I
10  believe that his educational experience is such that he could
11  select articles.
12          I don't have it in my head exactly what his Ph.D is
13  in, but I know that it was heavily involved in the very process
14  that you are talking about.
15          THE COURT:  What else do you want to tell me, that I
16  should consider before I rule?
17          MR. QUEENEY:  I would also suggest to you that I do
18  not think that Daubert imposes a scientific selection process
19  --
20          THE COURT:  No, it does not impose a purely scientific
21  process, but it imposes at least a like test.  There has to be
22  some methodology.  It cannot be so subjective that it is not
23  subject to some broader acceptance or confidence building or
24  supporting approval, if you will.
25          It cannot be someone who comes in and says, "Trust me,

1   I know what I have done."
2           He not only has to be qualified, but some methodology
3   employed has to meet some rigor.  Otherwise, it is purely
4   subjective and we have not advanced the cause of justice.
5           MR. QUEENEY:  I do not think it's -- what I want to
6   tell you is it is not subjective.  He went to the library and
7   looked for and found every book that mentioned asbestos.
8           He then identified those books.  He then identified in
9   1935 that Dr. Gloyne, for example, had indicated he had
10  connected or associated cancer with asbestos exposure, and it
11  was published at a certain point in a certain periodical.
12          THE COURT:  And the jury could not read that article
13  for itself?
14          (No response.)
15          THE COURT:  What dimension does he bring to the jury
16  other than he went to the library and is the repository for
17  this information?  What does he bring to the exercise?
18          MR. QUEENEY:  He brings exactly that.  He brings a
19  selection process where he went through hundreds and thousands
20  of documents and said, "Here is what was out there available.
21  Here is what Owens-Illinois -- Mr. Hazard, their industrial
22  hygienist; Dr. Shook, the medical examiner -- could have found
23  had they looked in the library."
24          THE COURT:  And you --
25          MR. QUEENEY:  That bears directly upon, I believe,

```
 1    their question of notice.
 2            THE COURT:  And you think no medical expertise or
 3    training is required to do the very thing you are suggesting he
 4    does?
 5            MR. QUEENEY:  I do, indeed.
 6            THE COURT:  Although Judge Grady thought to the
 7    contrary.
 8            MR. QUEENEY:  Judge Grady did rule that way.  That is
 9    correct.
10            THE COURT:  Yes, he did.
11            MR. QUEENEY:  And, since that time, he has obtained a
12    Ph.D. -- which, I believe, is a Ph.D. that covers, in fact, the
13    same subject matter that you and I are talking about --
14            But since that time, he has been approved by, you
15    know, hundreds of other judges.
16            THE COURT:  Well, I am going to exclude him for the
17    reason offered by Judge Grady and by the opinion in the Ninth
18    Circuit, which I found compelling.
19            I think Judge Kazinsky says he has created himself to
20    be an expert by reading more than the average person.
21            He does not have a medical degree.  He is going to
22    read papers and tell the jury what those papers say.  And, yet,
23    he is not qualified medically to render a scientific or medical
24    opinion about the contents of those.
25            Your argument or your explanation to that is that,
```

12

1   "Well, he is only going to be talking about facts.  He will not
2   be talking about any opinions, either offered in the paper or
3   some that he develops himself," which I think you admittedly
4   say he cannot do because he is not a medical expert.
5           It does not quite make any sense to me how he is going
6   to assist this jury; and, I also cannot understand how he can,
7   if you will, discriminate among the papers he reads; decide
8   what he personally thinks is important, that the jury should
9   know; and, what the jury should not know.  That is an exercise
10  of some opinion or some discretion.
11          And there is no standard to demonstrate that this is
12  anything other than purely subjective.  And, so, for those
13  reasons -- I know the Illinois Supreme Court also struck his
14  testimony in another case, which I have also read, but they did
15  it for the reason that he assumed the existence of a
16  conspiracy.  In that case, there was a conspiracy involved.  He
17  assumed the existence of a conspiracy.
18          Just, coincidentally, in a criminal case, I would
19  never let some expert opinion come and tell this jury whether a
20  criminal conspiracy got proved.  So, whether the Illinois
21  Supreme Court was being kind or simply relied on the fact that
22  he assumed the very issue about which the trial was being held,
23  I do not really know.
24          But I know that they discounted his testimony entirely
25  for the point offered; Judge Grady did for the reasons that I

13

1    found compelling; and, Judge Kazinsky, in his dissent in the
2    California case in the Ninth Circuit, found the same thing.
3            And I must say that for him to do what he is doing,
4    either there has to be either some scientific or equivalent
5    basis to test whether or not other experts in the field could
6    do what he did, without making it an entirely subjective
7    proposition.
8            There is not any showing of that.  So, what he has
9    done, if you ask me, is purely subjective.
10           And then you get into the hornets nest of him not
11   being a medical expert, and necessarily making medically-
12   qualitative decisions and opinions.
13           And the third thing is, to the extent that these
14   documents have very relevant facts to be presented, the jury is
15   as capable of consuming and understanding those facts as he is
16   in portraying them from the author to the jury.
17           He is, if you will, acting a middleman, and I do not
18   think that is sufficient expertise to do anything in this case
19   relevant to giving him a license to both offer his opinions de
20   facto or de juri.
21           He offers opinions de facto by selecting those things
22   he wants the jury to hear.  There is some qualitative judgment
23   call for it.  And there is not the least scientific basis for
24   doing that.
25           So, that motion is granted and his testimony will be

                                                                14

1    excluded.
2         Those are all of the things that I have at this time.
3    I will see you at 2:00 o'clock and we will go on with the trial
4    of the case.
5         MR. FISCHER:  Your Honor, if I may, as a housekeeping
6    matter, I think there was one motion in limine that might have
7    slipped past your Honor.  It had to do with the manner in which
8    plaintiff's expert calculated damages and what damages were
9    permissible under Illinois law.
10        If you need another copy of that, we can certainly
11   provide that to you.
12        THE COURT:  Is that the one that seeks to challenge
13   punitive damages?
14        MR. FISCHER:  No, it is not, your Honor.
15        THE COURT:  Then I did not see that motion.
16        Do we need to address that before opening statements?
17        MR. FISCHER:  No, absolutely not.  But I just wanted
18   to point that out.
19        THE COURT:  Did you answer that motion?
20        MR. FISCHER:  Yes, he has.
21        THE COURT:  All right.
22        I, frankly, do not recall seeing either one -- either
23   the motion or the answer.  So, if you could supply me with
24   those, I will take a look at them.
25        MR. FISCHER:  Thank you, your Honor.

15

```
 1              THE COURT:  All right.
 2              2:00 o'clock for opening statements.
 3              (Whereupon, a recess was taken at 12:45 a clock p.m.
 4        until 2:00 o'clock p.m. of the same afternoon, March 15,
 5        2004.)
 6                       *   *   *   *   *
 7
 8   I certify that the foregoing is a correct excerpt from the
     record of proceedings in the above-entitled matter.
 9
10   _____     _____, 2004
     Official Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```