# EXHIBIT D

| | |
|---|---|
| **From:** | Casmere, Edward M. |
| **Sent:** | Tuesday, January 06, 2015 1:47 PM |
| **To:** | Michael Cascino |
| **Subject:** | RE: Souja |
| **Attachments:** | ViolaRLS.PDF; SuojaRLS.PDF |

Mike,

Happy New Year.  Attached are the releases for Suoja and Viola.  I have the $_____ settlement check from Owens-Illinois ready to be forwarded to you once you confirm that you will hold the funds in trust until you return the fully-executed releases to my office.  Please confirm that you will do so and I will forward the check.  Best,

Ed

---

**From:** Casmere, Edward M.
**Sent:** Tuesday, December 23, 2014 4:22 PM
**To:** Michael Cascino
**Subject:** RE: Souja

Mike,

I will have the $_____ settlement check tomorrow.  Please confirm that you will hold the settlement proceeds in escrow until we received the fully executed settlement agreements/releases from the Suoja and Viola plaintiffs and I will make arrangements to have the check delivered to your office.

Ed

---

**From:** Casmere, Edward M.
**Sent:** Friday, December 19, 2014 11:09 AM
**To:** 'Michael Cascino'
**Subject:** RE: Souja

Mike,
We had a deal that you confirmed, twice (see the attached emails).  I presume you are explaining that to your clients.  The check has been cut and I expect to receive it next week.  I spent a tremendous amount of personal capital convincing the Company to resolve these cases with you.
Ed

---

**From:** Michael Cascino [mailto:mcascino@cvlo.com]
**Sent:** Friday, December 19, 2014 9:23 AM
**To:** Casmere, Edward M.
**Subject:** Souja

The family voted no.  The rep is a lawyer  as I told you previously. They said no.   I presume we can go thru the Viola settlement.  Thanks

This electronic mail message and/or its attachments contain legally privileged and confidential information intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, disclosure, distribution or copying of this transmission or its attachments is strictly prohibited. If you received this communication in error, please immediately notify the sender by electronic mail at the address above and delete this message, its attachments and all copies and backups.

# LIMITED AND SPECIAL GOOD FAITH RELEASE WITH CAUSE OF ACTION RESERVED BY PLAINTIFFS AGAINST OTHERS (MALIGNANCY)

I, GARY SUOJA, individually and on behalf of the ESTATE OF OSWALD SUOJA, deceased, in consideration of the sum of $1.00, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, paid to me by Owens-Illinois, Inc. "release and agree" as follows:

This release is intended to be construed as a "Pierringer" release. That form of release was approved in the 1963 Wisconsin Supreme Court case, which in part bears that name.

This release and its effect have been explained to me by my attorneys, I know I am releasing all of my claims or rights against certain parties and reserving them as to others. I also know that I am assuming certain duties and obligations under this release, and that I am not just receiving certain payments for my claims or rights.

This release is binding on my heirs, successors and assigns. I release Owens-Illinois, Inc. and any of their successors, predecessors, parent or subsidiary corporations of business organizations, insurers, officers, agents, directors, and employees, from all claims or damages which I have sustained as a result of actions or failures to act in connection with OSWALD SUOJA's exposure to asbestos-containing products. The incident is described more fully in United States District Court for the Western District of Wisconsin, Case No. 99-CV-475, but this release is not limited to claims raised in that lawsuit.

By executing this release, the undersigned agrees that:

"claims" includes demands, actions, and rights of action, and also includes claims which undersigned now or hereafter may have arising out of, in consequence of, or on account of said work or incident; any claims or rights under Wisconsin Marital Property Act are included.

"damages" includes compensatory or punitive damages, costs and fees for personal injury; bodily injury; sickness; disease; death; resulting from such injury, sickness, or disease; injury to or destruction of property, damages for care and loss of services arising from such injury, sickness or disease; damages for loss of use of property because of its injury or destruction; and all other damages of whatever kind or nature.

