IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GARY SUOJA, Individually and as Special Administrator of the Estate of OSWALD F. SUOJA, Deceased,<br><br>        Plaintiff,<br>  v.<br><br>OWENS-ILLINOIS, INC.<br><br>        Defendant. | Case No. 99-cv-0475 |
| BARBARA CONNELL, Individually and as Special Administrator of the Estate of DANIEL CONNELL, Deceased,<br><br>        Plaintiff,<br>  v.<br><br>OWENS-ILLINOIS, INC.<br><br>        Defendant. | Case No. 05-cv-00219 |

**PLAINTIFFS' RESPONSE TO OWENS-ILLINOIS, INC.'S MOTION TO EXCLUDE BARRY CASTLEMAN, SC.D.**

---

      Plaintiffs respond to and oppose Owens-Illinois, Inc.'s (O-I) Motion to Exclude Barry Castleman SC. D. Dr. Castleman is a respected researcher and author in the field of asbestos. Dr. Castleman has testified at over 300 asbestos trials beginning in the 1980s including trials in

1

federal courts in Illinois, Texas, California, New York, Florida, Washington, Oklahoma, Oregon, Virginia, West Virginia, Maryland, Georgia, Delaware, and Arkansas. (Ex 1 at pages 19-72)[1].

Introduction

Dr. Castleman's role in the *Suoja* and *Connell* trials is to explain the historical development of knowledge of the health hazards of asbestos as reported in thousands of pieces of scientific literature, studies, and professional or trade organization documents. The bases for Dr. Castleman's testimony are his many years of training and experience as a practitioner and researcher in the fields of public health, environmental engineering, and chemical engineering, as well as several decades of research in the area of asbestos which began with his doctoral thesis completed in 1985. The type of testimony Dr. Castleman provides is often referred to as "state of the art" testimony about the knowledge of the health hazards of asbestos and the availability of substitute asbestos-free materials.

Dr. Castleman has collected and studied thousands of documents regarding state of the art knowledge of asbestos hazards for several decades.[2] Proof of what a defendant knew or should have known about the dangers of its products is an element in any toxic tort case. Dr. Castleman will also select for presentation to the jury certain documents from among hundreds, if not thousands, of documents within O-I's files which he has personally reviewed and testified about in the past. His testimony, based on his public health and research background, will cover the

---

[1] Because the Rule 26(a)(2) filings for Dr. Castleman in *Suoja* and *Connell* are virtually identical, the exhibit cited here is the *Suoja* report.

[2] Documents from O-I's files are the subject of a chapter in a publication authored by Dr. Castleman. (Ex 2) Dr. Castleman's book also contains a section about trade organization documents such as the Industrial Hygiene Foundation, which O-I belonged to from 1936 to 1975. (Ex 3 at 4). The foundation for admission of such documents, if objections are made, is provided by other sources.

company documents. Dr. Castleman's testimony assists the lay jury to find and understand the relevant portions of a massive quantity of evidence which the jury has no time to read and study. None of these areas of Dr. Castleman's testimony were excluded by the handful of judicial decisions cited in O-I's motion.

A recent analysis of Castleman's testimony in the context of an identical motion in limine filed by the same defense counsel was performed by the court in *Krik v. BP Amoco* N.D. IL Case No. 10-cv-07435 Doc. # 299, entered on October 21, 2014. (Ex 4). In *Krik* the district court held:

> Dr. Castleman will be permitted to testify as a "state of the art" expert to the extent that he may describe the asbestos literature he has reviewed for therelevant time period(s). . . . For his part, Krik may introduce documents produced by Defendants as exhibits during Dr. Castleman's testimony, and Dr. Castleman may cite to and/or read the documents aloud. But, to the extent that the documents upon which he relies relate to subject areas in which Dr. Castleman has little or no demonstrated expertise (such as medical literature), Dr. Castleman may not testify as to the accuracy of the conclusions contained therein.

*Krik* at 6-7. (Ex 4). These same areas of Dr. Castleman's testimony permitted under the *Krik* ruling are the only ones which plaintiffs will elicit in the instant *Suoja* and *Connell* cases.

Notably, O-I has identified its own expert, Dr. Peter Neuschel, to testify about state of the art matters. (Ex 5 and 6). O-I's witness follows the same methodology as Dr. Castleman in basing his testimony on reading of scientific literature, company documents, and trade/professional organization materials. Dr. Neuschel's background, training and experience is in the field of "history." By comparison Dr. Neuschal lacks the credentials, background and experience in public health, environmental engineering, chemical engineering and asbestos which Dr Castleman possesses. O-I asks this court to bar the testimony of Dr. Castleman, but not the same testimony by the O-I expert.

