UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

GARY SUOJA, Individually and as
Special Administrator for the Estate
of OSWALD F. SUOJA, Deceased,

          Plaintiff,

     vs.                              Case No. 99-CV-475-BBC

OWENS-ILLINOIS, INC.,                 Madison, Wisconsin
                                      July 15, 2015
                Defendant.            11:00 a.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

   STENOGRAPHIC TRANSCRIPT OF TELEPHONIC MOTION HEARING
     HELD BEFORE MAGISTRATE JUDGE STEPHEN L. CROCKER

APPEARANCES:

For the Plaintiff:
        Cascino Vaughan Law Offices, Ltd.
        BY:  ROBERT G. MCCOY
        220 South Ashland Avenue
        Chicago, Illinois  60607

For the Defendant:
        Schiff Hardin, LLP
        BY:  BRIAN O'CONNOR WATSON
        233 South Wacker Drive
        Suite 6600
        Chicago, Illinois  60606

                CHERYL A. SEEMAN, RMR, CRR
                   Official Court Reporter
                United States District Court
                120 North Henry Street, Room 520
                 Madison, Wisconsin  53703
                     1-608-255-3821

1    (Called to order.)

2        THE COURT:  Good morning.  This is Magistrate

3    Judge Crocker.  I understand I have the attorneys for the

4    parties in the Suoja case against Owens-Illinois.  A

5    court reporter is here, which is why you're on speaker

6    phone.  The case number is 99-CV-475-BBC.  We're here for

7    a discovery dispute discussion and resolution.  But first

8    let's find out who's appearing today.  Who have we got on

9    behalf of the plaintiff today, please?

10        MR. MCCOY:  This is Bob McCoy, Judge

11    (unintelligible).

12        THE COURT:  All right.  Mr. McCoy, good

13    afternoon -- or I'm sorry, good morning to you.  And who

14    have we got on behalf of the defendant today?

15        MR. WATSON:  Good morning, Your Honor.  Brian

16    Watson representing Owens-Illinois.

17        THE COURT:  All right.  Mr. Watson, good morning

18    to you, also.  Counsel, you two have done many calls with

19    me before on discovery disputes in other cases, so you

20    know the drill.  Let me set the stage and give you the

21    Court's preliminary view and then I'll check in with each

22    of you.  We have related motions going in both directions

23    here, so we'll just sort of round table this until the

24    Court has enough information.

25        But the first motion filed was on June 1.  That's

1    Docket 84.  That was the plaintiff's motion for

2    protection regarding certain emails, specifically a

3    December 18, 2014 email from Gary Suoja to Mr. McCoy, and

4    then a December 19, 2014 email from Mr. McCoy to

5    Mr. Cascino.

6        The response to that, Docket 85, came in on June 15.

7    It also had its own motion to compel that sort of

8    broadened the scope of the dispute between the parties as

9    to what discovery was still fair play in light of

10   Judge Crabb's April 10 order, which the judge docketed as

11   77.  And I'll be referring back to that momentarily.

12       We then got the June 22 opposition on behalf of the

13   plaintiff to the motion to compel and we docketed that as

14   86.

15       Then 87, docketed on July 7, was defendant's letter

16   to the Court flagging these ongoing disputes and pointing

17   out that under Judge Crabb's revised schedule, July 10

18   was the deadline for any new summary judgment motions.

19   That letter is what flagged this for me.  I was under the

20   mistaken impression that in light of Judge Crabb's April

21   10 order, these sorts of discovery disputes were in front

22   her, so I've got them now.

23       And I referred back to her order and to the issue

24   that's before the Court.  And the bottom line is that the

25   privilege is waived here.  The defendant has it right

1   that the Cascino Vaughn law firm cannot assert that it

2   did not have authority to settle this case on behalf of

3   the estate and withhold any information about that at

4   all.  You can't use it as a sword and a shield.

5       Now, it's not clear to me from the plaintiff's

6   initial motion how much more they actually have in terms

7   of documentation.  Certainly the Court's intent is to get

8   these two emails for ex parte, in camera review ASAP, as

9   in today or tomorrow, so that the Court can verify

10  whether these emails really are irrelevant, as plaintiffs

11  claim, or whether they actually fit within the waiver and

12  are relevant to Owens-Illinois, to the defendant.

13      As for the other discovery that's in dispute,

14  notwithstanding the bottom line, we have a practical and

15  a mechanical problem here, which is the timing.  I

16  understand that there were or there was at least one

17  deposition -- I don't know if the other one has occurred

18  yet of the sister -- and I understand that Mr. McCoy

19  directed the witnesses not to answer a lot of questions.

20      I'm not sure that that's remediable at this point.

21  But to the extent that the defendant is asserting that it

22  has been prejudiced in its ability to support its pending

23  motion for summary judgment by the failure to obtain this

24  information, that's something that it can and should

25  specify in its reply in support of its motion to

1    Judge Crabb.

2         If there were more time here and if Judge Crabb had

3    not ordered that the deadlines are firm, I might have

4    more leeway and I would give you all some more time.  But

5    I don't have the ability to countermand the judge's

6    order.  And frankly, even if I were inclined to, there

7    really isn't time.  She's made it clear that your

8    November 30 trial date is firm.  She's also made it clear

9    she wants this motion under advisal by August 10.

