IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GARY SOUJA, Individually and as
Special Administrator for the Estate
of OSWALD F. SUOJA, Deceased,

      Plaintiff,

v.                                                                        Case No. 3:99-cv-00475-bbc

OWENS-ILLINOIS, INC.,

      Defendant.

**OWENS-ILLINOIS, INC.'S**
**RESPONSE TO PLAINTIFF'S MOTIONS *IN LIMINE***

Owens-Illinois, Inc. submits this response to Plaintiff's Motions *in Limine* (ECF No. 117) and requests that the Court deny, in part, Plaintiff's Motions *in Limine*.

**LEGAL STANDARD**

District courts have broad discretion in ruling on evidentiary issues before and during trial. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The court may grant motions *in limine* for "evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Where evidentiary submissions cannot be evaluated accurately or sufficiently, however,

"it is necessary to defer ruling until during trial." *Id.* Additionally, the rulings on motions *in limine* are "subject to change when the case unfolds." *Luce*, 469 U.S. at 41; *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006). Indeed, "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41-42.

## ARGUMENT

**PLAINTIFF'S MOTION NO. 1:** Gary Suoja is not the proper party to pursue the claims, not the proper special administrator of the estate of Oswald Suoja, or was discharged as a special administrator.

Owens-Illinois understands the Court has denied its arguments that plaintiff is not the proper party under Fed. R. Civ. P. 17; has no standing to maintain this action; has no viable wrongful death claim under Wis. Stat. 895.04(3); and has mooted this action. *See* Mot. Summ. J., ECF Nos. 89, 90, 111; Opinion & Order, ECF No. 114. If necessary to preserve the issues for review, Owens-Illinois will raise them with the Court.

Before the jury, Owens-Illinois has no intention to argue what is quoted above and no objection to this motion *in limine*, unless plaintiff opens the door. *See Estate of Escobedo v. Martin*, 702 F.3d 388, 400-01 (7th Cir. 2012) ("when a party puts evidence at issue, that party must 'accept the consequences' of opening the door to that evidence" (citation and brackets omitted)); *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 627 (7th Cir. 2003) (same); *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) (same).

**PLAINTIFF'S MOTION NO. 2:** How Plaintiff's lawyers are paid for their services.

Owens-Illinois has no intention to argue what is quoted above and no objection to this motion *in limine*, so long as the ruling is reciprocal.

**PLAINTIFF'S MOTION NO. 3:** Argument or evidence about existence of a separate lawsuit filed on behalf of Oswald Suoja in state court in 1997 which did not name Owens-Illinois as a defendant.

This motion should be denied. As plaintiff concedes, evidence from the state court action may be admissible and those issues should be deferred until trial. Pl.'s Mot. 2 n.1. Moreover, the existence of the state court action relates to plaintiff's failure to preserve or produce the state court files. Hr'g Tr. 28-30, ECF No. 100 (admitting in compulsion hearing, plaintiff "can't find the files from that earlier case"); Letter to Robert McCoy, attached as Ex. A.

Under Fed. R. Civ. P. 37, the Court should permit evidence and argument to the jury regarding the loss of the records, and provide the jury instruction to assist in its evaluation of such evidence or argument.[1] In analyzing this issue, district courts look to three factors: (1) the existence of a breach of the duty to preserve or produce documents; (2) the level of culpability for the breach; and (3) the prejudice that results from the breach. *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992); *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998).

Every factor is satisfied here. First, plaintiff had a duty to preserve the state court files during this litigation because there is a "common-sense notion that important documents should not be destroyed while litigation is pending." *Brown & Williamson*

---

[1] Owens-Illinois will submit its proposed jury instructions pursuant to the Court's Procedures Governing Final Pretrial Conference in Cases Assigned to Judge Crabb, ECF No. 17.

*Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1134 (7th Cir. 1987); *Marrocco*, 966 F.2d at 224. Second, plaintiff's conduct was unreasonable and falls squarely within the "fault" category. *Marrocco*, 966 F.2d at 224; *Domanus v. Lewicki*, 742 F.3d 290, 299 (7th Cir. 2014) ("bad faith" is not required). Plaintiff failed to disclose the state court action during pretrial discovery and, then, waited until the last minute to admit the state court records were missing. Hr'g Tr. 28-30, ECF No. 100.[2] Indeed, "[a] court and a jury are entitled to presume that documents destroyed in bad faith while litigation is pending would be unfavorable to the party that has destroyed the documents." *Brown & Williamson*, 827 F.2d at 1134.

