# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

GARY SOUJA, Individually and as
Special Administrator for the Estate of
OSWALD F. SUOJA, Deceased,

        Plaintiff,

    v.                           Case No. 3:99-cv-00475-slc

OWENS-ILLINOIS, INC.,

        Defendant.

## OWENS-ILLINOIS, INC.'S
## TRIAL BRIEF

Owens-Illinois, Inc. ("Owens-Illinois") submits this trial brief pursuant to the order in non-jury cases and the pretrial conference on November 12, 2012.

## I.    Introduction

Plaintiff asserts that Oswald Suoja developed cancer in November 1996, and died a month later at age 73, because he worked with asbestos-containing products. As a member of the International Association of Heat and Frost Insulators and Asbestos Workers, Mr. Suoja spent his entire career working with asbestos-containing products from 1943 until his retirement in 1983. Among the products at issue are asbestos-containing adhesives, blankets, blocks, cements, cloths, felts, gaskets, mastics, muds, sheets, papers, and pipecovering.

The plaintiff sued Owens-Illinois, under theories of negligence and strict liability, because it made an asbestos-containing insulation product. Between 1948 and April 30,

1958, Owens-Illinois made commercially an asbestos-containing insulation product called "Kaylo." Kaylo was a pre-cast, rigid, hydrous calcium-silicate insulation used to insulate at temperatures above 600 degrees Fahrenheit. Owens-Illinois stopped making and selling Kaylo on April 30, 1958, when it sold the entire Kaylo business to the Owens Corning Fiberglas. Owens-Illinois did not make or sell Kaylo, or any other asbestos-containing insulation product, after April 1958. Owens Corning Fiberglas continued to make and sell asbestos-containing Kaylo into the 1970s. Owens-Illinois is not legally or factually responsible for Kaylo made by Owens Corning Fiberglas after April 30, 1958. Indeed, plaintiff sued and settled with Owens Corning Fiberglas in a prior state court case.

The gist of plaintiff's negligence and strict liability claim against Owens-Illinois is that (1) Owens-Illinois knew or should have known in the 1940s and 1950s that individuals like Mr. Suoja would be overexposed to asbestos by working with its product; (2) that overexposure would cause cancer; (3) Owens-Illinois failed to provide an adequate warning on its product; and (4) Owens-Illinois's conduct and its product were a substantial contributing factor in causing Mr. Suoja's disease.

Mr. Suoja's only alleged exposure to Owens-Illinois Kaylo was a few months at Badger Ordnance Works in the late 1960s—more than a decade after Owens-Illinois stopped making the product—when he was removing old insulation from steamlines that were covered with asbestos-containing insulation and weatherproofing. The evidence at trial will show that Mr. Suoja was never exposed to Owens-Illinois Kaylo at Badger Ordnance Works and that any claim he was is based on mistaken identity and

speculation, which contradicts historical documents, pictures, testimony, and the weight of the credible evidence. The evidence will further show that, given the state of the medical and scientific knowledge at the time Owens-Illinois stopped making its Kaylo product, no duty was breached and the product was not unreasonably dangerous when used in the reasonable foreseeable manner of the time. Finally, the evidence will demonstrate that neither Owens-Illinois's conduct nor its product was a "cause" of Mr. Suoja's disease.

## II.    <u>The Issues at Trial</u>

At trial, the plaintiff's case will hinge on five crucial issues. If Owens-Illinois prevails on any of these issues, it is entitled to judgment in its favor:

1.    Was Mr. Suoja exposed to asbestos from Owens-Illinois Kaylo, while repairing old steamlines at Badger Ordnance Works?

2.    If so, was that exposure sufficient to be a substantial factor in causing his disease?

3.    Based on the state of scientific and industrial hygiene knowledge in the 1950s, was Owens-Illinois negligent, or was Kaylo unreasonably dangerous, in causing that exposure and Mr. Suoja's disease?

4.    What damages, if any, can plaintiff recover from Owens-Illinois?

5.    Are plaintiff's claims barred by a two-year statute of limitations under the federal enclave doctrine?

As explained below, the law carefully defines each of these five issues and clarifies what evidence does, and does not, satisfy the burden of proof. The outcome of this trial will turn on whether the plaintiff is required to meet his burden in the same manner, and to the same extent, as any other plaintiff. Experience suggests that the

plaintiff will seek to avoid, not meet, his burden with the apparent belief that asbestos cases are different. The myth that asbestos plaintiffs are somehow entitled to special, reduced burdens of proof, procedural shortcuts, and relaxed evidentiary standards has no foundation in law or sound public policy. This trial brief shows that plaintiff cannot satisfy his burden against Owens-Illinois, without speculation or guesswork, and therefore cannot recover under theories of negligence and strict liability.

