IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GARY SUOJA, Individually and as Special Administrator of the Estate of OSWALD SUOJA, Deceased,<br>        Plaintiff,<br>v.<br><br>Owens-Illinois, Inc.,<br>        Defendant. | Case No. 99-cv-475<br>Magistrate Judge Crocker |

**Plaintiff's Trial Brief**

Plaintiff submits this trial brief in advance of trial pursuant to the pretrial conference on November 12, 2015. Plaintiff will submit additional briefing during the post-trial stage as directed by this Court.

Claims Plead

The estate of Oswald Suoja ("Ozzie") and the children of Ozzie Suoja seek to hold Owens-Illinois, Inc. ("OI") liable for damages resulting from Ozzie's exposure to Kaylo, OI's asbestos containing pipe covering half round product. Plaintiff will prove that OI's conduct and/or failure to act was a substantial factor in Ozzie's development of mesothelioma and death.

Plaintiff will show that OI is responsible for damages under strict product liability because OI's Kaylo was unreasonably dangerous in nature, and in particular:

    a. Was not accompanied by an adequate warning relating to the health hazards of asbestos products;

    b. Was not accompanied by instructions concerning precautionary measures to be taken to minimize the risk of health hazards associated with asbestos products;

1

c. Was not subjected to adequate investigation regarding its hazards to health; and

d. Was improperly designed with, or specified for, the use of asbestos as opposed to nonasbestos substitutes.

Wisconsin follows the Restatement of Torts, Second, 402A. for product-liability cases. *Dippel v. Sciano*, 37 Wis. 2d 443, 459 (Wis. 1967). Focus is on whether the product is dangerous and the manufacturers knowledge plays a minimal role in liability. *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109 (Wis. 2001).

The strict products liability claims are governed by joint & several liability. In *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81 (Wis. 2001), the Wisconsin Supreme Court rejected argument that the amendment to the WI comparative negligence statute applied to abolish joint and several liability in strict products liability cases. In *Fuchsgruber*, the Court held it is "axiomatic that a statute does not abrogate a rule of common law [joint and several liability] unless the abrogation is clearly expressed and leaves no doubt of the legislature's intent." *Id.* at ¶ 25. The Court stated that the "comparison in strict product liability actions is not a comparison of one party's conduct against another, but, rather, a comparison of the extent to which the plaintiff's injuries were attributable to his own contributory negligence as against the product's defective condition." *Id*. at ¶ 24.

Plaintiff's negligence claims are similar in proof to the evidence of the strict liability claims. Under Wisconsin law tortfeasors are liable for both foreseeable and unforeseeable harms resulting from tortious conduct. *A. E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484 (Wis. 1974).

Exposure

Badger Ordinance, located in Baraboo, WI, is the jobsite where Ozzie was exposed to OI Kaylo.  There is minimal evidence is available about Ozzie's work at other sites or potential exposure to other asbestos products.  Badger Ordnance was formerly a munitions plant with hundreds or thousands of miles of piping. OI admits "Owens-Illinois Glass Company began limited pilot plant operations involving the production of asbestos containing products in 1943.  It began the manufacture of commercial quantities of 'Kaylo' asbestos-containing products in about 1948 and continued such manufacture until about April 30, 1958."  OI Kaylo pipe covering was sold in three foot pieces which were called half rounds because they were curved and shaped to fit half way around a pipe.

Given the large size of the Badger facility, the relevant evidence should be confined to work Ozzie did at Badger.  Plaintiff has several coworkers who testified about Ozzie's work at Badger.  Due to his rapid demise, after diagnosis of the mesothelioma, Ozzie was unable to provide testimony.

Coworker George Schlub worked with Ozzie for 5-6 months removing Kaylo that had been installed before 1958.  Schlub was able to recognize the brand Ozzie was removing was Kaylo based on certain differences in color and texture of other brands of pipe insulation.  Schlub was also aware Kaylo was used at Badger before 1958 from his experience and his coworkers.

Coworker Lawrence Zimmer worked with Ozzie at Badger in late 1958 when Ozzie was installing new Kaylo and removing old Kaylo that was installed more than a year before.

Plaintiff's coworker evidence about Kaylo is the only evidence of what products were actually used by or in the vicinity of Ozzie Suoja when he worked at Badger.  The eyewitness

3

evidence should be weighted heavily when considering whether the Plaintiff or OI presented the greater weight of the credible evidence in this case.

Ozzie's work removing and installing Kaylo at Badger was always dusty. No protective equipment was worn or required until the 1970s. The evidence does not establish Ozzie, his employers, and his fellow insulation union members were aware of the dangers of asbestos products or how to protect themselves from such dangers during the time period Ozzie worked at Badger. The breathing protection, if used, was for general dust and not specific to asbestos.

Plaintiff will provide industrial hygiene testimony about the severity exposures from pipe covering work through Stephen Kenoyer, an expert in industrial hygiene and safety.