This release applies to all claims arising from use of Owens-Illinois, Inc. asbestos-containing products or OSWALD SUOJA's exposure to said asbestos-containing products, including, but not limited to, claims for known, unknown, latent, developed, and undeveloped injuries to OSWALD SUOJA; anticipated and unanticipated consequences, and known and unknown developments of any such injuries to OSWALD SUOJA; and claims as respects the nature, extent and permanency of any such injuries to OSWALD SUOJA. This release specifically excludes my own potential claims, if any, for individual bodily injury that I may

have as a result of my own individual exposure to Owens-Illinois, Inc. asbestos-containing products.

I rely on my own judgment, belief and knowledge as to all phases of the claims, and I am not relying on representations or statements made by any of the parties released, anyone representing them, or giving them opinions.

The payment is made in compromise and settlement of disputed claims, and shall not be construed as an admission of any liability whatsoever by any of the parties herein released; nor that Owens-Illinois, Inc. designed, manufactured, distributed or sold any asbestos-containing products possessing a defective or unreasonably dangerous condition. The released parties expressly deny any liability.

In accepting the payment, I release and discharge that fraction, portion or percentage of the total cause of action or any other claim for damages I now have or may by trial or other disposition, be determined to be the sum of the fractions, portions, or percentages of causal negligence for which the parties herein released are found to be liable to me as a consequence of OSWALD SUOJA's use of Owens-Illinois, Inc. asbestos-containing products or exposure to said asbestos-containing products.

Only the parties specifically named are released. The party releasing (the undersigned) expressly reserves the balance of the whole cause of action or any other claim of whatever kind or nature not released hereby which I may have or hereafter have against any other person or persons arising out of the incident described. I believe I may have claims or causes of action against others.

I agree that this release and settlement is not to be construed as a waiver by, or an estoppel of, any party released to prosecute a claim against me or anyone else for any damages sustained as a result of the incident in question. I recognize that any claim of whatever kind the released parties might have or hereafter have growing out of this incident and settlement is hereby expressly reserved to the released parties.

I represent that no portion of this claim has been assigned to anyone else and that no other person or entity has any legal right to pursue this claim or share in the proceeds of the settlement.

I agree to indemnify the parties released and will save them harmless from any claims for contribution made by others adjudged (or determined to be) jointly liable with the parties released. I agree to indemnify the released parties and will save them harmless from any claims or judgments against the released parties in any way arising out of my claims or damages from the described incident. I also agree to satisfy any judgment which may be rendered in my favor, satisfying such fraction, portion or percentage of the judgment as the causal negligence of the parties released is adjudged to be of all causal negligence of all adjudged tortfeasors. In the event I fail to immediately satisfy any such judgment to the extent of the fraction, portion or percentage of the negligence as found against the parties released, I consent and agree that upon filing a copy of this agreement, without further notice and order be entered by the court in which

said judgment is entered, directing the clerk thereof to satisfy said judgment to the extent of such fraction, portion, or percentage of the negligence as found against the parties released and discharged under this release.

In further consideration of the payment set forth in the paragraph above, I, my attorneys and all members of my family agree that the amount paid to us pursuant to the paragraph above shall remain strictly confidential and shall not be disclosed to any person, corporation or organization, except: (1) attorneys and accountants in the ordinary course of performing services which pertain to the disposition of any amount received by us pursuant to this Release; (2) the Internal Revenue Service and/or applicable state agency as necessary in connection with the preparation of tax returns; and (3) as required by law.  I agree to respond to any inquiry concerning this Release or the Action by stating that this dispute has been resolved and that the amount of the settlement is confidential.  In the event I receive a subpoena or other legal process requesting the disclosure of the terms of this Release and/or the production of this Release, I shall immediately notify counsel for Owens-Illinois, Inc. of the existence of said subpoena or other legal process so as to afford Owens-Illinois, Inc. a timely opportunity to object to, or otherwise challenge, the disclosure of the amount of the settlement.  I understand and agree that this confidentiality provision is material to the Settling Parties' agreement to settle the Action and that any breach will be considered a material breach subjecting us to any and all available remedies at law or in equity.