The exclusion of Dr. Castleman's testimony about state of the art - a necessary element of plaintiffs' cases - and corporate documents could be dispositive of plaintiffs' cases. Magistrate

3

Judge Stephen Crocker has already ruled dispostive motions in limine are precluded on remand of Cascino Vaughan Law Offices from MDL-875. *Bushmaker v. AW Chesterton Company* W.D. WI Case No. 09-cv-726 Doc. # 43, order entered November 19, 2012. (Ex 7). Judge Crocker's *Bushmaker* ruling was followed and adopted in *Morris v. CBS Corporation*, E.D. WI Case No. 04-c-216 Doc. #101, order entered on July 28, 2013.[3] (Ex 8). The procedural history in both *Suoja* and *Connell* is no different than in *Bushmaker* or *Morris*. The MDL-875 scheduling order in *Suoja* and *Connell* required defendants in both to file dispositive motions before remand. (Ex 9). The suggestion of remand orders in both cases states dispositive motions have been resolved and the cases are remanded as "trial ready." (Ex 10 and 11).

O-I's motion refers to past testimony of Dr. Castleman and sections in his book which cover other areas such as the need for warnings or "criminal" behavior of defendants. Since plaintiffs will not be presenting such testimony, the need for ruling on such matters is moot.

Argument

1. *Dr. Castleman is a qualified expert.*

Dr. Castleman is an accomplished expert in public and environmental health policy, and his professional experience goes back over 30 years in the area of asbestos and other occupational and environmental health problems. (Ex 1 at 2). As part of his academic training at the Johns Hopkins University in Baltimore, Dr. Castleman studied physiology, epidemiology, toxicology, biostatics, environmental cancer, and occupational medicine. *Id*. His academic credentials, including his Sc.D. degree from the Johns Hopkins School of Hygiene and Public

---

[3]The basis for the rulings which preclude additional dispositive motions in Cascino Vaughan Law Offices cases on remand from MDL-875 is set forth in the briefing which plaintiff filed in the *Morris* case. (Ex 13).

Health, independently demonstrate that he is qualified to discuss the meaning and significance of medical and scientific articles pertaining to asbestos health hazards.  *Id*.

Dr. Castleman has published the most authoritative treatise ever written on the subject of industry knowledge of asbestos hazards.  *See Asbestos: Medical and Legal Aspects*, 5th Edition; *AC & S v. Godwin,* 340 Md. 334, 667 A.2d 116, 131 (1995) (praising Dr. Castleman's work as part of "a respectable body of opinion" that led to the conclusion that asbestos exposure caused diseases); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 148 (Del. 1987) (recognizing *Asbestos: Medical and Legal Aspects* as a "learned treatise"); *see also Peerman v. Georgia-Pacific Corp.*, 35 F.3d 284, 285 (7th Cir. 1994) (same); *In re North Dakota Personal Injury Asbestos Litig.*, 737 F. Supp. 1087, 1091 (D.N.D. 1990) (same); *Anderson v. A.P.I. Co.*, 1997 ND 6, 559 N.W.2d 204 (same).  As noted in *Anderson v. A.P.I. Co.*, Dr. Castleman's "treatise details the development of knowledge in the medical, scientific, and business communities concerning the hazards of human exposures to asbestos." *Anderson*, 559 N.W.2d  204.

Dr. Castleman has authored numerous publications relating to asbestos disease.  *See* "Asbestos and Cancer: History and Public Policy," 48 Brit. J. Ind. Med. 427 (1991); "Threshold Limit Values: Historical Perspectives and Current Practice," 31 J. Occ. Med. 910 (1989); "Corporate Influence on the Threshold Limit Values," 13 Am. J. Ind. Med. 531 (1988); "WTO Confidential: The Case of Asbestos World Trade Organization," Int. J. Health Serv. 489-501 (2002); "The International Commission on Occupational Health (ICOH) and Its Influence on International Organizations," Int. J. Occup. Environ. Health 56 (2002); "Controversies at International Organizations over Asbestos Industry Influence," Int. J. Health Serv. 193 (2001); "Re: Doll's 1955 Study on Cancer from Asbestos," Am. J. Ind. Med. 237 (2001); "Scientific Objectivity and the Chrysotile Controversy," Br. J. Ind. Med. 862 (1993); "The Hazards of Asbestos for Brake Mechanics," Pub. Health Rep. 254 (1975).