10        So there's a couple of things I need to find out.

11   First, I need to find out from Mr. McCoy, are there any

12   other documents responsive to any of these discovery

13   requests that have been withheld beyond these two emails

14   that refer to the motion for protection and, if so, why

15   have they been withheld.  And we'll talk about what needs

16   to happen next.

17        To Mr. Watson, then I just need him to give me some

18   input on my general concern about the failure to obtain

19   this other information at the depositions and what

20   Mr. Watson wants to see happen there.  I'm not sure that

21   I can give Owens-Illinois much relief beyond that which

22   I've already stated.  But I would have not gotten you all

23   on the phone if I wasn't prepared to accept some input,

24   some suggestions.

25        The last point is completely unrelated to this, but

1  I wanted to clear up with counsel whether this is a jury

2  trial or a bench trial.  And the only reason I ask that

3  is that notwithstanding the fact that these are almost

4  always jury trials; in Judge Crabb's April 10 order,

5  Docket 77, she called it a court trial.  But she also set

6  up motions in limine and response deadlines and set up a

7  final pretrial conference, none of which ordinarily occur

8  in bench trials.  So I think it may have just been a

9  choice of the incorrect word, that this really is a jury

10 trial, but I at least wanted to take today as an

11 opportunity to clear that up.

12      So, Mr. McCoy, I'll start with you.  Let's clear up

13 that last point first: is this a jury trial?  And then if

14 you could answer my question about the documents, please.

15      MR. MCCOY:  I don't know about the jury trial.

16 Normally I've handled the case with a jury, but this case

17 wasn't handled by me before.  So my take --

18      THE COURT:  Well, I don't mean to paint you in a

19 corner.  When you say you don't know, if Mr. Watson is

20 okay with a bench trial, are you, or do you want a jury

21 here?

22      MR. MCCOY:  I don't know that we need a jury

23 trial.  I just haven't asked my client that question.

24 That's a good question.  I just assumed we always take --

25 we always take the jury or it happens -- I haven't seen

1    one where it wasn't.  But, I mean, I'll check with the

2    client about a bench trial, see if that's what he wants

3    to do.

4            THE COURT:  Well, I'm not looking for trouble.

5    I'm just trying to clarify the parties' positions.  And

6    what you're telling me is you just don't know?

7            MR. MCCOY:  Right.

8            THE COURT:  Okay.  Well, then I'll ask for

9    Mr. Watson's input on that when it's his turn.  But can

10   you then answer my question about documentation: are

11   there any other documents that have been withheld from

12   disclosure on the basis of privilege or relevance beyond

13   these two emails that you've specified?

14           MR. MCCOY:  That bear on the settlement

15   agreement?  No, there's none other ones that relate to

16   that settlement agreement.  And, also, the reason why we

17   can't -- can't file any motion is because part of the

18   document relates to that settlement agreement and that

19   part should be disclosed and actually was disclosed on

20   one of those.  The other parts of the document are other

21   matters involving trial strategy, other things that would

22   not be subject to waiver of the privilege.

23           THE COURT:  Okay.  Mr. McCoy, you offered in

24   your motion to provide these two documents to the Court

25   for ex parte, in camera review.  Is that something that

1  can be done electronically either before close of

2  business today, July 15, or by noon tomorrow, July 16?

3              MR. MCCOY:  Sure.

4              THE COURT:  Okay.

5              MR. MCCOY:  Sure.  And the only reason you don't

6  have those now is because we contacted the clerk's

7  office.  They said we can't file or provide documents

8  in camera.  We have to first get a motion allowing us to

9  do that.

10             THE COURT:  Well --

11             MR. MCCOY:  That's been my intention the whole

12 time.

13             THE COURT:  Understood.  And like I said, part

14 of the problem here, in fact most of the problem here, is

15 a miscommunication within the court.  So please get those

16 up to us for in camera submission.  I'll enter a

17 text-only order as soon as we're off the phone here

18 confirming to the clerk's office that that's what the

19 Court wants.  Mr. McCoy -- go ahead.

20             MR. MCCOY:  How should I send those, Judge,

21 since they won't be filed?

22             THE COURT:  Well, they do get filed, but they're

23 limited to the Court and to you.  So I don't know if you

24 have a paralegal or some other assistant.  But have the

25 people who actually do your filings contact the clerk's

1  office here in Madison and ask them for instructions on

2  how to make that happen, because it can be done, it is

3  frequently done, but we want to make sure that you guys

4  do it the right way to protect your information, okay?

5       MR. MCCOY:  All right.  And then the redacted

6  copy, I believe that was provided during the deposition

7  to Gary Suoja.

8       THE COURT:  I think I've seen a copy of that in

9  the file, at least the one from Mr. Suoja to you.  And

10  I'm assuming that the email you sent to Mr. Cascino on

11  December 19 is not otherwise available because you're

12  claiming privilege for the entire document, correct?

13       MR. MCCOY:  Right.  That document, we're

14  claiming privilege on that document, because that's not

15  the client's case.