Third and finally, Owens-Illinois is severely prejudiced without the state court records — which involve the same cause of action, more than two years of discovery by 19 parties, and critical party admissions. Not only are those records highly relevant, they could be potentially dispositive evidence concerning Owens-Illinois. Further, even if the records do not contain dispositive evidence, they contain impeachment material and other information bearing on the defense of the action. It also stands to reason that plaintiff wanted to shield from discovery the state court records solely because it will undermine his tort claims here. To cure this prejudice, the Court should permit evidence and argument to the jury regarding the loss of the state court records, and give

---

[2] Notably, the state court action was filed by "Delores Souja" (not Suoja) on behalf of "Oscar Suoja" (not Oswald Suoja). Pl.'s Compl., ECF No. 92-1. The lawsuit could not be uncovered by a simple search of state public records. To be sure, Owens-Illinois also disputes the plaintiff's argument why it was not named. Pl.'s Mot. 2. He offers no evidence to support this agreement, and his attorneys had years to name Owens-Illinois in the state court action — just like they named Owens-Illinois and T&N PLC, a codefendant, in this federal action.

a permissive jury instruction to assist in its evaluation of the evidence or argument. Fed. R. Civ. P. 37; *Domanus*, 742 F.3d at 299 (permissive jury instruction); *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 392 (2d Cir. 2013) (permissive jury instruction).

**PLAINTIFF'S MOTION NO. 4:**  Any other Court has barred or limited the testimony of any expert called by Plaintiff in this case.

Owens-Illinois has no intention to argue what is quoted above and no objection to this motion *in limine*, unless plaintiff opens the door. *See Estate of Escobedo*, 702 F.3d at 400-01 ("when a party puts evidence at issue, that party must 'accept the consequences' of opening the door to that evidence" (citation and brackets omitted)); *Young*, 327 F.3d at 627 (same); *Lawson*, 153 F.3d at 379 (same).

**PLAINTIFF'S MOTION NO. 5:**  That Plaintiff made claims against defendants who were granted summary judgment in this case.

Owens-Illinois has no intention to argue what is quoted above and no objection to this motion *in limine*, because there were no defendants who were granted summary judgment in this federal case.

**PLAINTIFF'S MOTION NO. 6:**  An agreement to settle this case was made between Owens-Illinois, Inc. and Plaintiff.

Owens-Illinois understands the Court has denied its argument that plaintiff's claims are barred by the settlement agreement. *See* Opinion & Order, ECF No. 67. As discussed in its letter (ECF No. 87) and the July 15, 2015 hearing (ECF Nos. 94, 100), Owens-Illinois was severally prejudiced in obtaining discovery on this issue and the plaintiff did not affirmatively move for summary judgment on lack of authority. If necessary to preserve the issue for review, Owens-Illinois will continue to raise it with the Court.

**PLAINTIFF'S MOTION NO. 7:** Plaintiff sustained or suffered any medical condition, accident, toxic exposure, or injury other than those made the basis of this lawsuit, without laying proper foundation to show the relevance to causation, damages, or some other issue of consequence.

This motion should be denied. Indeed, plaintiff's motion has been denied previously because the "medical history is at issue in this lawsuit. Certainly relevant as it goes to damages, at a minimum." Pretrial Tr. 18:6-20, *Krik v. Crane Co.*, No. 10 C 7435 (N.D. Ill. Dec. 17, 2014) (ECF No. 126). As plaintiff concedes, Oswald Suoja's medical conditions and injuries are certainly relevant to damages under Wisconsin law. Pl.'s Mot. 4; *Anderson v. Milwaukee Ins.*, 161 Wis. 2d 766, 771, 468 N.W.2d 766, 769 (Ct. App. 1991) (other medical conditions relevant to "reduce the amount of damages").