## III.   The Legal Framework for Trial

### A.   No Credible Evidence of Exposure

As a threshold issue, plaintiff must produce credible evidence that Mr. Suoja was actually exposed to asbestos from Owens-Illinois Kaylo. *Merco Distrib. Corp. v. Comm. Police Alarm Co.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (Wis. 1978). Where "the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id.* at 655; *Alexander v. Auer Steel & Heating Co.*, 2015 WI App 28, ¶ 26, 361 Wis. 2d 284, 862 N.W.2d 618 (Wis. Ct. App. 2015) (entering judgment for defendant); *Risse v. Bldg. Servs. Indus. Supply, Inc.*, 2012 WI App 97, ¶ 23, 344 Wis. 2d 124, 820 N.W.2d 156 (Wis. Ct. App. 2012) (same); *Singer v. Pneumo Abex, LLC*, 2012 WI App 27, ¶ 21, 339 Wis. 2d 490, 809 N.W.2d 900 (same); *Miller v. Am. Art Clay Co. Inc.*, 28 F. Supp. 3d 825, 828 (W.D. Wis. 2014) (same).

The plaintiff has no credible evidence that Mr. Suoja was ever exposed to asbestos from Owens-Illinois Kaylo. Mr. Suoja was not deposed in this case, and the plaintiff has not produced his prior testimony from other cases. Instead, the plaintiff

- 4 -

will offer several Kaylo invoices to Badger Ordnance Works in 1954 and deposition testimony from two coworkers, George Schlub and Larry Zimmer.[1] Mr. Schlub will testify that, in 1967 while working for L&S Insulation, he repaired old steamlines that were covered with "smooth, white, and chalky" insulation and speculate that insulation could have been Kaylo. Mr. Zimmer will testify that, in late 1958 while working for L&S Insulation, he repaired old steamlines that were covered with "smooth and white" insulation and also speculate that insulation could have been Kaylo. But Mr. Suoja's social security records will show that he first began working for L&S Insulation in the mid-1968 (and not 1958) and continued working there until 1983.

Because Owens-Illinois stopped making and selling Owens-Illinois Kaylo on April 30, 1958, there is no overlap between Mr. Schlub's and Mr. Zimmer's testimony and Owens-Illinois Kaylo at all. Any Kaylo that Mr. Schlub and Mr. Zimmer may have encountered at Badger Ordnance Works after April 30, 1958, is the responsibility of Owens Corning Fiberglas, which plaintiff sued and already recovered from. Owens Corning Fiberglas made and sold Kaylo from May 1, 1958 through the early 1970s, including multiple sales to Badger Ordnance Works.

At best, Mr. Schlub's and Mr. Zimmer's testimony presents a mere possibility that Mr. Suoja was exposed to Owens-Illinois Kaylo. But it is equally possible that Mr. Suoja was exposed to Owens Corning Fiberglas Kaylo. It is also possible that Mr. Suoja was exposed to another manufacturer whose smooth, white, and chalky insulation was

---

[1] As explained in the Rule 26(a)(3) pretrial submission (dkt. 132), Owens-Illinois objects to the use of Lawrence Zimmer's deposition.

installed at Badger Ordnance Works. As the Seventh Circuit has explained, insulators used "Kaylo" as a generic term, "much like individuals often refer to generic tissue paper by the brand name 'kleenex.'" *Harris v. Owens Corning Fiberglas Corp.*, 102 F.3d 1429, 1431 (7th Cir. 1996); *Shine v. Owens-Illinois, Inc.*, 979 F.2d 93, 97-98 (7th Cir. 1992) (plaintiff "used that term [Kaylo] generically, rather than as a brand name"). Under Wisconsin law, "'when the matter remains one of pure speculation or conjecture *or the probabilities are at best evenly balanced*, it becomes the duty of the court to direct a verdict for the defendant.'" *Alexander*, 2015 WI App 28, ¶ 26 (quoting *Zielinski v. A.P. Green Indus., Inc.*, 2003 WI App 85, ¶16, 263 Wis. 2d 294, 661 N.W.2d 491 (Wis. Ct. App. 2003).

Here, the probabilities are that Mr. Suoja was not exposed to Owens-Illinois Kaylo at all. Badger Ordnance Works was constructed in the early 1940s, before Owens-Illinois Kaylo was commercially available. As a vast government-owned ammunitions plant, Badger Ordnance Works had 200 miles of overhead steamlines across 7,354 acres of land. As shown below, the original steamlines were covered with smooth, white, and chalky insulation from Johns Manville and not Owens-Illinois:



Even years after the initial construction, the storage room at Badger Ordnance Works was still filled with smooth, white, and chalky insulation from Johns Manville and not Owens-Illinois:

  

Since the plant's construction, many insulators have repaired the steamlines at Badger Ordnance Works with a myriad of insulation products, including A.P. Green, AC&S, Baldwin-Ehret-Hill, Celotex, Eagle-Picher, Fibreboard, GAF/Ruberoid, Johns Manville, Owens Corning Fiberglas, Owens-Illinois, and other manufacturers whose insulation was smooth, white, and chalky. To infer that Mr. Suoja was ever exposed to Owens-Illinois at Badger Ordnance Works based on this evidence would contradict the factual record.