The evidence which OI seeks to admit on exposures is not specific to Badger and/or Ozzie's work and is subject to relevance objections. Testimony or evidence of other products at Badger is not relevant or has minimal weight unless tied to the work by Ozzie. There is no evidence Ozzie Suoja personally used or was exposed to any product brand of pipe covering besides Kaylo. OI did not make the muds or cements used with the pipe covering. References to brands of cements and muds have no bearing on whether Kaylo was the brand of pipe covering used. OI may suggest the absence of written documents showing large quantities of Kaylo at Badger can be considered in evaluating evidence. That position is incorrect under the Federal Rules of Evidence since OI has lost most of its sales records and cannot show the records of the employers of Ozzie Suoja or Badger Ordnance are intact. *See* Fed. R. Evid. 803(7) and Plaintiff's MIL # 11. (ECF Doc # 117.)

OI will contend the guideline of 5 million particles per cubic foot ("5mppcf"), adopted by industry in the 1940s established a safe level for asbestos exposure. The 5mppcf guideline was also incorporated in government regulations as a maximum limit. The guideline is not relevant

for several reasons. First, it was not protective of cancer. Second, the 5 mppcf level was exceeded during the normal use of Kaylo according to data in scientific literature. A study issued by OI's insurer confirmed the excessive levels from cutting and sawing Kaylo.

Medical

Ozzie was diagnosed with peritoneal mesothelioma on November 11, 1996. (Peritoneal refers to the organs in the abominable cavity - the liver, intestines and others - which were all covered with the tumor) Ozzie did not drink or smoke during his lifetime. There were no treatment options available to fight the cancer. Ozzie died on December 29, 1996. His death certificate lists cause of death as Mesothelioma and asbestos exposure

Plaintiff will provide expert testimony and testimony from a treating physician that asbestos exposure was the cause of mesothelioma and death. The death certificate which is presumptively correct under Wisconsin law, confirms this.

OI Conduct Knowledge of Asbestos Dangers

In the 1940s, OI began development of Kaylo pipe covering as a line of business. Sales of Kaylo began in 1943 on a pilot basis (commercially in 1948) and continued until OI sold the manufacturing business to Owens- Corning Fiberglas on April 30, 1958. The inventory of raw asbestos fibers and unshipped Kaylo from the sale was used until it ran out and OI is responsible for the inventory.

During the product development stage, OI's industrial hygienist and medical director were advised the Kaylo was hazardous and caused death in animal research studies which OI paid a renowned laboratory to conduct.

OI or OI personnel were members of certain trade or professional organizations which advised members or provided literature that asbestos was dangerous beginning in the 1920's or 1930's.

No dispute exists that Kaylo sold by OI never contained warnings or safety instructions. No dispute exists that OI never did testing or investigation of the health hazards in the field by measuring levels of exposure or conducting tests of insulators using OI's product. Instead, OI falsely advertised Kaylo as "non-toxic."

Under Wisconsin law, a deceased person is presumed not negligent. WIS JI-CIVIL 353. The presumption should be followed. The evidence tendered by OI on contributory negligence is not specific to any practices of Ozzie Suoja or Ozzie's knowledge and is subject to relevance objections. If the evidence is considered by this Court, other testimony shows that insulators and their employers did not know the dangers of asbestos until the 1970s. Ozzie's employer in the 1960s did not even recommend masks be worn. The early information about asbestos hazards, if known to an insulator, was understood to relate to smoking and asbestos and Ozzie was a nonsmoker.

Damages

The damages to the estate include medical bills and Ozzie's pain & suffering. Ozzie was active with his family, an organization for the blind, made crafts, and engaged in other activities until his diagnosis of mesothelioma. He was a nonsmoker and nondrinker. Ozzie was a person who always wanted to help others. The normal life expectancy at his age of diagnosis (74 years old) is 11.6 years. His suffering from exposure to asbestos began with mental anguish and apprehension more than a decade before the mesothelioma diagnosis. The growth of the tumor

sapped his energy and created substantial pain before and after diagnosis. Mesothelioma is an incurable condition and there was no treatment after his diagnosis. Believing that he had mesothelioma, Ozzie did not seek medical attention until the pain and bowel symptoms became overwhelming. Medical bills which are available from the short period between diagnosis and death are about $17,000. Plaintiff will ask the court to award $1.6 million dollars to the estate.

Ozzie's three surviving adult children are Gary, Sue, and Kimberly. They each had a close relationship with their father and experienced the loss of society and companionship as a result of his demise. Gary and Kimberly will testify in person. Sue is unable to testify due to her health. Plaintiff will ask the court to award the statutory maximum of $350,000 for the wrongful death damages.

Dispositive motion deadline

OI has made statute of limitations claims which were not raised by the earlier dispositive motion deadline. OI has also challenged expert testimony under *Daubert* and MIL grounds which had earlier deadlines. The contentions are waived by the untimely argument.

Dated: November 23, 2015

 /s/ Robert G. McCoy
Attorney for Plaintiff

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
bmccoy@cvlo.com

**Certificate of Service**

I hereby certify that on November 23, 2015, I caused the forgoing to be electronically filed with the United States District Court for the Western District of Wisconsin using the CM/ECF system which will automatically send all necessary notifications of this filing to CM/ECF participants in this case.

Dated: November 23, 2015

  /s/ Robert G. McCoy
Attorney for Plaintiff

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
bmccoy@cvlo.com