I agree to indemnify the released parties for any money they may have to pay to any other person or entity asserting any claims arising out of or related to any injuries, damage I sustained in this incident, including any claims based upon subrogation, derivation or assignment.  Also, I will indemnify the parties released for any expenses incurred in defending such claims.

It is further expressly understood, agreed, and stipulated that any alleged exposure giving rise to the claims against the Settling Parties that are herewith resolved occurred entirely prior to December 1980.

I understand that the Medicare Secondary Payer Act (42 U.S.C. §1395y)(the "Act") applies to any personal injury settlement involving a Medicare beneficiary.  As part of this settlement, I represent that I will take all appropriate steps to protect any Medicare interests.  As such, I specifically warrant and represent that I will satisfy any and all Medicare liens, claims and subrogated interests of whatever nature or character whether asserted or assertable by Medicare which arise from, or are related to, the matters forming the basis of my claims in this action.  Also, I acknowledge and agree that it is his/her responsibility, and not the responsibility of said Companies, to reimburse Medicare for conditional payments made by Medicare on behalf of myself.

It is expressly understood and agreed that to the extent a Medicare Claim is asserted against me and/or said Companies, my counsel shall hold the settlement amount in escrow (be that a client trust account or similar account should needs-based government benefits require preserving) until  (1) a final decision from Medicare through CMS and/or its recovery contractor is obtained that each such lien, demand, and claim is fully satisfied and resolved; and (2) should Medicare indicate it has expended funds that require reimbursement from the settlement amount,

then my counsel will use the escrowed funds only to resolve such liens, demands, or claims until (i) each such lien, demand, and claim is fully satisfied and resolved (ii) within sixty (60) days of receipt of Medicare's Final Demand and (iii) provide said Companies with written proof of the satisfaction of any claim asserted by Medicare pursuant to the Act. "Written proof" of the satisfaction of any claim asserted by Medicare includes, but is not limited to, 1) a written and fully executed release of lien, should such be provided by Medicare to said Companies or said Companies' counsel or 2) a copy of Medicare's Conditional Payment Summary (and/or Revised Conditional Payment Summary, where applicable), Final Demand, and Clearance Letter. In the event that I or my counsel obtain written confirmation that Medicare makes no claim for reimbursement as to expenditures with respect to me, then a copy of such written communication will be provided to said Companies.

It is further expressly understood that I and my counsel represent that the Settlement Amount is sufficient to and shall satisfy any and all liens, demands or claims that have been or may be asserted by medical professionals, caregivers, or any federal, state, or local agency, including but not limited to Medicare and/or Medicaid, Veterans, and/or Social Security disability claims, demands and/or liens and any claims, demands and/or liens by any Medicare Secondary Payer Recovery Contractor.

I agree that any settlement monies received from said Companies shall first be used to pay liens, if any, related to the Lawsuit and that the settlement monies and settlement constitute a release and waiver of any private cause of action under 42 U.S.C. §1395y(b)(3)(A). Only after I have satisfied these obligations may settlement monies from said Companies be used for other purposes.

The parties expressly agree that I will **DEFEND, INDEMNIFY, and HOLD HARMLESS** said Companies and its attorneys from all liens, claims, demands or other actions by any heirs, personal representatives, family members, attorneys, medical care providers, caregivers, other individuals, hospitals, Medicare, Medicaid or any Medicare Secondary Payer Recovery Contractor, that in any way pertain or relate to this settlement, the alleged asbestos exposure of Decedent that made the basis of this lawsuit, and/or the claims asserted or which could have been asserted in the litigation referenced herein. I shall pay and satisfy each such asserted lien, demand and claim, or satisfy the same on a compromise basis, and shall obtain in any event a written release and discharge of the lien, demand and/or claim, and shall **INDEMNIFY AND HOLD HARMLESS** said Companies and its attorneys from any costs, expenses, attorneys' fees, claims, actions, judgments or settlements resulting from the assertion or enforcement thereof.