Dr. Castleman has acted as a consultant for the National Science Foundation, Environmental Defense Fund, and Natural Resources Defense Council. He has testified before U.S. Congressional committees concerning the hazards of asbestos and other toxic substances. Dr. Castleman was a paid consultant to the Toxic Substances Office of the United States Environmental Protection Agency and performed research on environmental hazards. He has performed consulting work for the United States Occupational Safety and Health Administration. In his research, Dr. Castleman has reviewed and commented on thousands of publications and documents pertaining to asbestos-related diseases. Dr. Castleman is "a well-recognized expert in the field of asbestos research," and this Court should deny the defendant's motion. *See In re: Asbestos Litig.*, 799 A.2d 1151, 1153 (Del. 2002).

2.  *Dr. Castleman's testimony follows proper methodology and will assist the jury.*

Dr. Castleman testifies regarding the historical awareness of asbestos-related health hazards. Dr. Castleman's testimony on "state-of-the-art" evidence consists of a review and synthesis of literally thousands of articles and trade or professional organization documents which were published over the course of 80 years. Such testimony regarding state-of-the-art knowledge of asbestos hazards is helpful to the trier of fact when the subject matter of the testimony is both voluminous and beyond the scope of common experience.

The recent analysis of the district court in *Krik* is on point in resolving an identical motion in limine presented by the same defense counsel to this court in *Suoja* and *Connell*:

> Krik seeks to tender Dr. Castleman as an expert in order to "explain the historical development of knowledge of the health hazards of asbestos as reported in thousands of pieces of scientific literature, studies, and professional or trade organization documents." Pl.'s Resp. 1. Krik further states that Dr. Castleman will "select for presentation to the jury certain documents from among thousands of documents within O-I's [Owens-Illinois'] files to provide testimony, based on his public health and research background, regarding the actual knowledge of the company and actions the company took in response

6

to the information about the state of the art knowledge on asbestos." Id. 2. Therefore, according to Krik, Dr. Castleman's testimony is designed to go to "[p]roof of what a defendant knew or should have known about the dangers of its products," which is "an element in any toxic tort case." Id.

Defendants seek to bar Dr. Castleman's testimony on numerous grounds. Defendants first argue that Dr. Castleman is an expert for hire for plaintiffs in asbestos cases who improperly "spin[s]" information gleaned from medical articles and corporate documents to indict corporations for their alleged historical knowledge of the dangers of asbestos exposure. Owens Mot. 2. Defendants next contend that Dr. Castleman uses a "one-size-fits all approach" against all asbestos defendants in each case he testifies, which fails to satisfy Daubert standards. Id. 3. This approach, Defendants argue, uses no reliable methodology or technique that can be tested; has never been subject to peer review; has no means of determining the potential rate of error; and is not generally accepted in the relevant scientific community. Id. 10-12.

Krik responds, in relevant part, that Defendants' concerns are negated because "Dr. Castleman will limit his testimony to the development of the awareness of the hazards of asbestos and available substitutes in the scientific and technical publications, internal corporate documents, and trade and professional organization documents." Pl.'s Resp. 7. Dr. Castleman's expert report sets forth his relevant qualifications. Dr. Castleman possesses a B.S. in Chemical Engineering, a M.S. in Environmental Engineering, and a Sc.D. in Health Policy, all from Johns Hopkins University. Pl.'s Resp., Ex. 1 (Castleman Rpt.) at 1. Dr. Castleman is the author of a book entitled Asbestos: Medical and Legal Aspects, which was originally published in 1984, and is now in its fifth edition. Id. The book represents the research he has conducted, into a "historical review of the asbestos problem as a public health problem . . . worldwide." Id. He has authored numerous articles and testified at trial in more than 300 asbestos cases throughout the country. Pl.'s Resp. 1.

Defendants challenge the notion that the foregoing qualifies Dr. Castleman as an expert, instead likening him to a mere "librarian of asbestos research." Id. 8 (quoting *Rutkowski v. Occidental Chem. Corp.*, No. 83 C 2339, 1989 WL 32030, at *1 (N.D. Ill. Feb. 16, 1989). The Court disagrees. Dr. Castleman clearly has substantial experience in researching the state of the art for asbestos (that is, what was known about asbestos and its risks), at least from a historical perspective. Moreover, Dr. Castleman's report sets out his reasoning and methodology in detail. For example, Dr. Castleman's report contains a full explication of the scope of his research, identifying the documents he reviewed, the types of individuals that he interviewed in the course of crafting his thesis, and the techniques he used in obtaining the materials he reviewed. Pl.'s Resp., Ex. 1 (Castleman Rpt.) at 1-2, 14.  The Court therefore concludes that Dr. Castleman's testimony, subject to certain limitations that are set forth below, will assist the jury in understanding the state of the art with respect to asbestos from a historical perspective.  This is particularly true given the sheer volume of data available on this topic.