16       THE COURT:  Okay.  Was there anything else you

17  wanted to --

18       MR. MCCOY:  It also -- it also -- it also has

19  the same -- well, I'm sorry, Judge.  I might have

20  misspoken on that.  I think that the topic of the sealed

21  email, the same thing, which is part of it's privileged,

22  part of it's not.  I would have to go back and look at

23  that.

24       THE COURT:  Well, I'll need the whole thing

25  regardless.  So rather than take time to look at it now,

1   send the Court an unredacted copy of that email along

2   with an unredacted copy of the December 18 email from

3   your client.  And the Court then will be in a position to

4   determine what remains privileged, if anything, and for

5   which parts the privilege is waived pursuant to

6   Judge Crabb's previous order.

7        Mr. McCoy, the floor is still yours.  Was there

8   anything else you wanted to tell or ask the Court about

9   these particular discovery disputes before I check in

10  with Mr. Watson?

11        MR. MCCOY:  The only thing I would add, Judge,

12  which is what I said from the beginning, that is, in my

13  objections on privilege I was not objecting to questions

14  that involve the portions of this agreement.  Those

15  questions I allowed the witness to answer.  So the claims

16  about privilege were only made as to other matters.  That

17  was the basis of those objections.

18        THE COURT:  All right.  Understood.  Thank you.

19  Mr. Watson, to you then.  Let's start with the

20  ministerial question about bench versus jury, if you've

21  got some input on that.  And then I'll hear anything you

22  wanted the tell me about either the documents, the

23  depositions, or the procedure leading toward getting your

24  motion under advisal to the judge.

25        MR. WATSON:  Your Honor, on the

1 jury demand/bench trial issue, Owens-Illinois has

2 been relying on plaintiff's jury demand, which it

3 included in their complaint at Document 2 on the docket.

4 And it's page 6 where plaintiff demands a jury trial of

5 six.

6     I would have to check with my client -- if plaintiff

7 is now withdrawing that jury demand and choosing to go

8 forward with a bench trial -- on whether we would agree

9 to a bench trial.  But that's been our view of this case

10 so far, Your Honor.

11         THE COURT:  Okay.  So, Mr. Watson, would it be

12 fair and logical then for me to enter a text-only order

13 indicating that at this point it is a jury trial; but

14 that at any point, if both parties ask the judge for a

15 bench trial, we'll convert it, but keep the trial date;

16 how does that sound?

17         MR. WATSON:  Correct.

18         THE COURT:  Okay.

19         MR. WATSON:  Sure.

20         THE COURT:  I just wanted to clarify that.  And

21 I want to make sure that both of you understand, I'm not

22 suggesting that it should be a bench trial.  I'm not

23 trying to pressure anyone not to have a jury trial.  I

24 was just trying to clarify what I saw as some uncertainty

25 in the record and that's been done.  Mr. Watson, back to

1   you then, please.

2          MR. WATSON:  The second topic that I would like

3   to cover is the issue of whether there are any additional

4   documents or documents being withheld on the basis

5   they're privileged.  We don't have a log before us, so

6   the only documents that we know for certain about are the

7   two emails that are the subject of the protective order.

8          Owens-Illinois has seen the one redacted version of

9   the "Gary Suoja to Bob McCoy and Sue Merwin" email.

10  Owens-Illinois has not seen the Mike Cascino/Bob McCoy

11  email exchange.  When Gary Suoja testified, and that's

12  document -- and we've submitted that under the Court's

13  document at Dock No. 93, Your Honor --

14         THE COURT:  Right.  I actually paged through

15  that.  That came in on the 11th.  It's the last entry on

16  our docket.  It's very long, so I won't pretend I've read

17  it all, but I got a flavor of it.

18         MR. WATSON:  Okay.  The significant issues that

19  we encountered with regard to not having documents in

20  advance of the deposition were not only these two emails

21  that we've talked about so far; but additionally, in our

22  request for production we had asked for "All documents

23  that constituted your agreement with CVLO to engage or

24  retain them as your attorney."  And that's Document

25  Request No. 1 and 2.  No documents were produced in

1    response to those requests for production.

2        And Gary Suoja testified that it was his

3    understanding that the estate engaged Cascino Vaughn Law

4    Offices in the state court proceeding with a retention

5    agreement and he's been operating under that

6    understanding all along.

7        That leaves the open question here, Your Honor, with

8    regards to discovery is, is there an agreement between

9    Cascino Vaughn Law Offices and with the estate of Oswald

10   Suoja.  We don't have an answer to that question.

11       Our presumption, having seen past litigation with

12   Cascino Vaughn Law Offices, is that it's their practice

13   to obtain retention agreements with their clients.  And I

14   would expect that's a good practice to have.  Part of

15   that retention agreement, we would expect, deals with

16   settlement authority.  And I am concerned about

17   Mr. McCoy's representation today that there are no other

18   documents.

19           THE COURT:  I'm sorry, Mr. Watson.  Let me

20   interrupt there.  Mr. McCoy, do you know, yes or no, is

21   there a retainer agreement here, some sort of a written

22   agreement regarding representation between your law firm

23   and either the deceased or the estate or Mr. Suoja?