Additionally, Oswald's medical conditions are relevant to causation. Oswald spent his entire working life as a union asbestos worker from 1943 until 1983. During his forty-year career, he used hundreds of asbestos-containing products and continued to work with asbestos-containing products long after the potential health hazards were known. Harold Haase Dep. 43:11-15 ("Q. But when you started in the early '60s, there were older guys that took you aside and said that the trade was hazardous? A. Oh, yes.") (ECF No. 127). Yet, Oswald quit working as a union asbestos worker only because of his diabetes and blindness. Gary Suoja Dep. 256:6-257:23, ECF No. 93. If Oswald assumed the risk from asbestos exposure until 1983, Owens-Illinois's conduct in the 1950s was not the cause of his injuries.

**PLAINTIFF'S MOTION NO. 8:** The work history of "claimed" locations of asbestos exposure submitted in discovery.

This motion should be denied. Plaintiff's interrogatory answer—a list of 20

jobsites and time periods where asbestos exposure is claimed—is relevant for credibility, causation, and allocation of fault. To begin with, plaintiff has sworn out this answer and the jury gets to assess his admissions and prior inconsistent statements. Fed. R. Evid. 801(d)(1); Fed. R. Evid. 801(d)(2); *see also Shell v. Parrish*, 448 F.2d 528, 535 (6th Cir. 1971) (reasoning that an "opponent has the full opportunity to put himself on the stand and explain his former assertion" (*Wigmore on Evidence* § 1048)).[3]

Further, plaintiff's answer is relevant to causation and allocation of fault. Plaintiff claims that Oswald Suoja was exposed to asbestos-containing products at many jobsites during his 40-year asbestos career. Each property owner knew the threshold limit values for asbestos should not be exceeded, and there was nothing Owens-Illinois could have told them about health risks associated with asbestos exposure (more accurately, overexposure) or the methods by which overexposure could be prevented that they did not already know. In fact, Oswald continued to be overexposed to asbestos dust without protection until well after warning labels were placed on asbestos-containing products in the 1960s — long after Owens-Illinois ceased the manufacture and sale of its Kaylo product in 1958.

The jury may consider this evidence in deciding whether Oswald's claimed exposure to Owens-Illinois Kaylo at one location, Badger Ordnance Works, was a substantial factor in causing his injury. Moreover, the jury may consider this evidence

---

[3] Although plaintiff's motion cites Fed. R. Evid. 408, his interrogatory answer does not involve "(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim . . . ." Fed. R. Evid. 408

to allocate fault among responsible parties and nonparties. *Kasun v. Owens-Illinois, Inc.*, 2001 WI App 224, ¶ 33, 247 Wis. 2d 989 (Ct. App. 2001); *Connar v. West Shore Equip. of Milwaukee, Inc.*, 68 Wis. 2d 42, 44-45, 227 N.W.2d 660 (1975).

**PLAINTIFF'S MOTION NO. 9:** That Plaintiff has received, has been entitled to receive or will in the future receive, monies in settlement of claims against other parties or nonparties, unless admissible under Federal Rule of Evidence 408. This motion in limine is directed at the fact and amount of settlement and does not exclude the names of the parties from the verdict form if the evidence justifies their inclusion.

As discussed above, Owens-Illinois understands the Court has denied its arguments that plaintiff is not the proper party under Fed. R. Civ. P. 17; has no standing to maintain this action; has no viable wrongful death claim under Wis. Stat. 895.04(3); and has mooted this action. *See* Mot. Summ. J., ECF Nos. 89, 90, 111; Opinion & Order, ECF No. 114. Owens-Illinois also understands the Court has denied its argument that plaintiff's claims are barred by the settlement agreement. *See* Opinion & Order, ECF No. 67. If necessary to preserve those issues for review, Owens-Illinois will raise them with the Court.

Before the jury, Owens-Illinois has no intention to argue what is quoted above. But Owens-Illinois does intend to offer and argue the plaintiff's admissions and prior inconsistent statements, including his sworn statement to the Wisconsin probate court that there were no further claims to be pursued. *E.g.*, Gary Suoja Dep. 211-212, ECF No. 93; Petition for Discharge, ECF No. 92-28. As a party-opponent and damages witness, plaintiff may then take the stand and explain his inconsistent statements to the jury. Fed. R. Evid. 801(d)(1); Fed. R. Evid. 801(d)(2); *see also Shell*, 448 F.2d at 535 (reasoning that an "opponent has the full opportunity to put himself on the stand and explain his

former assertion" (*Wigmore on Evidence* § 1048)).