Indeed, Mr. Schlub's and Mr. Zimmer's testimony is inconsistent and self-contradictory. Mr. Schlub's and Mr. Zimmer's description of what they called "Kaylo" contains material inaccuracies that show it was not Owens-Illinois Kaylo. Their own description shows that, in fact, the "Kaylo" they replaced at Badger Ordnance Works was likely Johns-Manville 85% Magnesia (which is pictured above):

- 7 -

|  | Mr. Schlub "Kaylo" | Mr. Zimmer "Kaylo" | Johns-Manville 85% Magnesia | Owens-Illinois Kaylo |
|---|---|---|---|---|
| White | Yes | Yes | Yes | Yes |
| Smooth | Yes | Yes | Yes | Yes |
| Chalky | Yes |  | Yes | Yes |
| Water-soluble | Yes |  | Yes | **No** |
| 85% Magnesia | Yes |  | Yes | **No** |
| Originally Installed at Badger in 1940s | Yes |  | Yes | **No** |
| Installed at Badger by L&S Insulation | Yes | Yes | Yes | **No** |

Every insulator in this case, other than Mr. Schlub and Mr. Zimmer, will testify that you cannot identify the manufacturer of insulation out of its box. Every insulator, other than Mr. Schlub and Mr. Zimmer, will testify that non-Kaylo insulation was used at Badger Ordnance Works. Every insulator, other than Mr. Schlub and Mr. Zimmer, will be consistent in their recollections and consistent with the factual record.

Of the 200 miles (more than 1,056,000 linear feet) of overhead steamlines at Badger Ordnance Works, the most plaintiff's evidence will show was that only 6,223 linear feet of Owens-Illinois Kaylo may have been used there — less than 0.5% of the total. Thus, there is a 99.5% probability that the insulation being removed was something other than Owens-Illinois Kaylo. The probabilities here are not, at best, evenly balanced. *Alexander*, 2015 WI App 28, ¶ 26 (quoting *Zielinski*, 2003 WI App 85, ¶16).

At trial, the plaintiff will simply ask this Court to guess that the insulation was Owens-Illinois Kaylo and resolve the inaccuracies in Mr. Schlub's and Mr. Zimmer's testimony in his favor. Wisconsin law requires the opposite. Here, the credible evidence shows that the "Kaylo" in Mr. Schlub's and Mr. Zimmer's testimony was not Owens-Illinois Kaylo; it was more likely Johns-Manville 85% Magnesia, or possibly another manufacturer whose smooth, white, and chalky insulation was installed on the 200 miles of steamlines at Badger Ordnance Works. For these reasons, the plaintiff's evidence of exposure is speculative and it will become "the duty of the court to direct a verdict for the defendant." *Id.* at ¶ 26 (quoting *Zielinski*, 2003 WI App 85, ¶16).

## B.     No Credible Evidence of Substantial Factor Causation

Under Wisconsin law, the plaintiff bears the burden of showing that Mr. Suoja was not only exposed to Owens-Illinois Kaylo, but also that his exposure to Owens-Illinois Kaylo was a "substantial factor" in causing his disease. Wis. J.I.-Civil 1500 (causation); *Miller*, 28 F. Supp. 3d at 828 (citing *Zielinski*, 2003 WI App 85, ¶ 16, 263 Wis. 2d 294, 661 N.W.2d 491).  None of plaintiff's causation experts, however, can opine that Mr. Suoja's exposure to asbestos from Owens-Illinois Kaylo was a substantial factor in causing his disease.

The plaintiff disclosed two causation experts, Arthur Frank, M.D. (dkt. 22-1) and Arnold R. Brody, Ph.D. (dkt. 22-9). But plaintiff has withdrawn Dr. Brody and the expert report from Dr. Frank (dkt. 22-1)[2] does not mention Owens-Illinois Kaylo, let

---

[2] Expert reports "must be sufficiently complete to satisfy the criteria of the *Daubert* decision, and one of those criteria, as we have been at pains to emphasize, is

alone explain that exposure to Owens-Illinois Kaylo was a substantial factor in causing Mr. Suoja's disease. Moreover, this Court has excluded Dr. Frank's any exposure theory and any causation opinions based on this theory under *Daubert*. Opinion & Order, ECF No. 82; Def.'s Mot. Bar 1, 19, ECF No. 27.