The parties expressly agree that payment of settlement proceeds is not conditioned upon me providing proof that all Medicare reimbursement claims and obligations have been satisfied. Said Companies agree to forward the settlement proceeds within the time frame agreed between the parties at the time of settlement once the executed release has been tendered by me.

In addition, I understand that said Companies will determine whether the claim is reportable under the Act and, in the case of a reportable event, said Companies will comply with

the Act and all applicable reporting guidance provided by the Centers for Medicare and Medicaid Services (CMS).

I have reviewed the underlying facts and evidence of this case, particularly the dates when Decedent was alleged to have been exposed or was actually exposed, to said Companies' asbestos-containing products or to asbestos present on said Companies' premises. Based on that review, uncontroverted evidence exists showing that Decedent's exposure occurred entirely before Dec. 5, 1980, the effective date of the Act. Accordingly, all claims being resolved by this settlement are for alleged asbestos-related injuries that relate to asbestos exposure that preceded the date Medicare became a secondary payer in liability settlements or judgments. Because there is no evidence of exposure involving said Companies after December 5, 1980, the parties agree that no reimbursement obligation exists within the meaning of the Medicare Secondary Payer Act (42 U.S.C. §1395y(b)(2)). However, to the extent that there are broad and general exposure allegations beyond December 5, 1980 as to all defendants in the original complaint and due to CMS's current position on same, in such circumstances, it is understood that those claims being resolved by settlement for alleged asbestos-related injuries will be reported by said Companies under MMSEA (42 U.S.C. § 1395y(b)(8)) so long as Decedent is a Medicare beneficiary as defined by statute.

If more than one person has executed this release, the payment made applies to all such persons. All other provisions apply separately to each person. The word "person", as used in this paragraph, includes natural persons, firms, associations, organizations, and corporations.

I have read this release and have had it explained to me by my lawyer. I am satisfied that I understand it.

Dated this _____ day of _____, 2015.


_____
GARY SUOJA, individually and on behalf
of the Estate of OSWALD SUOJA, deceased



Subscribed and sworn to
Before me this_____ day
Of _____, 2015


_____
Witness

FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00) in hand paid, receipt of which is hereby acknowledged, we hereby forever waive, discharge and release any and all claims of attorney's lien, attorney's fee, or any other claim whatsoever we may have against OWENS-ILLINOIS, INC., in the above claim.

                                                    _____
                                                    Cascino Vaughan Law Offices, Ltd
                                                    220 S. Ashland Avenue
                                                    Chicago, Illinois 60607
                                                    Attorney for Plaintiffs

15640-0000
CH2\9557601.15

## LIMITED AND SPECIAL GOOD FAITH RELEASE WITH CAUSE OF ACTION RESERVED BY PLAINTIFFS AGAINST OTHERS (MALIGNANCY)

We, ANTHONY VIOLA, individually and on behalf of the ESTATE OF ROBERT VIOLA, deceased, and CHRISTOPHER VIOLA, individually, in consideration of the sum of $1.00, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, paid to us by Owens-Illinois, Inc. "release and agree" as follows:

This release is intended to be construed as a "Pierringer" release. That form of release was approved in the 1963 Wisconsin Supreme Court case, which in part bears that name.

This release and its effect have been explained to us by our attorneys, we know we are releasing all of our claims or rights against certain parties and reserving them as to others. We also know that we are assuming certain duties and obligations under this release, and that we are not just receiving certain payments for our claims or rights.