In so holding, the Court recognizes that other courts, including some in this district, have precluded Dr. Castleman from testifying in other asbestos cases. See, e.g.,

*Rutkowski,* 1989 WL 32030, at *1. However, many others have permitted him to testify, either on an unrestricted or a limited basis. See, e.g., *Anderson v. A.P.I. Co.*, 559 N.W.2d 204, 208-09 (N.D. 1997) (allowing Dr. Castleman's testimony and collecting cases). In the end, the Court agrees with the logic expressed by another judge of this district in *Deyerler v. Georgia-Pacific, LLC*, Case No. 08 C 5362 (Bucklo, J.). See Owens Daubert Mot., Ex. D (Pre-Trial Hearing Tr.). After a pretrial conference where the defendants raised substantially the same arguments made here, Judge Bucklo declined to exclude Dr. Castleman's testimony in its entirety. Instead, Judge Bucklo expressly limited Dr. Castleman to testifying as to "state of the art generally at any given time," and refused to allow him to testify "about what . . . defendants knew or supposedly knew." Id. 101. Judge Bucklo allowed this limited testimony because she concluded that it could be useful to the jury as a "sort of anthology" of the copious available literature. Id. 123. The Court finds this reasoning persuasive. As Judge Bucklo recognized, Dr. Castleman possesses "specialized knowledge" regarding the literature relating to asbestos available during the relevant time periods. Thus, his testimony is appropriate for this limited purpose. See Fed. R. Evid. 702(a) (witnesses are qualified to testify if they possess "specialized knowledge" that "will help the trier of fact to understand the evidence . . . ."); *Walden v. City of Chi.*, 755 F. Supp. 2d 942, 950 (N.D. Ill. 2010) (Castillo, J.) (admitting historian's testimony pursuant to Rule 702 where witness possessed "background to find, evaluate, and synthesize historical documents pertinent" to policies in place sixty years ago).

(Ex 4 at 3-6). The proposed order from a hearing in 2014 held in a Wisconsin state case - drafted by the same law firm representing O-I in this court - reflects the same result as was reached in *Krik* as to the allowable testimony of Dr. Castleman. Vandermeuse v. Allied Insulation Supply Co., Inc., Kewaunee County Case No. 07-cv-000055 dated January 14, 2014 (Ex 12).

Other courts across the country have determined that Dr. Castleman's testimony is admissible on state of the art, including corporate documents. *See, e.g., Van Winkle v. Owens-Corning Fiberglas Corp.*, 683 N.E.2d 985, 988 (Ill. App. 4th Dist. 1997) (accepting Dr. Castleman's testimony concerning industry efforts to suppress asbestos research conducted by the Saranac Laboratory and to prevent *Asbestos* magazine from publishing data regarding asbestosis); *Eagle Picher Indus. v. Balbos*, 604 A.2d 445, 452-53 (Md. 1992) (accepting Dr. Castleman as an expert on asbestos-related issues); *In re Guam Asbestos Litig. v. Brennan*, 61 F.3d 910 (9th Cir. 1995) (same); *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 692 (Tex. App.

1991) (same); *Farrall v. AC & S, Inc.*, 558 A.2d 1078, 1081 (Del. Supr. 1989) (same); *Ingram v. AC & S, Inc.*, 977 F.2d 1332 (9th Cir. 1992) (allowing Dr. Castleman to testify specifically regarding the increase of knowledge beginning in the 1930s and 1940s as to the occupational dangers of asbestos exposure); *Davis v. Celotex Corp.*, 187 W.Va. 566, 420 S.E.2d 557, 560 (1992) (permitting Dr. Castleman to opine that during the 1930s, there was a vast amount of published information regarding the risk of breathing asbestos dust and, as such, asbestos product manufacturers should have known about the problem and provided warnings); *Anderson v. API Co.*, 559 N.W.2d 204, 208 (N.D. 1997) (finding Dr. Castleman qualified to testify "about the development of awareness of the hazards of asbestos in the corporate, scientific, and technical communities at the pertinent time").   This court should follow the overwhelming majority of other courts which have addressed this issue and admit Dr. Castleman's testimony as to the matters described above .