24           MR. MCCOY:  Yes, there is a retainer agreement,

25   Judge.  That --

1        THE COURT:  All right.

2        MR. MCCOY:  -- I don't know is relevant in light

3   of the ruling by the judge that these motions concern.

4        THE COURT:  Well, I'm ruling that it is relevant

5   and it's discoverable, so you'll have to turn it over,

6   because if there is anything in there about the authority

7   to settle, that's -- that could be critical here.  That

8   would be a smoking gun either for you or against you.  So

9   that cannot be withheld, understood?

10        MR. MCCOY:  Okay.

11        THE COURT:  Mr. Watson, back to you.

12        MR. MCCOY:  I'll provide -- I'll provide -- I'll

13   provide the retainer agreement, Judge.  This is being

14   provided though, Judge, for a limited purpose here.

15        THE COURT:  Well, I understand your view that

16   it's not relevant, but that's not really the issue today.

17   It is discoverable in light of the claim made by the

18   plaintiff's team that there was no authority to settle

19   this case in the first instance.  And Mr. Watson is

20   entitled to look at your document, your retainer

21   agreement, and see if he thinks it gives him anything to

22   work with here, so --

23        MR. MCCOY:  All I'm asking -- all I'm asking,

24   Judge, is that the production is accompanied by an order

25   that it's only for the purposes of this enforcement of

1    the settlement, but not to be generally disclosed as a

2    document produced in litigation to the public.

3         THE COURT:  Well, it can and will fall under the

4    protective order.  I assume we've got one in this case.

5    If not, I'm ordering it protected from general disclosure

6    because I'm sure it does contain confidential business

7    information and that's really none of the public's

8    business.  Mr. Watson, do you object to that?

9         MR. WATSON:  I don't object to that, Your Honor.

10        THE COURT:  Okay.  So, Mr. McCoy, yes, you're

11   entitled to have it filed under seal or used under seal

12   by the parties here.  I don't recall if you've got a

13   protective order in this case in this court.  If you do,

14   it covers this retainer agreement.  If not, by order

15   during this phone call, we'll protect it.  Mr. Watson.

16        MR. WATSON:  Your Honor, we don't --

17        THE COURT:  Go ahead.

18        MR. WATSON:  -- we don't have a protective order

19   in this case.  And the only issue that I foresee is if it

20   comes to dispositive motion practice or, at a trial,

21   either bench or jury, at that point it becomes a more

22   significant issue about first amendment issues and

23   disclosure to the public or whether the court needs to be

24   sealed at any moment, but I guess we will cross that

25   threshold when we get there.  I just wanted to make sure

1   the Court knew there isn't an existing protective order.

2          THE COURT:   Understood.   And, Mr. Watson, of

3   course you're right, under *Seattle Times v. Rhinehart* and

4   all the Seventh Circuit cases, if the Court were to rely

5   on confidential information in making a ruling or if the

6   parties were to offer it in a public trial, then it has

7   to be made public or at least parts of it have to be made

8   public.   But you're also correct that that's looking for

9   trouble.

10     It can be filed -- if you're going to use it in

11  reply in support of your motion, you may file it under

12  seal.   That's routine here.   If the judge then relies on

13  it and cites to it, it will be up to her to determine how

14  to disclose it.   But for now it will be protected.   Back

15  to you, Mr. Watson.

16          MR. WATSON:   Thank you, Your Honor.   And just to

17  tie the Court back to what's on the record so far, when I

18  was talking about Mr. Suoja's testimony, that's at pages

19  92 through 94 of his deposition.   And I just wanted to

20  make sure that at least the Court's record is clear on

21  both my representation of his testimony and on his

22  understanding of the request for production versus

23  Mr. Suoja's testimony.

24          THE COURT:   Duly noted.

25          MR. WATSON:   The second issue was at pages 146

1  of Mr. Suoja's testimony.  Mr. Suoja testified that there

2  has been additional email communications with the Cascino

3  Vaughan Law Offices regarding settlement with

4  Owens-Illinois additional to the "Gary Suoja to Bob McCoy

5  and Sue Merwin" email and additional to the

6  Mike Cascino/Bob McCoy email.  And that would be

7  requested in our request for production for all documents

8  that refer or relate to communications regarding the

9  proposed settlement, which is Document Request No. 3,

10 Your Honor.

11         THE COURT:  Okay.  Let's ping-pong back to

12 Mr. McCoy.  Mr. McCoy, apparently this deposition

13 occurred on June 26th.  In light of Mr. Gary Suoja's

14 testimony that there were other emails, did you or anyone

15 else actually go back to find those or ascertain whether

16 he was correct about that?

17         MR. MCCOY:  Which page are we referring to?

18         THE COURT:  146.

19         MR. WATSON:  Through 149, Your Honor.

20         THE COURT:  Understood.

21         MR. MCCOY:  One moment.  There's no doubt I have

22 a lot of emails with Gary Suoja.