**PLAINTIFF'S MOTION NO. 10:**  References, other than during jury selection, to names of persons as being potential witnesses or that they were identified in interrogatory answers or other discovery documents as potential witnesses

This motion should be denied.  It is well settled that counsel may comment on the quality of the evidence, including "the failure of a party to call an available witness whose testimony the party would naturally be expected to produce if favorable to him." *Downriver Internists v. Harris Corp.*, 929 F.2d 1147, 1151 (6th Cir. 1991) (quoting *Auto Owners Ins. Co. v. Bass*, 684 F.2d 764, 769 (11th Cir. 1982)); *United States v. Certain Land in City of Ft. Worth*, 414 F.2d 1026, 1028 (5th Cir. 1969) (same); *see also Seventh Circuit Pattern Civil Jury Instructions* 1.18 (2009). In fact, plaintiff's motion has been denied previously because "commentary on the quality of the plaintiff's evidence, making reference to witnesses who did not testify, is generally appropriate." Pretrial Tr. 19:1-13, *Krik v. Crane Co.*, No. 10 C 7435 (N.D. Ill. Dec. 17, 2014) (ECF No. 126).

The plaintiff's motion also overstates *Oxman v. WLS-TV*, 12 F.3d 652 (7th Cir. 1993), as his counsel did in the *Krik* case. In *Oxman*, the Seventh Circuit considered an adverse inference, i.e., the jury may assume that the witness's testimony would have been unfavorable. *Id.* at 661; *Seventh Circuit Pattern Civil Jury Instructions* 1.19 (2009). If plaintiff believes that an adverse inference instruction is improper, he should make that objection during the jury instruction conference.

**PLAINTIFF'S MOTION NO. 11:**  The absence of records showing Owens-Illinois, Inc. sold Kaylo for use at Badger Ordnance

This motion should be denied. Counsel may comment on the quality of the

- 9 -

evidence. Indeed, plaintiff's motion has been denied previously because the parties "are entitled to [] argue the evidence and argue the quality of the presentation by both sides as a matter of persuasion." Pretrial Tr. 19:23-203, *Krik v. Crane Co.*, No. 10 C 7435 (N.D. Ill. Dec. 17, 2014) (ECF No. 126).

Plaintiff's motion also mischaracterizes Owens-Illinois's discovery responses. Pl.'s Mot. 6. As Owens-Illinois explained, "effective April 30, 1958, Owens-Illinois, Inc. disposed of the business involved in this action by way of sale of that business to Owens-Corning Fiberglas Corporation" and "documents which relate to matters inquired about by these interrogatories were transferred to Owens-Corning Fiberglas Corporation with the transfer of the business in question in 1958." Interrog. Resp. 1-2, ECF No. 117-3. Plaintiff has obtained these documents from Owens-Corning Fiberglas Corporation, and likely will offer sales invoices from Owens-Corning Fiberglas Corporation to argue the presence of Kaylo at Badger Ordnance Works. *See* Pl.'s Suppl. Disclosure, ECF No. 105-15. Accordingly, plaintiff must believe the source of information and the method or circumstances of preparation are trustworthy. Fed. R. Evid. 803(6)-(7). If, however, plaintiff believes they indicate a lack of trustworthiness, all sales invoices should be excluded because their presence or absence would be irrelevant and prejudicial. *See id.*; Fed. R. Evid. 402, 403.

**PLAINTIFF'S MOTION NO. 12:** Asbestos exposures at locations or from products which were not disclosed during the discovery process as alleged causes of plaintiff's injuries.

This motion should be denied because plaintiff's argument does not address the full discovery record. Fed. R. Civ. P. 26(e)(1)(A) (supplementation includes information

"otherwise made known to the other parties during the discovery process or in writing"). During the discovery process, the parties took depositions of coworkers and exchanged written discovery, 26(a)(1) disclosures, 26(a)(2) expert reports, and 26(a)(3) pretrial disclosures. That discovery identified asbestos exposures at many locations or from many products. Indeed, if plaintiff's causation theory is allowed (which fails *Daubert* scrutiny, as this Court has ruled), every minute of exposure that Oswald Suoja ever had to asbestos during his lifetime, which includes millions of fibers every day in ambient air, would be alleged causes of his injuries. *See* Arthur Frank Rep. 1, ECF No. 22-1; Trial Tr. 258:23-280:19, ECF No. 80 ("Q. If the hypothetical was one minute of exposure, your answer would be yes? A. It would add to the cumulative exposure. Q. And it would be a substantial contributing factor to that person's ultimate disease? A. As I understand science, I would have to say yes.").