In a nearly identical case and a nearly identical report from Dr. Frank, plaintiff's counsel tried to rename Dr. Frank's testimony as a "cumulative exposure" opinion. The Northern District of Illinois was not impressed, explaining that his "'cumulative exposure' testimony was no different than the [any exposure] testimony proffered at the *Daubert* stage." *Krik v. Owens-Illinois, Inc.*, No. 10-CV-07435, 2015 WL 5050143, at *1 (N.D. Ill. Aug. 25, 2015) (citing *Krik v. Crane Co.*, 76 F. Supp. 3d 747, 752-55 (N.D. Ill. 2014)). The court reached its conclusion after a full *Daubert* hearing and extensive *voir dire* of Dr. Frank on his opinions:

> what we have is an evidentiary ruling by, first, Judge Lee [in *Krik*, 76 F. Supp. 3d at 752-55] and then later me [Judge Shah] and then in the midst of trial.
>
> And with respect to the in-court ruling, let me just clarify, in light of the factual proffer that was made, that it's not a misapprehension on my part that the - - about the distinction between the cumulative exposure testimony and the each-and-every-exposure testimony.
>
> For testimony about cumulative exposure causing lung cancer to be useful testimony for this trial, for this jury, as to these defendants, it needs to be related to whether the exposure at the hands of these defendants caused plaintiff's lung cancer, which is what this trial is about.
>
> As was clear when Judge Lee said that it is not an acceptable approach for a causation expert to take, namely, to draw a causation opinion as to particular defendants, including hypothetical defendants in response to a

that the expert show how his conclusion is grounded in—follows from—an expert study of the problem." *Smith v. Sofamor, S.N.C.*, 21 F. Supp. 2d 918, 922 (W.D. Wis. 1998).

hypothetical question, for that causation expert to take an approach based on cumulative exposure that's informed by an each-and-every-exposure opinion, it remains clear to me in light of the factual proffer that Dr. Frank's cumulative exposure testimony is based on the each-and-every-exposure theory above - - exposure meaning above background amounts and that that testimony is based on each and every exposure being a substantial factor.

And just as Dr. Frank, to his credit, cannot disaggregate exposures as a matter of science, cumulative exposure opinion cannot be disaggregated from the each-and-every-exposure opinion as a matter of evidence under Rule 702, and now that I've heard the proffer, under Rule 403.

The risk that that answer to the hypothetical relying on the cumulative exposure opinion would be considered as evidence of a particular causation as to these defendants would, in fact, in my view, be unfair and confusing given the weakness of the probative value of the opinion when it's informed, as it is, by the each-and-every-exposure principle.

And the goal under 702 is to be a gatekeeper. And once the parameters are set by that rule, Rule 403 still has a role to play in precluding testimony that would be confusing or unfairly prejudicial in a way that outweighs the probative value.

Dkt. 80, Trial Tr. Vol 2, 353:22-356:24, *Krik v. Crane Co.*, No. 10 C 7435 (N.D. Ill. Apr. 21, 2015); *see also id.* at 258:23-280:19 (voir dire).  The same is true here.

It is well-settled Wisconsin and Seventh Circuit law that plaintiff must offer expert testimony to prove causation. *Smith v. Sofamor, S.N.C.*, 21 F. Supp. 2d 918, 922 (W.D. Wis. 1998) (citing *Ollman v. Wisconsin Health Care Liab. Ins. Plan*, 178 Wis. 2d 648, 667 (Wis. Ct. App. 1993)); *C.W. ex rel. Wood v. Textron, Inc.*, --- F.3d ----, 2015 WL 5023926, at *9 (7th Cir. Aug. 26, 2015); *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010); *Korte v. ExxonMobil Coal USA, Inc.*, 164 Fed. App'x 553, 557-58 (7th Cir. 2006); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995). As this court explained, "'the lack of expert testimony on the question of causation results in an insufficiency of proof where

the issue involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors and the jury could only speculate as to what inference to draw.'" *Smith, S.N.C.*, 21 F. Supp. 2d at 921 (quoting *Ollman*, 178 Wis. 2d at 667); *Cali v. Danek Med. Inc.*, 24 F. Supp. 2d 941, 950 (W.D. Wis. 1998) (same); *Solar v. Kawasaki Motor Corps, USA*, 221 F. Supp. 2d 967, 971 (E.D. Wis. 2002) (same); *see also Kujawski v. Arbor View Health Care Ctr.*, 407 N.W.2d 249, 252-53 (Wis. 1987).

Here, without any expert testimony drawing the specific causation between Mr. Suoja's disease and his alleged exposure to asbestos from Owens-Illinois Kaylo, the plaintiff's claims fail as a matter of law. That testimony is essential in this case because Mr. Suoja was exposed to numerous asbestos-containing products for more than forty years, including adhesives, blankets, blocks, cements, cloths, felts, gaskets, mastics, muds, sheets, papers, and pipecovering. Mr. Suoja spent his entire working life with the asbestos-containing products from 1943 until retirement in 1983. But Mr. Suoja's only claimed exposure to Owens-Illinois Kaylo was a few short months at Badger Ordnance Works.