This release is binding on our heirs, successors and assigns. We release Owens-Illinois, Inc. and any of their successors, predecessors, parent or subsidiary corporations of business organizations, insurers, officers, agents, directors, and employees, from all claims or damages which we have sustained as a result of actions or failures to act in connection with ROBERT VIOLA's exposure to asbestos-containing products. The incident is described more fully in Milwaukee County Circuit Court Case No. 09-CV-9078, but this release is not limited to claims raised in that lawsuit.

By executing this release, the undersigned agree that:

"claims" includes demands, actions, and rights of action, and also includes claims which undersigned now or hereafter may have arising out of, in consequence of, or on account of said work or incident; any claims or rights under Wisconsin Marital Property Act are included.

"damages" includes compensatory or punitive damages, costs and fees for personal injury; bodily injury; sickness; disease; death; resulting from such injury, sickness, or disease; injury to or destruction of property, damages for care and loss of services arising from such injury, sickness or disease; damages for loss of use of property because of its injury or destruction; and all other damages of whatever kind or nature.

This release applies to all claims arising from use of Owens-Illinois, Inc. asbestos-containing products or ROBERT VIOLA's exposure to said asbestos-containing products, including, but not limited to, claims for known, unknown, latent, developed, and undeveloped injuries to ROBERT VIOLA; anticipated and unanticipated consequences, and known and unknown developments of any such injuries to ROBERT VIOLA; and claims as respects the nature, extent and permanency of any such injuries to ROBERT VIOLA. This release specifically excludes our own potential claims, if any, for individual bodily injury that we may

have as a result of our own individual exposure to Owens-Illinois, Inc. asbestos-containing products.

We rely on our own judgment, belief and knowledge as to all phases of the claims, and we are not relying on representations or statements made by any of the parties released, anyone representing them, or giving them opinions.

The payment is made in compromise and settlement of disputed claims, and shall not be construed as an admission of any liability whatsoever by any of the parties herein released; nor that Owens-Illinois, Inc. designed, manufactured, distributed or sold any asbestos-containing products possessing a defective or unreasonably dangerous condition. The released parties expressly deny any liability.

In accepting the payment, we release and discharge that fraction, portion or percentage of the total cause of action or any other claim for damages we now have or may by trial or other disposition, be determined to be the sum of the fractions, portions, or percentages of causal negligence for which the parties herein released are found to be liable to us as a consequence of ROBERT VIOLA's use of Owens-Illinois, Inc. asbestos-containing products or exposure to said asbestos-containing products.

Only the parties specifically named are released. The parties releasing (the undersigned) expressly reserve the balance of the whole cause of action or any other claim of whatever kind or nature not released hereby which we may have or hereafter have against any other person or persons arising out of the incident described. We believe we may have claims or causes of action against others.

We agree that this release and settlement is not to be construed as a waiver by, or an estoppel of, any party released to prosecute a claim against us or anyone else for any damages sustained as a result of the incident in question. We recognize that any claim of whatever kind the released parties might have or hereafter have growing out of this incident and settlement is hereby expressly reserved to the released parties.

We represent that no portion of this claim has been assigned to anyone else and that no other person or entity has any legal right to pursue this claim or share in the proceeds of the settlement.

We agree to indemnify the parties released and will save them harmless from any claims for contribution made by others adjudged (or determined to be) jointly liable with the parties released. We agree to indemnify the released parties and will save them harmless from any claims or judgments against the released parties in any way arising out of our claims or damages from the described incident. We also agree to satisfy any judgment which may be rendered in our favor, satisfying such fraction, portion or percentage of the judgment as the causal negligence of the parties released is adjudged to be of all causal negligence of all adjudged tortfeasors. In the event we fail to immediately satisfy any such judgment to the extent of the fraction, portion or percentage of the negligence as found against the parties released, we consent and agree that upon filing a copy of this agreement, without further notice and order be entered

by the court in which said judgment is entered, directing the clerk thereof to satisfy said judgment to the extent of such fraction, portion, or percentage of the negligence as found against the parties released and discharged under this release.