O-I's criticisms of Dr. Castleman's are largely directed toward "potential" testimony or opinions which he will not be offering in the *Suoja* and *Connell* cases.  Dr. Castleman will not testify in the Suoja case regarding the following areas which O-I contends is controversial:

- medical diagnosis of asbestos disease;
- specific or general medical causation;
- criminal responsibility of defendants or their employees;
- "intentional" corporate misfeasance;
- moral behavior of the defendants;
- political influence of defendants;
- opinions specific to the knowledge or conduct of Owens-Illinois, and
- the existence of a corporate conspiracy.

9

Dr. Castleman will limit his testimony to the development of the awareness of the hazards of asbestos and available substitutes in the scientific and technical publications, internal corporate documents, and trade and professional organization documents.

Defendant argues that Dr. Castleman is not qualified to testify because his testimony only relies on his review of historical, medical, industrial and scientific articles. The methodology of reviewing and analyzing historical, scientific, and technical literature from the public health perspective qualifies Dr. Castleman. Based on his review of the literature, he is qualified to select specific pieces of the historical information and point to specific passages within the data to educate the jury from a public health perspective about what was known about dangers of asbestos during the relevant periods of exposure. He is also qualified to offer his own opinions about the significance of the literature on the question of knowledge. For example certain journals or publications carried more significant weight or had distribution patterns that impact their importance to what OI knew or should have known. Without the guidance of Dr. Castleman's expertise, jurors would have to read numerous articles filled with technical scientific terms to make determinations on the issue of knowledge.

The articles Dr. Castleman reviewed are exactly the types of materials courts have held state-of-the art experts properly relied on in rendering their expert opinions. *See Murphy v. Owens-Illinois, Inc.*, 779 F.2d 340 (6th Cir. 1985) (state-of-the-art expert's only means of arriving at this opinion is by surveying the "available scientific and technical knowledge, customary practice and industry standards" in effect at the time in question); *Grindstaff v. Coleman*, 681 F.2d 740 (11th Cir. 1982) (same); *Steinfurth v. Armstrong World Indus.*, 500 N.E.2d 409 (Ohio Com. P. 1986) (lack of hands on experience does not preclude state-of-the-art expert testimony).

3.  *O-I can challenge Dr. Castleman's testimony in front of the jury*

O-I raises other attacks against admissibility of Dr. Castleman's testimony such as his allegedly biased views, selection of articles and documents, and his history as a paid witness for plaintiffs in asbestos cases. These arguments go to the weight (not admissibility) of Dr. Castleman's testimony and read like a blueprint for a cross-examination that has often been used by defendant's counsel. Cross-examination is the proper method to challenge Dr. Castleman's purposed bias and compensation. Defendant will have ample opportunity to rebut any testimony that Dr. Castleman may offer regarding state-of-the-art knowledge and other areas of his testimony by means of cross-examination and their own state-of-the-art witness.

The Seventh Circuit has held in multiple rulings that "[d]etermination on admissibility should not supplant the adversarial process":

> [Defendant] is, of course, critical of the quality of [the expert's] testimony and does not believe that it ought to have been credited by the district court. These criticisms do not go to admissibility but to the appropriate weight that should be accorded to the evidence. As we noted in *Gayton*, "[d]etermination on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross-examination."

*Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748 (7th Cir. 2010). Likewise, the Seventh Circuit held crediblity of experts and the validity of their theories is for a jury to determine if the expert is qualified.

> The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based.

*Smith v. Ford Motor Co.,* 215 F.3d 713 (7th Cir. 2000).

## Conclusion

Plaintiffs respectfully request that this court deny defendant's motion to bar the testimony of Dr. Castleman. Dr. Castleman's testimony is relevant to and he is qualified by methodology, training and experience to address state of the art knowledge of the hazards of asbestos and

11

available asbestos-free substitutes in the scientific and technical publications, internal corporate documents, and trade and professional organization documents.  Barring testimony on the state of the art element of the plaintiffs' cases is also improper under the orders of the MDL-875 court which govern on remand to prohibit further dispositive motions.

Dated: February 20, 2015

/s/ *Robert G. McCoy*
Attorney for Plaintiffs

Robert G. McCoy
Cascino Vaughan Law Offices
220 S. Ashland Avenue
Chicago, Illinois 60607
(312) 944-0600
ecf.cvlo@gmail.com
bmccoy@cvlo.com