23         THE COURT:  Well, Mr. McCoy, let's do it this

24 way --

25         MR. MCCOY:  I -- I -- I'm -- I'm happy to turn

1  over emails that came afterwards to the Court for

2  in camera review, but I didn't know --

3            THE COURT:  Well, let's start there and let's be

4  clear or as clear as we can be today about what plaintiff

5  and you, plaintiff's law firm, have to do and how

6  quickly.

7        I see in the deposition pages to which we are now

8  referring, 146 to 149, that at the time you were claiming

9  privilege.  Under the circumstances here where the

10 privilege has been waived, at least in part, and where

11 there may be some dispute as to where the appropriate

12 line between waiver and continued privilege may fall,

13 what I want you to do, either directly or through trusted

14 and reliable assistance, is to get the Court in camera

15 all of those communications.

16        And I want those by noon tomorrow.  I'd give you the

17 longer deadline, but we've got to get these in front of

18 the Court so that we can look at those and determine, do

19 they fit within the waiver that Judge Crabb has found or

20 not.  I won't make you give them directly to Mr. Watson

21 unless, on review at this point, you realize that the

22 claim of privilege does not apply to a particular

23 communication.

24        But they all have to go over.  And when I say "all,"

25 I'm talking about any communications before this issue

 1   came to a head in this court that may relate to the scope

 2   of the representation and the authority to settle.  There

 3   may not be anything in there, but somebody has got to

 4   look and they've got to look now.

 5        What were the communications between Gary Suoja and

 6   your law firm, either in email or otherwise, about

 7   authority to settle, the adequacy of the settlement

 8   offer, and then the explosion afterwards or the implosion

 9   of the alleged agreement or purported agreement and what

10   Mr. Suoja had to say about that; it's all got to come

11   over to the Court in camera, ex parte, by noon tomorrow,

12   understood?

13             MR. MCCOY:  Right.  We'll get them in, yes.  The

14   communications that I remember --

15             THE COURT:  Well, I'm not asking you to remember

16   off the top of your head.  That's not fair to you.  I

17   want somebody to go through and check the correspondence

18   file and get us that by noon tomorrow, understood?

19             MR. MCCOY:  I will, I will, but I just want to

20   make clear our conversation.  There definitely was

21   communications about the motion to enforce the agreement,

22   which --

23             THE COURT:  Those have to come in.  Those have

24   to come into the court.  If they are privileged, they

25   will not be disclosed.  But the Court has to have the

1   opportunity to look at those.

2           MR. MCCOY:   Okay.   I'll provide those.

3           THE COURT:   Thank you.   Mr. Watson, we're still

4   on your dime.   What else have you got?

5           MR. WATSON:   Your Honor, at page 176 of

6   Mr. Suoja's testimony he's asked whether he has

7   information on -- his attorney is actually representing

8   to Owens-Illinois prior to December 18th.   And his answer

9   is:   "I wasn't part of the negotiations, so I don't

10  know."

11          And the concern we have here, Your Honor, is the

12  back and forth between the estate and Owens-Illinois

13  reaches far beyond Mr. Suoja's personal knowledge.   And

14  as we lay out in our papers, it's our belief that it's

15  Mr. Suoja's obligation, as he's purporting to act as

16  special administrator, to check not only his personal

17  knowledge, but the knowledge of the estate and whether

18  there are any communications relating to settlement or

19  authority to settle of the estate, which may reach back

20  before Mr. Suoja's personal knowledge, and there was

21  nothing produced to Owens-Illinois on whether there are

22  previous representations by the estate to Owens-Illinois

23  regarding the authority to settle.

24          THE COURT:   Okay.   Let me make sure I understand

25  the distinction you're making and then I'm going to pose

1  a question about implementation, or actually I'll pose

2  the question about implementation first and then see if

3  that comports with what I think you're saying.

4      Regardless of when Mr. Gary Suoja put himself forth

5  as the representative of the estate, would it not be true

6  that the Cascino Vaughn Law Offices would have copies of

7  all the communications with any other representatives?

8  In other words, because of the depth in time of the order

9  I've just given to Mr. McCoy, would the firm be providing

10 all of this so that we don't have to rely on Mr. Suoja to

11 go back and check things or am I just saying the same

12 thing you did in a different way?

13         MR. WATSON:  You're saying the same thing -- you

14 did it in a different way, Your Honor -- in that there is

15 obviously a great deal of time going back to 1996 which

16 reaches beyond Mr. Suoja's personal knowledge.  And based

17 on Mr. Suoja's responses in discovery and his responses

18 during his deposition, Owens-Illinois' concern is whether

19 Mr. Suoja has met his obligation to probe whether there

20 are additional communications preceding his time going

21 back to 1996 which may bear on the issue of settlement

22 and authority to settle.

23         THE COURT:  Well, and that's why I was not sure

24 what you were talking about.  For discovery purposes,

25 what you're looking for is those communications.  Whether

1    Mr. Suoja is being true to those representations and

2    agreements is a different issue, correct?

3             MR. WATSON:   It is a different issue in so far

4    as his discovery responses made clear that he's only

5    answering personally.