It also strains credulity for plaintiff to argue that Owens-Illinois failed to disclose information about Oswald's asbestos exposure. Plaintiff failed to disclose an entire state court action during pretrial discovery, and failed to preserve the state court records. Hr'g Tr. 28-30, ECF No. 100. Just last month, Owens-Illinois received new exposure information from the plaintiff's prior state court action that was never previously disclosed. *See* Letter to Robert McCoy, attached as Ex. A. To the extent that Owens-Illinois even could know the persons or entities responsible for Oswald's asbestos exposure, they were disclosed by Owens-Illinois.

**PLAINTIFF'S MOTION NO. 13:**   That Plaintiff has submitted claims in bankruptcy unless Defendant lays the foundation to prove the bankruptcy claim submissions contain evidence of exposure which is otherwise admissible to support a

claim against another entity.

This motion should be denied. Indeed, plaintiff's motion has been previously denied because bankruptcy claims are relevant to causation and allocation of fault. Pretrial Tr. 14:21-15:13, *Krik v. Crane Co.*, No. 10 C 7435 (N.D. Ill. Dec. 17, 2014) (ECF No. 126). As plaintiff concedes, the bankruptcy claims include "written evidence of exposures," "affidavits of exposure from the Plaintiff," "admissions by counsel or statements of the Plaintiff which relate to exposure to asbestos," and "documents which provide relevant evidence of exposure to asbestos and which qualify as admissions of a party opponent." Pl.'s Mot. 8-9. That evidence of Oswald Suoja's asbestos exposures is unquestionably relevant.

If, however, plaintiff believes that specific information from the bankruptcy claims is not admissible, he should make that objection during trial. Those matters "would be better served by deferring the ruling until the issue could be determined in a more concrete setting." *See Jonasson*, 115 F.3d at 440; *see also United States v. Messino*, 873 F. Supp. 1177, 1188 (N.D. Ill. 1995) (finding "motion is too vague to warrant a ruling that all incidents fitting into defendant's description should be excluded").

**PLAINTIFF'S MOTION NO. 14:** The time or circumstances under which Plaintiff employed his attorney.

This motion should be denied. Indeed, plaintiff's motion has been previously denied because it is vague and counsel may comment or impeach plaintiff with a specific fact that goes to plaintiff's bias or credibility. Pretrial Tr. 15:22-16:14, *Krik v. Crane Co.*, No. 10 C 7435 (N.D. Ill. Dec. 17, 2014) (ECF No. 126); *see also* Fed. R. Evid.

801(d)(1), 801(d)(2).

**PLAINTIFF'S MOTION NO. 15:** That the law firm of Cascino Vaughan Law Offices represents, or has been referred other cases involving, other asbestos-exposed individuals and/or asbestos product liability actions, except to show bias of experts or of a witness who is represented by Cascino Vaughan Law Offices.

Owens-Illinois has no objection to this motion *in limine* as phrased. If, however, there is a specific fact that goes to credibility or bias, counsel may comment on that fact or impeach a witness with it. Pretrial Tr. 16:15-22, *Krik v. Crane Co.*, No. 10 C 7435 (N.D. Ill. Dec. 17, 2014) (ECF No. 126); *see also* Fed. R. Evid. 801(d)(1), 801(d)(2).

**PLAINTIFF'S MOTION NO. 16**: Asbestos lawsuits, or Plaintiff's claims, are in any way "lawyer-made" lawsuits or claims, or in any other way infer that such cases are generated or caused by Plaintiff's counsel.

Owens-Illinois has no intention to argue what is quoted above and no objection to this motion *in limine*, unless plaintiff opens the door. *See Estate of Escobedo*, 702 F.3d at 400-01 ("when a party puts evidence at issue, that party must 'accept the consequences' of opening the door to that evidence" (citation and brackets omitted)); *Young*, 327 F.3d at 627 (same); *Lawson*, 153 F.3d at 379 (same).