At trial, the plaintiff will ask this Court to guess whether that few-months exposure, during a forty-year career, was a substantial factor in causing Mr. Suoja's disease. That question is far beyond the ken of an average person, and invites speculation and guesswork. Indeed, if plaintiff's experts could not write a report that Owens-Illinois Kaylo was a substantial factor in causing Mr. Suoja's disease, how can a factfinder make that determination? *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 299 (7th Cir. 1990) ("Lacking scientific knowledge that an expert might have imparted to it but did

not, no rational jury could bring in a verdict for the plaintiff."). Owens-Illinois should not, and cannot, be subjected to open-ended liability based on speculation or guesswork concerning substantial-factor causation. For this reason, the plaintiff's claims will fail as a matter of law.

### C.   No Credible Evidence that Owens-Illinois Was Negligent, or Kaylo Was Unreasonably Dangerous, In Causing the Alleged Exposure and Injury

As noted above, plaintiff asserts liability against Owens-Illinois based on products liability. Wisconsin courts have created three categories of product liability claims: (1) manufacturing defects, (2) design defects, and (3) defects based on a failure to adequately warn. *Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 2009 WI 78, ¶29, 319 Wis. 2d 91, 111, 768 N.W.2d 674, 683 (Wis. 2009). The plaintiff's complaint alleges a design defect claim and a failure to warn claim. Dkt. 2, Pl.'s Compl. ¶¶ 16, 22. A design defect claim is where the "design itself is the cause of the unreasonable danger." A failure to warn claim is where "an intended use of the product is dangerous, but the manufacturer did not provide sufficient warning or instruction." *Godoy*, 2009 WI 78, ¶29, 319 Wis. 2d at 111, 768 N.W.2d at 683.

### 1.   No Credible Evidence for Design Defect

First, the plaintiff cannot prove that Owens-Illinois was negligent, or Kaylo was unreasonably dangerous, for any design defect. He has no expert testimony, or any other evidence, showing that Owens-Illinois Kaylo was defectively designed. Without evidence of a "non-asbestos substitute" that was suitable for use in Owens-Illinois Kaylo during the 1950s, the plaintiff's design defect claim boils down to an argument

that Owens-Illinois should be held liable for including "asbestos" in an "asbestos product." Dkt. 2, Pl.'s Compl. ¶¶ 16, 23.

Wisconsin law is clear that a "claim for defective design cannot be maintained here where the presence of [a substance] is the alleged defect in design, and its very presence is a characteristic of the product itself." *Godoy*, 2009 WI 78, ¶2, 319 Wis. 2d at 100, 768 N.W.2d at 678. Therefore, the plaintiff's design defect claim fails as a matter of law. *Id.* at ¶ 23, 319 Wis. 2d at 115, 768 N.W.2d at 685-86.

### 2.     No Credible Evidence for Failure to Warn

Second, the plaintiff cannot show that Owens-Illinois was negligent, or Kaylo was unreasonably dangerous, for any failure to warn. The plaintiff has never specified what a warning label on Kaylo should have said or even tried to establish that Mr. Suoja's employers did not already have that information. No proof whatsoever will be offered by the plaintiff to support his claim that the absence of a warning on a Kaylo box (which Mr. Suoja never saw) caused his asbestos exposure at Badger Ordnance Works.

Whether Owens-Illinois even owed any duty to warn is a question for the Court to decide and an essential element of the plaintiff's claim. *See Mohr v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 5, ¶ 32 n.10, 269 Wis. 2d 302, 329, 674 N.W.2d 576, 589 (Wis. Ct. App. 2004); *Tanner v. Shoupe*, 228 Wis. 2d 357, 365, n.3, 596 N.W.2d 805, 811 n.3 (Wis. Ct. App. 2004). During the entire time Owens-Illinois made Kaylo in the 1940s and 1950s, it was understood that asbestos-related diseases would not occur in people exposed to asbestos in concentrations below 5 million particles per cubic foot of air (5

mppcf). That 5 mppcf standard was based upon the best medical and scientific data at the time, and was adopted by the American Conference of Governmental Industrial Hygienists, the Walsh-Healey Public Contracts Act, the State of Wisconsin Industrial Commission, and many other worker safety organizations.

Owens-Illinois, the State of Wisconsin, the Federal government, and everyone else paying attention to worker safety, believed that workers could be exposed day after day, throughout a working career, at these levels without injury. Because the potential hazards to people like Mr. Suoja were not known in the 1940s and 1950s, Owens-Illinois could not have a legal duty to warn. Wis. JI-Civil 3242 (negligence); Wis. JI-Civil 3262 (strict liability); *Mohr*, 2004 WI App 5, ¶ 32 n.10, 269 Wis. 2d at 329, 674 N.W.2d at 589 (strict liability; manufacturer only has duty to warn of dangers has reason to know of); *Strasser v Transtech Mobile Fleet Service, Inc.*, 2000 WI 87, ¶58, 236 Wis. 2d 435, 613 N.W. 142 (Wis. Ct. App. 2000) (negligence; same).