In further consideration of the payment set forth in the paragraph above, we, our attorneys and all members of our families agree that the amount paid to us pursuant to the paragraph above shall remain strictly confidential and shall not be disclosed to any person, corporation or organization, except: (1) attorneys and accountants in the ordinary course of performing services which pertain to the disposition of any amount received by us pursuant to this Release; (2) the Internal Revenue Service and/or applicable state agency as necessary in connection with the preparation of tax returns; and (3) as required by law.  We agree to respond to any inquiry concerning this Release or the Action by stating that this dispute has been resolved and that the amount of the settlement is confidential.  In the event we receive a subpoena or other legal process requesting the disclosure of the terms of this Release and/or the production of this Release, we shall immediately notify counsel for Owens-Illinois, Inc. of the existence of said subpoena or other legal process so as to afford Owens-Illinois, Inc. a timely opportunity to object to, or otherwise challenge, the disclosure of the amount of the settlement.  We understand and agree that this confidentiality provision is material to the Settling Parties' agreement to settle the Action and that any breach will be considered a material breach subjecting us to any and all available remedies at law or in equity.

We agree to indemnify the released parties for any money they may have to pay to any other person or entity asserting any claims arising out of or related to any injuries, damage we sustained in this incident, including any claims based upon subrogation, derivation or assignment.  Also, we will indemnify the parties released for any expenses incurred in defending such claims.

It is further expressly understood, agreed, and stipulated that any alleged exposure giving rise to the claims against the Settling Parties that are herewith resolved occurred entirely prior to December 1980.

We understand that the Medicare Secondary Payer Act (42 U.S.C. §1395y)(the "Act") applies to any personal injury settlement involving a Medicare beneficiary.  As part of this settlement, we represent that we will take all appropriate steps to protect any Medicare interests.  As such, we specifically warrant and represent that we will satisfy any and all Medicare liens, claims and subrogated interests of whatever nature or character whether asserted or assertable by Medicare which arise from, or are related to, the matters forming the basis of our claims in this action.  Also, we acknowledge and agree that it is our responsibility, and not the responsibility of said Companies, to reimburse Medicare for conditional payments made by Medicare on behalf of ourselves.

It is expressly understood and agreed that to the extent a Medicare Claim is asserted against us and/or said Companies, our counsel shall hold the settlement amount in escrow (be that a client trust account or similar account should needs-based government benefits require preserving) until  (1) a final decision from Medicare through CMS and/or its recovery contractor is obtained that each such lien, demand, and claim is fully satisfied and resolved; and (2) should

Medicare indicate it has expended funds that require reimbursement from the settlement amount, then our counsel will use the escrowed funds only to resolve such liens, demands, or claims until (i) each such lien, demand, and claim is fully satisfied and resolved (ii) within sixty (60) days of receipt of Medicare's Final Demand and (iii) provide said Companies with written proof of the satisfaction of any claim asserted by Medicare pursuant to the Act. "Written proof" of the satisfaction of any claim asserted by Medicare includes, but is not limited to, 1) a written and fully executed release of lien, should such be provided by Medicare to said Companies or said Companies' counsel or 2) a copy of Medicare's Conditional Payment Summary (and/or Revised Conditional Payment Summary, where applicable), Final Demand, and Clearance Letter. In the event that we or our counsel obtain written confirmation that Medicare makes no claim for reimbursement as to expenditures with respect to us, then a copy of such written communication will be provided to said Companies.

It is further expressly understood that we and our counsel represent that the Settlement Amount is sufficient to and shall satisfy any and all liens, demands or claims that have been or may be asserted by medical professionals, caregivers, or any federal, state, or local agency, including but not limited to Medicare and/or Medicaid, Veterans, and/or Social Security disability claims, demands and/or liens and any claims, demands and/or liens by any Medicare Secondary Payer Recovery Contractor.