6             THE COURT:   Right.   No, I get that and that was

7    part of your motion.   But, Mr. McCoy, let's be even more

8    clearer.   And I think you get this, but I want this to be

9    of record.   Have your assistant, have your paralegal,

10   have an associate, go back and look through the Suoja

11   file all the way back for any communications between the

12   firm and the estate, regardless who the representative

13   was, as to settlement authority, retainer agreements,

14   anything.   It's not just Gary Suoja; it's anyone who

15   represented the estate, because the estate is an entity

16   apart from its representative.   And it's not fair to

17   Owens-Illinois and it's not responsive to the Court's

18   order for Gary Suoja just to talk about what he knows

19   personally as to opposed to what the estate as an entity

20   knows constructively.   Mr. McCoy, do you understand what

21   I'm directing?

22            MR. MCCOY:   Right.   If there is something in the

23   past that said --

24            THE COURT:   All the way back.

25            MR. MCCOY:   -- the estate has given my firm

1 authority to enter into a settlement.

2          THE COURT:  Anything related to that.  And that

3 probably starts with the retainer agreement, maybe not.

4 But if there's anything subsequent to that, that's all

5 fair game.  And I think that ought to be clear enough

6 from our previous conversation today, but Mr. Watson

7 wants to flag that.  I think he's entitled to make sure

8 it's pellucid and now I think it is.  Mr. Watson, back to

9 you.

10          MR. WATSON:  Your Honor, on Request for

11 Production No. 10, Owens-Illinois --

12          MR. MCCOY:  Judge --

13          THE COURT:  Yeah.  Can you give us a cite?

14          MR. MCCOY:  -- the matter we just talked about

15 or submitted for in camera review, there are such

16 communications before --

17          THE COURT:  Yes.  Well, Mr. McCoy, let's stick

18 with this understanding: presumptively you may and should

19 file everything in camera for ex parte review.  But to

20 the extent that it is clear, from even a cursory review

21 of any particular document, that it is discoverable, go

22 ahead and turn it over, but also give it to the Court so

23 that we've got a complete set.

24     If it's quicker just to give everything to the

25 Court, I think that's important, because as I noted at

1  the outset, time is of the essence here.  And the sooner

2  we get these documents now, the sooner the Court can

3  actually review them.

4      Today is Wednesday.  If we've got them by tomorrow,

5  hopefully barring unexpected events in the court -- and

6  I'll be honest with you, we get them a lot here -- we

7  could probably get you both a ruling by Friday on these

8  documents and that's what I'm aiming toward.  Okay.  So,

9  Mr. McCoy, yes, ex parte, in camera, but quickly and

10  thoroughly, understood?

11          MR. MCCOY:  Right.  The only thing I can say is

12  you're talking about documents from the 1990s.  I know I

13  got the retainer agreement.  I saw that.  This is all

14  before I was working on this case.  But documents in the

15  1990s, I'm not sure how fast our firm can find those.  I

16  mean, I'll certainly do our best.  I think they can be

17  found very quickly.

18          THE COURT:  Well, sure.  And, Mr. McCoy --

19          MR. MCCOY:  I would let you know.  I think we

20  can get them.

21          THE COURT:  Okay.  Again, to invoke one of

22  our -- we aren't going to look for trouble now.  Make it

23  a top priority.  If your people run into snags or

24  slowdowns or roadblocks, let Mr. Watson know, let the

25  Court know.  We will be fair.  We will be realistic.  But

1  we won't anticipate roadblocks, snags or delays at this

2  point.  We will expect that it's all accessible and able

3  to be filed with the Court by noon tomorrow absent some

4  kindly word from you or your people that that's just not

5  possible and why not, okay?

6          MR. MCCOY:  Right.

7          THE COURT:  Mr. Watson, back to you.

8          MR. MCCOY:  One other comment I have, Judge, is

9  I didn't understand Gary Suoja's answers to only be his

10 personal knowledge.  I understood him to be speaking for

11 everything he knew about the estate and haven't been --

12         THE COURT:  Right.  But, Mr. McCoy, I get that.

13 I get that.  But that's not the -- that's not the measure

14 of discoverable information.  And as we all know, under

15 Seventh Circuit law, an entity, whether it's an estate or

16 a corporation or a partnership, has existence apart from

17 the flesh and blood representatives.

18     So to the extent that the estate here may have other

19 documents that Mr. Suoja just didn't recall, Mr. Watson

20 is entitled to see those.  And that's what you and your

21 people are looking for just so that we have a thorough

22 disclosure of anything that's relevant here.

23         MR. MCCOY:  I understand.  Those will be

24 produced.

25         THE COURT:  Good.  Mr. Watson back to you then.

1          MR. WATSON:  Your Honor, on Request for

2   Production No. 10, Owens-Illinois asked for all documents

3   related to the dissolution of the estate.  And as we lay

4   out in our motion to compel, the reason for requesting

5   that discovery is they may show that the claims are not

6   viable based on the prior state court action and then

7   closing of the estate or the reason for the dissolution

8   of the estate.  And it will bear on the relationships

9   between Cascino Vaughn Law Offices, the estate, the

10  deceased, other heirs or any information that we can at

11  least obtain to determine what that relationship is and

12  why the estate was closed.