**PLAINTIFF'S MOTION NO. 17:** Use of asbestos by the U.S. government without warnings is evidence that private entities need not warn or instruct about precautionary matters.

This motion should be denied. As plaintiff concedes, the use of asbestos by the federal government and government studies about asbestos safety are relevant evidence. Pl.'s Mot. 10. That evidence bears directly on the legal standard of care, causation, and allocation of fault, as well as Owens-Illinois's state-of-the-art defense.

Plaintiff claims that Oswald Suoja was exposed to Owens-Illinois Kaylo at Badger Ordnance Works, a federal enclave and government-owned ammunitions

plant.[4] *See* U.S. Const. art. I, § 8, cl. 17; *United States v. State Tax Comm'n of Miss.*, 412 U.S. 363, 373 (1973); Wis. Stat. § 1.02 (1935). As a federal enclave, Badger Ordnance Works was governed by federal law. *James Stewart & Co. v. Sadrakul*, 309 U.S. 94, 99 (1940). Therefore, evidence about whether the federal government did or did not require warnings is directly relevant to the plaintiff's legal cause of action against Owens-Illinois.

Moreover, the federal government's conduct is relevant to causation and allocation of fault. The federal government owned the property, and was required to maintain a safe place of employment under the safe place statute. *Globig v. Greene & Gust Co.*, 201 F. Supp. 945, 950 (E.D. Wis. 1962), *aff'd*, 313 F.2d 202 (7th Cir. 1963). So, like every other property owner and employer, the federal government was required to keep asbestos dust within safe levels and implement the proper safeguards. *See* Industrial Commission of Wisconsin, General Orders on Dusts, Fumes, Vapors, and Gases, effective March 18, 1932, including Order 2002 amended, effective January 22, 1941, attached as Ex. B. As the evidence will show, the federal government had an experienced and high-quality industrial hygiene apparatus. The federal government knew it was using asbestos-containing insulation products at Badger Ordnance Works, knew the threshold limit value for asbestos should not be exceeded, and knew all of the industrial hygiene techniques available to avoid excess exposure.

---

[4] On March 1, 1942, the United States acquired the land by condemnation proceedings. *See* Order of Immediate Possession at 2, *United States v. 10,565 Acres of Land*, Case No. 307 (W.D. Wis. Jan. 16, 1942), attached as Ex. C; National Park Service, Department of the Interior, *Badger Army Ammunition Plant: Written Historical and Descriptive Data*, at 15 (1982), attached as Ex. D.

During the relevant time period, there was nothing Owens-Illinois could have told the federal government about any health risks associated with asbestos exposure or the methods by which overexposure could be prevented that the federal government did not already know. Evidence that the government did or did not issue warning regarding hazards associated with asbestos-containing products is relevant to state of the art and to the knowledge of the parties, and therefore, admissible. Evidence that a party received a warning about the then-accepted maximum level of exposure to asbestos is clearly relevant to the issue of causation in any "duty to warn" case. Accordingly, there is no question that jury may consider the federal government's knowledge and conduct — including whether the government did or did not require warnings — in deciding the legal standard of care, causation, and allocation of fault, as well as Owens-Illinois's state-of-the-art defense.

**PLAINTIFF'S MOTION NO. 18:** The United States government stockpiled asbestos.

This motion should be denied. As noted above, plaintiff claims that Oswald Suoja was exposed to Owens-Illinois Kaylo at Badger Ordnance Works, a federal enclave and government-owned ammunitions plant. Accordingly, the jury may consider the federal government's conduct in deciding causation and allocation of fault.

**PLAINTIFF'S MOTION NO. 19:** Asbestos insulation products "won the war" or any reference to such products being necessary during World War II or any other war.

This motion should be denied. The role that asbestos had in World War II has a direct bearing on this case: plaintiff claims that Oswald Suoja was exposed to asbestos

at Badger Ordnance Works, a federal enclave and government-owned ammunitions plant that was built for World War II.

**PLAINTIFF'S MOTION NO. 20:** Plaintiff has received, has been entitled to receive, or has applied for benefits of any kind from a collateral source.