Moreover, Wisconsin law has adopted a "sophisticated user" doctrine so that Owens-Illinois had no duty to warn purchasers and employers about known potential hazards of asbestos. *Haase v. Badger Mining Corp.*, 266 Wis.2d 970, 983-84 (Wis. Ct. App. 2003); *Mohr*, 2004 WI App 5, ¶ 15, 269 Wis. 2d at 318, 674 N.W.2d at 584. Wisconsin courts have outlined two major policy reasons for the sophisticated user doctrine:

> First, it places the duty to warn on the party arguably in the best position to ensure workplace safety, the purchaser-employer. Second, the burden falls upon the party in the best position to know of the product's potential uses-thereby enabling that party to communicate safety information to the ultimate user based upon the specific use to which the product will be put.

- 15 -

*Haase*, 669 N.W.2d at 743.

Under this doctrine, a manufacturer has no duty to warn the user of a potential hazard that is known to his employer. *Id.* at 983-84. Thus, if Mr. Suoja's employers already knew that asbestos dust should be kept below 5 mppcf, Owens-Illinois had no duty to warn at all. *Id.*; *Strasser*, 236 Wis. 2d at 459-60; *see also* Wis. JI-Civil 3242 (negligence); Wis. JI-Civil 3262 (strict liability). There is no question that Mr. Suoja's employers knew that asbestos could be hazardous at levels above 5 mppcf and knew how to control dust to prevent exposures above that threshold. It was the law.

By 1947, the Wisconsin Industrial Commission informed all Wisconsin employers that exposures to asbestos in concentrations above 5 mppcf could be hazardous to workers. The Commission's safety orders required employers to take measures, including installing worksite ventilation and providing respirators, to prevent exposures in excess of 5 mppcf. Later, in 1951, the United States informed all government contractors under the Walsh-Healey Public Contracts Act that asbestos exposures above 5 mppcf could be hazardous, and required contractors to control exposure levels. Because Mr. Suoja's employers already knew these things at Badger Ordnance Works and were legally required to follow them, Owens-Illinois did not have a duty to provide a warning. *Haase*, 266 Wis. 2d at 983-84; *Strasser*, 236 Wis. 2d at 459-60; *see also* Wis. JI-Civil 3242 (negligence); Wis. JI-Civil 3262 (strict liability).

As a final issue, Owens-Illinois's alleged failure to warn did not cause Mr. Suoja's disease. The plaintiff has no evidence to prove warnings causation, i.e., had Owens-Illinois placed a warning on Kaylo, Mr. Suoja would not have been exposed to

asbestos at Badger Ordnance Works. *Schreiner v. Wieser Concrete Prods., Inc.*, 294 Wis. 2d 832, 838 (Wis. 2006); *Kurer v. Parke, Davis & Co.*, 272 Wis.2d 390, 409 (Wis. Ct. App. 2004) ("Absent proof that a more complete or explicit warning would have prevented [plaintiff's] use of [the product], she cannot establish that [defendant's] alleged failure to warn was the proximate cause of her injuries.").

There is no evidence that Mr. Suoja ever read a box of Owens-Illinois Kaylo. There is no witness in this case who ever saw a box of Owens-Illinois Kaylo. No proof will be offered by the plaintiff to support his claim that it was the lack of a warning on a Kaylo box (which Mr. Suoja did not ever see) that caused his asbestos exposure at Badger Ordnance Works. Further, the plaintiff has no evidence that it would have been economically or technically feasible for Owens-Illinois to warn Mr. Suoja, who allegedly worked with Kaylo decades after its initial sale and decades after its installation. Owens-Illinois did not make or sell Kaylo, and left the insulation business, after April 30, 1958.

The plaintiff also admits that Mr. Suoja continued to be exposed to asbestos — and that such exposures caused him to develop cancer — into the 1980s, well after OSHA widely-publicized the health hazards associated with excessive asbestos exposures and well after companies put warnings on their products about the potential hazards of asbestos exposure. If Mr. Suoja's employers continued to allow excessive asbestos exposures, Owens-Illinois's failure to put a warning label on its box was not the cause of his exposures. For these reasons, the plaintiff cannot prove with credible

evidence that Owens-Illinois was negligent or that Kaylo was unreasonably dangerous, in causing Mr. Suoja's exposure and disease.

### D.    No Credible Evidence of Damages

To be sure, the plaintiff cannot recover any damages in this case from Owens-Illinois. The plaintiff's complaint appears to request damages under both the Wisconsin survival statute to recover for pre-death pain and suffering of Mr. Suoja, Wis. Stat. § 895.01, and the Wisconsin wrongful death statutes to recover for post-death loss of society and companionship of the plaintiff individually, Wis. Stat. §§ 895.03 and 895.04. Pl.'s Compl. 1, Dkt. 2.[3]

Contrary to plaintiff's allegations, he is not the special administrator of the Estate. Nor is he entitled to individual damages. The evidence will show that: in 2002, plaintiff was appointed special administrator of Mr. Suoja's estate to pursue this case; in 2006, the Wisconsin probate court administering the estate asked about the status of this case; and in response to the Wisconsin court's inquiry, he declared that any possible recovery had been received and disbursed, he closed the estate, and he was discharged as special administrator. In doing so, the plaintiff represented intentionally and voluntarily that there were no remaining claims for Mr. Suoja's death.