We agree that any settlement monies received from said Companies shall first be used to pay liens, if any, related to the Lawsuit and that the settlement monies and settlement constitute a release and waiver of any private cause of action under 42 U.S.C. §1395y(b)(3)(A). Only after we have satisfied these obligations may settlement monies from said Companies be used for other purposes.

The parties expressly agree that we will **DEFEND, INDEMNIFY, and HOLD HARMLESS** said Companies and its attorneys from all liens, claims, demands or other actions by any heirs, personal representatives, family members, attorneys, medical care providers, caregivers, other individuals, hospitals, Medicare, Medicaid or any Medicare Secondary Payer Recovery Contractor, that in any way pertain or relate to this settlement, the alleged asbestos exposure of Decedent that made the basis of this lawsuit, and/or the claims asserted or which could have been asserted in the litigation referenced herein. We shall pay and satisfy each such asserted lien, demand and claim, or satisfy the same on a compromise basis, and shall obtain in any event a written release and discharge of the lien, demand and/or claim, and shall **INDEMNIFY AND HOLD HARMLESS** said Companies and its attorneys from any costs, expenses, attorneys' fees, claims, actions, judgments or settlements resulting from the assertion or enforcement thereof.

The parties expressly agree that payment of settlement proceeds is not conditioned upon us providing proof that all Medicare reimbursement claims and obligations have been satisfied. Said Companies agree to forward the settlement proceeds within the time frame agreed between the parties at the time of settlement once the executed release has been tendered by us.

In addition, we understand that said Companies will determine whether the claim is reportable under the Act and, in the case of a reportable event, said Companies will comply with

the Act and all applicable reporting guidance provided by the Centers for Medicare and Medicaid Services (CMS).

We have reviewed the underlying facts and evidence of this case, particularly the dates when Decedent was alleged to have been exposed or was actually exposed, to said Companies' asbestos-containing products or to asbestos present on said Companies' premises. Based on that review, uncontroverted evidence exists showing that Decedent's exposure occurred entirely before Dec. 5, 1980, the effective date of the Act. Accordingly, all claims being resolved by this settlement are for alleged asbestos-related injuries that relate to asbestos exposure that preceded the date Medicare became a secondary payer in liability settlements or judgments. Because there is no evidence of exposure involving said Companies after December 5, 1980, the parties agree that no reimbursement obligation exists within the meaning of the Medicare Secondary Payer Act (42 U.S.C. §1395y(b)(2)). However, to the extent that there are broad and general exposure allegations beyond December 5, 1980 as to all defendants in the original complaint and due to CMS's current position on same, in such circumstances, it is understood that those claims being resolved by settlement for alleged asbestos-related injuries will be reported by said Companies under MMSEA (42 U.S.C. § 1395y(b)(8)) so long as Decedent is a Medicare beneficiary as defined by statute.

If more than one person has executed this release, the payment made applies to all such persons. All other provisions apply separately to each person. The word "person", as used in this paragraph, includes natural persons, firms, associations, organizations, and corporations.

We have read this release and have had it explained to us by our lawyer. We are satisfied that we understand it.

Dated this _____ day of _____, 2015.


_____
ANTHONY VIOLA, individually and on behalf
of the Estate of ROBERT VIOLA, deceased



_____
CHRISTOPHER VIOLA, individually


Subscribed and sworn to
Before me this_____ day
of _____, 2015


_____
Witness

FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00) in hand paid, receipt of which is hereby acknowledged, we hereby forever waive, discharge and release any and all claims of attorney's lien, attorney's fee, or any other claim whatsoever we may have against OWENS-ILLINOIS, INC., in the above claim.

                                                Cascino Vaughan Law Offices, Ltd
                                                220 S. Ashland Avenue
                                                Chicago, Illinois 60607
                                                Attorney for Plaintiffs

15640-0000
CH2\9557601.14