13      And the Response to Request for Production No. 10

14  was: "Objection.  Not relevant to any claim or defense."

15  We think those documents should be produced.

16          THE COURT:  Okay.  Mr. McCoy, let's start with

17  the practical concern and then expand into the more

18  substantive or legal concern.  Do you or, to your

19  knowledge, does Mr. Gary Suoja have access to the

20  documents that were generated in dissolving this

21  particular estate?

22          MR. MCCOY:  My firm got the file from the court.

23          THE COURT:  The state court?

24          MR. MCCOY:  That's all we have.

25          THE COURT:  Okay.

1          MR. MCCOY:  And we turned that over to

2     Owens-Illinois.

3          THE COURT:  So they already have that?

4          MR. WATSON:  That's just not true, Your Honor.

5          THE COURT:  Okay.

6          MR. MCCOY:  Well, my firm got the file from the

7     court, the probate court, and turned it over to

8     Owens-Illinois.

9          MR. WATSON:  That's just not accurate, Your

10    Honor.

11         THE COURT:  Okay.  Well, Mr. Watson --

12    Mr. Watson, I can't resolve that dispute between you and

13    Mr. McCoy over the telephone.  But, Mr. McCoy, go back

14    and double-check.  If you've got the probate file --

15         MR. MCCOY:  I will give it to them again.

16         THE COURT:  First time, second time, it goes

17    over ASAP, okay?

18         MR. MCCOY:  I will provide it, those documents,

19    in camera.

20         THE COURT:  Good.  Mr. Watson, back to you.

21         MR. WATSON:  Your Honor, on a related topic, and

22    I'm not sure whether the Court can resolve it, if it's

23    something that just needs to be flagged at this point,

24    but on Request for Production Nos. 4 through 7 we

25    received limited production of the documents from the

1    state court proceeding.

2          THE COURT:  Are we talking about the probate or

3    something else?

4          MR. WATSON:  Sorry, Your Honor.  That's my fault

5    in transitioning here.  We're talking about something

6    else.  Delores Suoja had a previously-filed state court

7    case in Wisconsin.  Owens-Illinois was not a party to

8    that case.  That case was resolved on a dismissal on the

9    merits and -- two years after it was filed.  And it

10   proceeded all the way through facts and expert discovery.

11   There were depositions taken.  There were court hearings.

12   There was written discovery exchanged between the

13   parties.  Numerous defendants ended up moving for summary

14   judgment, according to what we can see from the court's

15   online dockets.

16         THE COURT:  What county was it in, do you know?

17         MR. WATSON:  Dane County, Your Honor.

18         THE COURT:  Okay.

19         MR. WATSON:  We received some documents from

20   that estate court tort action in Dane County.  It wasn't

21   a complete production by any measure.  It didn't include

22   any depositions.  It did not include the discovery

23   responses that were exchanged except for those that were

24   attached to I think one motion for summary judgment,

25   maybe two motions for summary judgement.

1          THE COURT:  Now, did Cascino Vaughn represent

2   Delores Suoja in that state court proceeding?

3          MR. WATSON:  It did, Your Honor.

4          THE COURT:  Okay.  Keep going.

5          MR. WATSON:  So our concern at this moment is

6   two-fold.  First is whether it's a complete production.

7   The second is if it's not a complete production,

8   verification that that is all the documents that were

9   preserved, because if there were not documents preserved

10  during the course of litigation, we would have

11  significant concerns that we will likely raise at a

12  pretrial stage or a motion in limine stage with regard to

13  preservation of evidence.

14         THE COURT:  Okay.  So, Mr. McCoy, let's turn to

15  you on that one.  Do you know, and can you aver today

16  during this hearing, whether everything your firm has

17  from that state court case has been turned over or is

18  that something where your people will have to go back and

19  double-check?

20         MR. MCCOY:  It has been turned over, Judge --

21         THE COURT:  Okay.

22         MR. MCCOY:  -- whatever we had.  Now, let me

23  explain.  Our firm can't find in the files from that

24  earlier case --

25         THE COURT:  I think that's all Mr. Watson is

1    asking.  And you're now of record saying you looked,

2    everything you've got you turned over, there's no place

3    else to look, there's nothing else to turn over; is that

4    what you are telling us today?

5              MR. MCCOY:  Yes.  And just to explain further,

6    you know, our firm went and pulled the file in Dane

7    County, the state court files, and we provided copies of

8    those files to the defendant --

9              THE COURT:  Right.  Well, and I'm sure

10   Mr. Watson --

11             MR. MCCOY:  -- along with all the discovery

12             THE COURT:  -- I'm sure Mr. Watson has sent his

13   people up to look at Dane County as well.  What he's

14   looking for is Cascino Vaughn Law Office files.  And what

15   you've just told us both is that your people have checked

16   internally and there's nothing else to turn over.  And I

17   don't want to put words in your mouth, but that's what

18   you're telling us today, correct?

19             MR. MCCOY:  That's right.  Yes.

20             THE COURT:  Okay.  Mr. Watson, does that answer

21   that one for today's purposes?

22             MR. WATSON:  For today's purpose it does, Your

23   Honor.

24             THE COURT:  Mr. Watson, the microphone is still

25   yours.