Owens-Illinois has no intention to argue what is quoted above and no objection to this motion *in limine*, unless plaintiff opens the door. *See Estate of Escobedo*, 702 F.3d at 400-01 ("when a party puts evidence at issue, that party must 'accept the consequences' of opening the door to that evidence" (citation and brackets omitted)); *Young*, 327 F.3d at 627 (same); *Lawson*, 153 F.3d at 379 (same).

**PLAINTIFF'S MOTION NO. 21:** The effect or result of a claim, suit or judgment upon the insurance rates, premiums or charges either in general or with respect to a particular plaintiff or defendant in question as a result of this or any other matter.

Owens-Illinois has no intention to argue what is quoted above and no objection to this motion *in limine*, unless plaintiff opens the door. *See Estate of Escobedo*, 702 F.3d at 400-01 ("when a party puts evidence at issue, that party must 'accept the consequences' of opening the door to that evidence" (citation and brackets omitted)); *Young*, 327 F.3d at 627 (same); *Lawson*, 153 F.3d at 379 (same).

**PLAINTIFF'S MOTION NO. 22:** The "threshold limit values" for asbestos exposure or levels stated in Wisconsin Industrial Commission regulations are "safe" levels of exposure which could prevent mesothelioma.

This motion should be denied. During the time that Owens-Illinois sold Kaylo, the prevailing scientific and medical literature held that asbestos-related illnesses should not occur if exposures were held below 5 million particles per cubic foot of air (5 mppcf). The fact that insulators were at risk of developing asbestos-related disease, including mesothelioma, below the 5 mppcf standard did not become known until

many years after Owens-Illinois sold its Kaylo division.

In 1946, the American Conference of Governmental Industrial Hygienists ("ACGIH") adopted the 5 mppcf standard as its threshold limit value for asbestos. The ACGIH 5 mppcf threshold limit value was considered the amount of asbestos to which a person could be exposed "without adverse effect on health." In 1947, Wisconsin adopted the 5 mppcf threshold limit value for "safe" asbestos exposure:

> Harmful dusts shall be removed from the air breathed by operators, or workmen in the vicinity, sufficiently to cause the air to be safe to breathe as specified under Order 2002.
>
> | **Material** | **Million Particles Per Cu. Ft. of Air** |
> |---|---|
> | Asbestos | 5 |

*See* Industrial Commission of Wisconsin, General Orders on Dusts, Fumes, Vapors, and Gases, effective March 18, 1932, including Order 2002 amended, effective January 22, 1941, attached as Ex. B.

In addition to establishing a threshold level for asbestos exposure, the Wisconsin General Orders on General Orders on Dusts, Fumes, Vapors and Gases, informed employers how to manage dust exposures through workplace ventilation and provision of respirators to employees. All employers in Wisconsin were required to know and follow the 5 mppcf threshold limit value. By the time that Owens-Illinois Kaylo was commercially available in 1948, the federal government and any entities that purchased or installed any Owens-Illinois Kaylo to which Oswald Suoja was allegedly exposed would have been aware that exposure to asbestos in excess of 5 mppcf could be hazardous and how to prevent exposure in excess of the threshold.

Moreover, in 1946, the Journal of Industrial Hygiene and Toxicology published a United States government study of the use of asbestos-containing insulation products (the "Fleischer-Drinker Study"). The Fleischer-Drinker Study concluded working as an insulator with asbestos-containing products was "not a dangerous occupation." Based on the medical and scientific evidence available, including the results of the Fleischer-Drinker study, during the time that it sold Kaylo, Owens-Illinois did not believe that users of Kaylo were at risk of developing asbestos-related illnesses.

## CONCLUSION

For these reasons, Owens-Illinois, Inc. requests that the Court deny in part Plaintiff's Motions *in Limine*.

Dated: November 2, 2015    Respectfully submitted,

By: /s/Brian O. Watson
Edward Casmere
Joshua D. Lee
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois 60606
(312) 258-5500
(312) 258-5600 (facsimile)
*Attorneys for Defendant
Owens-Illinois, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on November 2, 2015, these papers were filed with the Clerk of the Court for the United States District Court for the Western District of Wisconsin using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

15640-0889

CH2\17432940.2