Those admissions are binding. The plaintiff made a formal and final concession to the Wisconsin probate court. He declared under oath that any possible recovery had

---

[3] The plaintiff's loss of consortium claim is "appropriately construed as part of [a] wrongful death claim and not as a separate cause of action." *Jaeger v. Raymark Indus., Inc.*, 610 F. Supp. 784, 788 (E.D. Wis. 1985); *see also Dziadosz v. Zirneski*, 501 N.W.2d 828, 830 (Wis. Ct. App. 1993) (citing Wis. Stat. § 895.04(2)).

been received and disbursed. He closed the estate. He was discharged as special administrator. In fact, he testified in his deposition that there were no remaining claims to be pursued for Mr. Suoja's death. Because the plaintiff, a lawyer himself, and his lawyers represented to the Wisconsin probate court that there was nothing left to recover — and he confirmed that admission here — he cannot get any damages in this case from Owens-Illinois.

Moreover, even if plaintiff could recover (which he can't), Owens-Illinois is responsible only for its fair share of the total damages and the Court will allocate fault among all responsible parties and nonparties. *Conner v. West Shore Equip. of Milwaukee, Inc.*, 68 Wis. 2d 42, 45, 227 N.W.2d 660, 662 (Wis. 1975); *Kasun v. Owens-Illinois, Inc.*, 2001 WI App 224, ¶ 33, 247 Wis. 2d 989 (Wis. Ct. App. 2001); *Bushmaker v. A.W. Chesterton Co.*, No. 09-CV-726-SLC, 2013 WL 11079371, at *13 (W.D. Wis. Mar. 1, 2013). Wisconsin law provides for modified several liability where "all whose negligence may have contributed to the arising of the cause of action" should be included on the verdict form to allow the necessary allocation of any liability. *Conner*, 68 Wis. 2d at 45, 227 N.W.2d at 662; *Kasun*, 2001 WI App 224, at ¶ 33.

The law in Wisconsin is exceptionally clear: failure to include on a verdict form every person or entity that may have been partially responsible for the claimed injury "would be prejudicial to the remaining non-settling defendant," and "it would [be] error to exclude them." *Conner*, 68 Wis. 2d at 45, 227 N.W.2d at 662. This rule applies to every person or entity that may have contributed to causation of the injury, even if the person or entity is not a party, and indeed even if it cannot be sued: "At the requested-

special-verdict stage of a lawsuit, it is immaterial that the entity is not a party or is immune from further liability." *Id.* The "only . . . question" that "must be affirmatively answered by the trial judge" to include the person or entity on the verdict form is: "Is there evidence of conduct which, if believed by the jury, would constitute negligence on the part of the person or other legal entity inquired about." *Id.* If this evidence exists, it is "necessary" to include the person or entity on the verdict form, and reversible error not to do so. *Id.* at 45-46, 227 N.W.2d at 662-63.

The reasons for this rule are also exceptionally clear. It is required both to effectuate Wisconsin's comparative negligence law and to effectuate the terms of *Pierringer* releases of settled defendants. As the Court of Appeals has noted, "Under Wisconsin comparative negligence law, it is required that the degree of negligence of both party and non-party tort-feasors be determined in a negligence action. The basis for this apportionment is the equitable precept that a negligent party only pay for its fair share of the total negligence." *Unigard Ins. co. v. Insurance Co. of N. Am.*, 184 Wis. 2d 78, 84, 516 N.W.2d 762, 765 (Wis. App. Ct. 1994). *See also* Wis. Stat. 895.045 (under comparative negligence principles, liability of each person is limited to percentage of causal negligence if percentage is less than 51%). The Wisconsin Supreme Court has repeatedly held that this apportionment cannot be done unless the jury is asked to consider and allocate all the possible causal negligence, of parties and non-parties alike. *See, e.g.*, *Connar*, 68 Wis. 2d at 45, 227 N.W.2d at 662.