1          MR. WATSON:  Your Honor, that is all with regard

2    to the motion to compel the written discovery.  The

3    flipside of that, Your Honor, is, as you raised earlier,

4    the procedural problem of depositions and not having

5    complete written discovery while you're taking

6    depositions.  And without seeing what additional written

7    discovery exists, Owens-Illinois wasn't fully able to

8    examine Mr. Suoja and postponed the deposition of Sue

9    Merwin and did not take and chose to defer any

10   depositions of counsel in this case.

11       I think we're still in that position, not having

12   seen the documents.  We haven't changed anything from

13   where we were two weeks ago or a week ago.  We just now

14   know that we can expect to see some additional material.

15          THE COURT:  Well, Mr. Watson, I understand and I

16   started this hearing by acknowledging that that is truly

17   a concern.  It's a legitimate concern.  But in light of

18   what Judge Crabb has said about the calendar, I'm going

19   to have to stick with what I told you at the outset.

20       To the extent that you wish to argue to Judge Crabb

21   that this failure to timely provide the information and

22   your failure -- your inability to be able to ask and

23   obtain answers to certain questions because documents

24   were not produced, or otherwise, you've got to put that

25   in your reply to the judge and ask for one of two things:

1    Either ask that you win your motion either on a factual,

2    legal or equitable basis or implore the Court to give you

3    more time to follow up on this and move back the trial

4    date.   Other than that, that's above my pay grade.

5        I'm not going to reopen the depositions.   There's

6    really not -- and I'm not going to expand the calendar

7    that Judge Crabb personally set.   So I think that's the

8    best you're going to get out of the Court today with a

9    full acknowledgement that you have some legitimate

10   concerns, understood?

11       MR. WATSON:   Discovery is considered then closed

12   entirely as of July 10, 2015, according to the Court's

13   order that's 77?

14       THE COURT:   Yes, other than what I am ordering

15   the Cascino Vaughn law firm to provide to you.   We're not

16   going to redo depositions at this point, okay?   So to the

17   extent that prejudices you, you can make your arguments

18   in reply.

19       MR. WATSON:   Understood.   The secondary point to

20   that, Your Honor, is plaintiff hasn't moved for summary

21   judgment on any issues either.   So to the extent there is

22   discovery that could be taken between now and live issues

23   at trial, Owens-Illinois will implore Judge Crabb with

24   any arguments to try and obtain that discovery.

25       THE COURT:   Understood, because the way I read

 1   her order, which was perhaps focused more on the issue

 2   directly in front of her instead of the big picture, was

 3   that she set a July 10th discovery cutoff, period, and

 4   she didn't make that specific to the retainer agreement

 5   or the ability-to-settle issue.  I think *implore* is the

 6   right verb.  *Petition*, *plead*, *cajole*, you pick your verb,

 7   but it's up to the presiding judge to give you relief.

 8   Mr. Watson, anything else today then?

 9            MR. WATSON:  Nothing further, Your Honor.

10            THE COURT:  Okay.  Mr. McCoy, any questions --

11   I'll tell you what, Mr. McCoy: because we kept adding to

12   your to-do list as we went, I'll give you until

13   constructive close of business tomorrow, which is 4:30 in

14   the afternoon, to get this all into the court.  As we all

15   know, you could file electronically 24-7.  But so that

16   Mr. Watson and his people have a chance to look at this

17   stuff before they have dinner; instead of noon tomorrow,

18   everything you've got that's responsive to this court's

19   order to you has to be in by 4:30 tomorrow afternoon,

20   understood?

21            MR. MCCOY:  For in camera?

22            THE COURT:  Right, in camera.  I'm sorry.  I

23   misspoke.  Of course it's going to be in camera.

24   He's not going to see it, but I will, and I'll look at it

25   before dinner tomorrow and get everybody the best ruling

1 I can by Friday.  I stand corrected.  I apologize for

2 that.  But you're right, Mr. McCoy, in camera.

3      Mr. McCoy, anything else today then?

4           MR. MCCOY:  No.  I don't have anything else

5 today to add, Judge.

6           THE COURT:  Okay.  Well, then I'll enter a

7 text-only order commemorating where we landed.  And I

8 think it's clear enough what needs to happen and how

9 quickly it needs to happen and then we'll take it from

10 there.  Thank you both.  We're done for today.

11      (Adjourned at 11:54 a.m.)

12                          ***

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I, CHERYL A. SEEMAN, Certified Realtime and

2   Merit Reporter, in and for the State of Wisconsin,

3   certify that the foregoing is a true and accurate record

4   of the proceedings held on the 15th day of July, 2015,

5   before Magistrate Judge Stephen L. Crocker, of the

6   Western District of Wisconsin, in my presence and reduced

7   to writing in accordance with my stenographic notes made

8   at said time and place.

9   Dated this 23rd day of July, 2015.

10

11

12

13

14

                        _____/s/_____

15

                        Cheryl A. Seeman, RMR, CRR
16                      Federal Court Reporter

17

18

19

20

21

22

23  The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means unless
24  under the direct control and/or direction of the
    certifying reporter.

25