Additionally, a defendant at verdict in Wisconsin is entitled to reduce the verdict by the percentage of responsibility of settled defendants. *Pierringer v. Hoger*, 21 Wis. 2d

182, 191-92, 124 N.W.2d 106, 111 (Wis. 1963). As the Court expressly held, "such percentage of negligence can only be determined by a proper allocation of all the causal negligence" by the jury, and "[t]he determination of this issue between the plaintiff and the nonsettling defendant does not require the settling defendants to remain parties because the allocation, if any, of the causal negligence to the settling tort-feasors is merely part of the mechanics by which the percentage of casual negligence of the nonsettling tort-feasor is determined." *Id.*

The plaintiff will ask this Court to forsake Wisconsin's modified several liability and to adopt pure joint and several liability. Contrary to the plaintiff's repeated assertions in this Court and others, *Fuchsgruber v. Custom Accessories, Inc.*, 244 Wis. 2d 758, 628 N.W.2d 833 (Wis. 2001), did not upend Wisconsin tort law. As this Court and others have explained in rejecting the plaintiff's argument, "there are several possible products that could have contributed to plaintiff's injuries" and the "comparative fault in this case appropriately compares plaintiff's conduct to the alleged defectiveness of each of those products, as well as to the alleged negligence of defendant and possibly other companies." *Bushmaker*, 2013 WL 11079371, at *13; *accord Kasun*, 2001 WI App 224, at ¶ 33. Thus, Wisconsin law provides for modified several liability, under which Owens-Illinois is responsible only for its fair share of the total damages.

### E.    Plaintiff's Claims Are Time Barred

Ultimately, the plaintiff cannot recover because his claims are barred by a two-year statute of limitations under the federal enclave doctrine and Wis. Stat. § 330.21(3) (1942). Under this doctrine, the Constitution only allows Congress to regulate

properties acquired from the States. Thus, courts apply the state laws in effect at the time of the acquisition. *See* U.S. Const. art. I, § 8, cl. 17; *James Stewart & Co. v. Sadrakul*, 309 U.S. 94, 99 (1940); *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012); *Koren v. Martin Marietta Servs., Inc.*, 997 F. Supp. 196, 202 (D.P.R. 1998) ("Where this doctrine applies, the state law in effect at the time of transfer becomes part of the federal common law"). This includes the statute of limitations. *Adams v. Alliant Techsystems, Inc.*, 201 F. Supp. 2d 700, 709 (W.D. Va. 2002); *Adams v. Alliant Techsystems Inc.*, 218 F. Supp. 2d 792, 800 (W.D. Va. 2002).

Here, the plaintiff's claims against Owens-Illinois arise from Badger Ordnance Works, a federal enclave established by condemnation in 1942.[4] "It is well established that land which the Government acquires by condemnation has been 'purchased' within the meaning of Clause 17." *United States v. State Tax Comm'n of Miss.*, 412 U.S. 363, 373 (1973). Further, the Wisconsin legislature consented "to the acquisitions heretofore effected and hereafter to be effected by the United States, by . . . condemnation proceedings." Wis. Stat. § 1.02 (1935).

When the United States acquired the land for Badger Ordnance Works in 1942, Wisconsin had a two-year statute of limitations. Wis. Stat. § 330.21(3) (1942). Because the two-year statute of limitations applies under the federal enclave doctrine and

_____

[4] On March 1, 1942, the United States acquired the land by condemnation proceedings. *See* Order of Immediate Possession at 2, *United States v. 10,565 Acres of Land*, Case No. 307 (W.D. Wis. Jan. 16, 1942), attached dkt. 131-3; National Park Service, Department of the Interior, *Badger Army Ammunition Plant: Written Historical and Descriptive Data*, at 15 (1982), attached dkt. 131-4.

because this lawsuit was filed more than two years after Mr. Suoja died on December 29, 1996, the plaintiff's claims are time barred.

## IV.   Conclusion

Owens-Illinois will doubtlessly move for judgment at the close of plaintiff's case and, if necessary, the close of the evidence. The arguments and authorities cited in this trial brief will likely be among the bases for those motions. Owens-Illinois respectfully submits this trial brief for that purpose as well as to provide authorities that may be helpful to the Court during the trial.

There will be no evidence in this case that Mr. Suoja was ever exposed to Owens-Illinois Kaylo, and certainly no evidence that any such alleged exposure was a "substantial factor" in the development of his cancer. The evidence in this case will further establish that Owens-Illinois was not negligent, that Owens-Illinois Kaylo was not unreasonably dangerous, and that Owens-Illinois's failure to place a manufacturer's warning label on boxes of Kaylo was not a proximate cause of Mr. Suoja's disease. Even if it was, the plaintiff still cannot recover because he admits there are no damages and his claims were barred by a two-year statute of limitations under the federal enclave doctrine.

Dated: November 20, 2015                  Respectfully submitted,

                                          By: /s/Brian O. Watson
                                              Edward Casmere
                                              Brian O. Watson
                                              Schiff Hardin LLP
                                              233 S. Wacker Dr. Suite 6600
                                              Chicago, Illinois  60606
                                              (312) 258-5500
                                              (312) 258-5600 (facsimile)
                                              *Attorneys for Defendant*
                                              *Owens-Illinois, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 21, 2015, these papers were filed with the Clerk of the Court for the United States District Court for the Western District of Wisconsin using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

15640-0889

CH2\17476834.7