UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

GARY SUOJA, Individually and as Special
Administrator of the estate of Oswald
Suoja, deceased,

      Plaintiff,

-vs-                           Case No. 99-CV-475-BBC

OWENS-ILLINOIS, INC.,        Madison, Wisconsin
                            December 2, 2015
      Defendant.         9:10 a.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF THIRD DAY OF COURT TRIAL
MORNING SESSION
HELD BEFORE THE HONORABLE STEPHEN L. CROCKER,


APPEARANCES:

For the Plaintiff:
                Cascino Vaughan Law Offices, Ltd.
                BY:  ROBERT MCCOY
                    DANIEL HAUSMAN
                220 South Ashland Avenue
                Chicago, Illinois  60607

For the Defendant:
                Schiff Hardin
                BY:  BRIAN WATSON
                    EDWARD CASMERE
                233 South Wacker Drive, Ste. 6600
                Chicago, Illinois  60606

Also appearing:  Michael Barron - paralegal

Lynette Swenson   RMR, CRR, CBC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 520
Madison, Wisconsin  53703
608-255-3821

1          (Proceedings called to order.)

2              THE CLERK:  Case Number 99-CV-475-SLC.  *Deloris*

3  *Agnes Suoja v. Owens-Illinois*, *Inc*. is called for a

4  third day court trial.  May we have the appearances,

5  please.

6              MR. MCCOY:  Robert McCoy and Dan Hausman for

7  the plaintiffs.  Gary Suoja is with us for the moment,

8  Judge.

9              THE COURT:  All right.  Well, good morning to

10  all of you.  Mr. Suoja, good morning.

11              MR. CASMERE:  Good morning, Your Honor.  Edward

12  Casmere, Brian Watson, and Michael Barron for

13  Owens-Illinois.

14              THE COURT:  All right.  Good morning to you as

15  well.  Welcome back everyone.  Well, I assume that

16  everything worked out fine last night.

17              MR. CASMERE:  This morning.  3 a.m.

18              THE COURT:  This morning.  Okay.  All nighters.

19  That's what you guys do; right?  So who wants to start?

20              MR. MCCOY:  I gave Mr. Casmere the honors on

21  starting.

22              MR. CASMERE:  Here's where we are, Your Honor:

23  We have a list of the plaintiff's exhibits that we agree

24  come in as substantive evidence and we have a list from

25  the defendant's exhibit list that we agree come in as

1    substantive evidence.

2        We have numbers for each side of exhibits that we

3    object to coming in as substantive evidence.  One area

4    we are -- need a little clarification on is what we're

5    calling the 803.18 evidence, which were the articles

6    that would come in and that our understanding is if the

7    parties in their briefing want to cite to a particular

8    portion in one of those documents that would have been

9    used as 803.18 with a witness, that we are to put that

10   in the brief, the actual language, but that the exhibit

11   will be part of the record in case the Court needs to

12   refer to it.  But it's the 803.18 column.  It isn't

13   substantive evidence.

14       THE COURT:  Your inference about what the Court

15   would prefer or perhaps your guess is correct, that that

16   would be the best way to do it.

17       MR. CASMERE:  We will need a couple more

18   minutes to create that column of here's the 803.18

19   because the plaintiffs just said they wanted to move

20   that into evidence and I objected, saying it shouldn't

21   come in as substantive evidence.

22       THE COURT:  Okay.

23       MR. CASMERE:  So we need to transfer that

24   information from one column to the other.  I'm trying to

25   avoid as much of reading that you have to do on ruling

1    on objections.  So if we move those over, I don't think

2    you have to rule on those objections at that point.

3         THE COURT:  Then that's what we'll do.  That's

4    fair.  I'll give you guys time to do that.  Mr. McCoy,

5    you wanted to be heard?

6         MR. MCCOY:  Yeah.  I'm not necessarily

7    disagreeing here, I'm just -- this is a point we wanted

8    to clarify when you needed some clarification.  So when

9    the term -- the term substantive is probably what's

10   bothering me because a lot of this 803.18 type of

11   evidence is about notice or reasons why people did

12   something that's not -- that might be hearsay but for

13   the concept of knowing things or state of the art comes

14   in as actual, I think, substantive evidence of what

15   people knew or what they base their conduct on, whether

16   it's being offered for the truth of the matter or not.

17       So I would just comment on that term substantive.

18   The notion of 803.18 doesn't use that term substantive

19   either.  It basically uses whatever is published can be

20   considered for whatever purposes that that -- and there

21   wasn't any limiting instruction to the jury like we

22   often have on these notice state of the art type of

23   documents in this case.  So that's kind of -- obviously

24   we didn't need it because Your Honor is here to make

25   that call yourself.  As I understood it though, that was

1   essentially how a lot of these things were operating was

2   they're not proving that this is necessarily true, but

3   they're proving this is what people were basing conduct

4   and actions on.

5          THE COURT:  Okay.

6          MR. MCCOY:  But I leave it up to Your Honor

7   because it's really your -- I think it's your judgment

8   as to whether that's truly 803.18 or not.  We can point

9   this out and I don't have any problem doing that, and I

10  think that's a good thing to do that Ed suggested.  But

11  whether you consider those to be substantive for

12  everything or whether they're only for some limited

13  purpose, the way I see that, it's your call after we

14  submit our briefs.  Because a lot of this we're not

15  going to offer for any substantive -- complete

16  substantive anyway.  We're only offering it for conduct.

17  So I would -- I would avoid creating a bright line based

18  on calling these things out at this time, but I would

19  think it's right to call out that group of evidence.

20         THE COURT:  Okay.  Let's make sure I'm tracking

21  here and I'll offer a couple of observations then ask

22  for a response from each side in turn.  What I hear

23  Mr. Casmere suggesting is that within these articles

24  there are certain statements, and of course statements

25  is a word that 803.18 uses that the parties agree would

come in under that rule because, as the rule explains,
it's a statement called to the attention of an expert
witness, either relied upon or used in cross and so
forth.  The rule speaks for itself.  So the statements
can be put in in that fashion.  It sounds like this is
being suggested as a convenience to the Court.

I'm also inferring that the entire article will be
put into evidence; in fact, I think most of them have.
It's a fairly discrete universe here.  I'd be surprised
if there were more than a dozen articles that either
side referred to here.  Mr. McCoy, to the extent that
you're contending that the Court should consider other
parts or perhaps the whole article or piece as
substantive evidence, you certainly can argue that.
You're not foreclosed from arguing that because I don't
think that's Mr. Casmere's point.  I think he's just
saying these are the parts that we agree the Court can
consider under 803.18.  We don't agree with the rest.
But certainly he cannot foreclose you from arguing that
I should consider it.

Mr. Casmere, is that a fair summarization or
characterization of where we find ourselves?  And if
not, please correct me.

MR. CASMERE:  It is for the most part, Your
Honor, with the -- I guess -- you know, my point really

1   is that if the witness were on the stand, we wouldn't

2   sit here and read him the entire article.  We would read

3   the statement.  So I think that captures it.

4       The one wrinkle here is, for instance, the

5   materials that they want to offer as "803.18" for

6   Mr. Kenoyer.  Our objection is that he's not an expert

7   that can reasonably rely on anything.  So there's that

8   wrinkle too.  But I think we're all clear on that part.

9           THE COURT:  Sure.  Well, that's a bigger

10  problem than just 803.18, isn't it?

11          MR. CASMERE:  Right.  Yes, it is.

12          THE COURT:  And there's kind of a fork in the

13  road there where if the Court takes the defendant's

14  fork, we never get there.

15          MR. CASMERE:  Right.

16          THE COURT:  So I'm sure that will be a whole

17  subsection of the brief.

18          MR. CASMERE:  Yes.  But I think you've captured

19  it otherwise perfectly, Your Honor, from my perspective.

20          THE COURT:  Probably the best shot I'll have

21  all day.  But it's still early.  Mr. McCoy, did I

22  correctly characterize what you want to see happen here?

23          MR. MCCOY:  Right; right.  Essentially that's

24  right.  It's up to Your Honor how to consider these.

25          THE COURT:  And that's the --

1          MR. MCCOY:  But we'll call them out what we
2    think fall into that category.
3          THE COURT:  Sure.  And that's the procedure
4    that we've all agreed to for all of this.  Again, the
5    point of the bench trial was to make the record, and as
6    the parties noted and as the Court noted along the way,
7    mainly as placeholders, a lot of what came in may be
8    stricken.  It may go back out.  The Court may decide
9    that it's not admissible or that it shouldn't be used.
10   But that's something both sides will have the
11   opportunity to brief as procedural and evidentiary
12   matters, along with and perhaps separately from your
13   arguments as to what the Court ought to conclude in
14   terms of liability on any of the claims here.  I expect
15   long thorough briefs from both sides on all of these
16   issues:  Procedural, evidentiary, substantive, damages.
17   This is what you asked for, so I'm giving it to you.  I
18   want to be as accommodating as I can.
19        So that said, the floor is still yours.
20   Mr. Casmere, I'll give you guys some time to do that.
21   What I'd like to do before we adjourn now is set
22   briefing schedules.  But anything else then that you
23   either wanted to tell the Court or ask the Court
24   procedurally or substantively before I check in with
25   Mr. McCoy?

1          MR. MCCOY:  And --

2          THE COURT:  The floor is still his.  You'll get

3    your chance.

4          MR. CASMERE:  Can I pass the conch to

5    Mr. Watson?  To use a Lord of the Flies reference.

6          THE COURT:  I didn't realize we were in the

7    Lord of the Flies.  Okay.

8          MR. WATSON:  The other issue we had yesterday

9    and we left to confer over and bring up today were

10   deposition designations, and Owens-Illinois is in a

11   position to tender to the Court the copy of its

12   deposition designations.  We've conferred with Mr. McCoy

13   and Mr. Hausman last night about any potential

14   disclosure issues.  I sent the identifying information

15   for these disclosures and witnesses.  That's where

16   Owens-Illinois is, that's where plaintiff is, and that's

17   the floor for Mr. McCoy at this point.

18         THE COURT:  That's a clean segue.  Mr. McCoy,

19   the floor is yours.

20         MR. MCCOY:  Right.  So there are disputes about

21   the disclosure on about, I don't know, four, five, six

22   witnesses, something like that.

23         THE COURT:  Let me interrupt.  I need

24   clarification.  When you two use the term disclosure,

25   how are you using the term?

1        MR. MCCOY:  Rule 26.

2        MR. WATSON:  Your Honor, in terms of

3   Owens-Illinois's position on disclosure, these witnesses

4   were identified in the discovery record in 26(a)

5   disclosures in responses to interrogatory discovery.

6   And then finally in our 26(a)(3), identified as

7   witnesses whose testimony we would offer.

8        THE COURT:  So the argument is over whether

9   there has been sandbagging here essentially.

10       MR. MCCOY:  I wouldn't call it that, it's just

11  nondisclosure.  But it does make a difference.  There's

12  quite a few witnesses.  And what we had to do was we

13  spent a fair amount of time making what I would call

14  contingent designations on these people, the classic

15  example being the co-worker who testified in four or

16  five cases where we did have transcripts.  We didn't

17  have, like I said, any of Mr. Suoja's past transcripts

18  nor did OI.  But there are several people who we did

19  have four or five old transcripts on and then they made

20  designations from one of those transcripts and we went

21  to other transcripts and we came up with these

22  contingent designations.

23       But our position fundamentally is that they're

24  either on the list before the 26(a)(3) or it's not

25  proper to add somebody at the 26(a)(3) stage which comes

11

1  right before the trial after discovery is closed that

2  wasn't there earlier.

3          THE COURT:  I understand or I think I

4  understand the dispute here, and let me suggest this as

5  a dispute that can be handled in the briefing.  In other

6  words, sticking to our plan of putting it all in front

7  of the Court and then sifting and winnowing through

8  arguments in the briefs, the Court can then decide

9  whether there's been a 26(a)(1) or a 26(a)(3) violation.

10  If so, whether the Court then should exclude an entire

11  transcript or portions, whatever is appropriate under

12  the circumstances.  But it's not something we have to

13  decide today.  It's not something -- it's not a decision

14  the Court should make or I think is in a position to

15  make in terms of what should be submitted.

16      Mr. McCoy, does that make sense to you?

17          MR. MCCOY:  Judge, like I say, that's the

18  contingency we prepared for.  All I can say is our

19  abilities to prepare were limited by the disclosure

20  issue, but we did our best and we'll put it in the

21  briefing.  So if that's the way to deal with it, then

22  we'll do what we have on a contingent basis.  But our

23  main position is that --

24          THE COURT:  Sure.

25          MR. MCCOY:  -- the first line is that these

1  people were not disclosed.  So I just want to make that

2  clear.  We're not in any way saying that we were able to

3  successfully find testimony from witnesses from other

4  depositions where we weren't counsel; the Suoja case

5  wasn't an issue; the Badger job site wasn't an issue; OI

6  wasn't an issue.  I mean there's -- there's a lot of

7  bits and pieces.

8       THE COURT:  Okay.  And you flag a legitimate

9  concern for both sides here, the contingencies of how

10 are you going to argue when you don't know how the Court

11 is going to rule on the evidence.

12      MR. MCCOY:  We can manage is what I'm saying.

13 We'll do with what we've got to do.

14      THE COURT:  Well, I'll offer this as a

15 suggestion.  I think it increases the work.  I don't

16 think you're going to want this.  But if both sides

17 agree that you'd like two rounds of briefing, one, to

18 get the evidentiary rulings, and then two, to get the

19 substantive rulings, I'll do that.  But if you want to

20 combine them so you say in the event the Court accepts

21 this we think you ought to do "X"; in the event the

22 Court does not accept this evidence, then the Court

23 should do "Y," I can do it that way too.

24      MR. MCCOY:  I think consistent with how you've

25 been conducting the trial, the live portion of the trial

1    and how it got this set up, it just would be -- you want

2    to hear it and then you're going to decide whether it

3    counts or not.  So I think that same approach should be

4    followed at this stage even though I don't like it

5    because it's a lot of extra work.

6           THE COURT:  Right.  But I don't think that

7    addresses the suggestion I'm making.

8           MR. MCCOY:  What I'm saying is I would go with

9    the one briefing, making it simpler on Your Honor.  I

10   think --

11          THE COURT:  Don't worry about my workload.  I

12   will take as much time as I need to to give you guys a

13   fair decision.  Mr. Watson.

14          MR. WATSON:  Let me answer both of the Court's

15   questions.  The first is whether we should deal with it

16   in the briefing and the plaintiff wants to argue that

17   there's been a violation of 26 and sandbagging.  We'll

18   deal with it in the briefing.

19      The second part we can argue in the alternative,

20   and having one set of briefs is fine for Owens-Illinois.

21          THE COURT:  Well then you both agree on that.

22   I didn't want to increase anybody's workload, but like I

23   said, I'm trying to be accommodating.  So we'll stick

24   with the original plan of one set of briefing.  Parties

25   argue contingently or conditionally.  The permutations

1  perhaps are quantifiable, but it would be a high order

2  of magnitude.  We won't go there today.

3      So understanding that you guys want a little bit of

4  time to do the 803.18 designations, I'll give you that.

5  Are we in a position now to talk about a briefing

6  schedule or are there other issues that either side

7  wanted to bring to the Court's attention before we

8  descend into those particulars?  Mr. Casmere.

9          MR. CASMERE:  From Owens-Illinois's

10 perspective, we are in a position to talk about the

11 briefing schedule.  I do at some point need to

12 officially reassert a motion for a directed verdict at

13 the close of the defense case and at the close of all

14 the evidence.

15         THE COURT:  Sure.  You hold that thought, offer

16 it after the parties have tendered the exhibit lists.

17 Okay?  So when we reconvene later this morning

18 hopefully, I'll give you guys as much time as you need,

19 then renew the motion at that time.

20         MR. CASMERE:  Yes, sir.

21         THE COURT:  Okay.  Mr. McCoy, anything else

22 substantively before we start talking about a briefing

23 schedule?

24         MR. MCCOY:  Just one question on the -- how

25 these are to be tendered, the exhibits and the

1    deposition testimony that hasn't been presented.  So we

2    have a list like -- of our exhibits.  Owens-Illinois I

3    think has their list.  And then deposition designations.

4    We have our list of what we've designated.  They have

5    their lists, I think.  And then the objection -- the

6    exhibits are all marked to show what the objections are.

7    Like they're not too pretty at this stage, but we can

8    make them more pretty.  But I think it would be faster

9    to use this one today and then it won't take us too long

10   to make these adjustments, I think an hour or less.  And

11   -- well anyway, that's what we have to present for these

12   deposition designations or past testimony designations

13   and our exhibits and our objections on OI's exhibits.

14        THE COURT:  Okay.  And let me just offer a

15   quick response and then I think Mr. Watson has some

16   input to offer.  I don't care how pretty your

17   submissions are today from either side.  My goal is that

18   both sides walk out of the courthouse today knowing what

19   the record is.  The record is going to be bigger than

20   what the Court ultimately considers pursuant to what

21   we've already talked about again this morning, but I

22   don't want anyone to worry about something coming up in

23   a brief that was not presented to the Court before this

24   hearing ends today.  And that would be the continued

25   hearing when you come back on the 803.18 presentations.

1  In other words, I do want there to be a clean close of

2  the evidence in this case.

3      So as long as both sides are clear on what has been

4  tendered to the Court and accepted by the Court today, I

5  don't care what it looks like.  I don't care if you

6  handwrite stuff in the margins as long as both sides

7  understand okay, this is what we've got and this is all

8  we've got and now we start the briefing process.

9      Second point.  At the outset, I did tell the

10 parties that I don't want to have to dig through

11 transcripts for the excerpts.  I'm not trying to make

12 more work for anyone.  I would be okay with highlighted

13 versions.  Now, if it's easier just to retype what you

14 want the Court to consider into your briefs or into a

15 separate supplement or addendum to the brief as an

16 exhibit, that's okay.  But I don't want and I will not

17 accept simply a citation to a brief and page numbers.

18 I'm not going to go back and do the hunting for you.

19 But if you say okay, here's another copy of the

20 deposition and the highlighted portions are what we want

21 you to consider, I can flip through that.

22      Again, I'm not going to micromanage this, but I

23 need one or the other in terms of what you want the

24 Court to consider.  Mr. McCoy, it looks like you still

25 want to be heard or you just --

1         MR. MCCOY:  I'm just thinking at what Your

2    Honor said, most all of which I agree with.  Just

3    clarification.  So on the depositions though, the past

4    testimony, we do need to have the page and lines fixed

5    today, and I think everybody has done that, because that

6    makes differences as to what we do and they do and then

7    counters.  And that's it.

8         THE COURT:  Sure.

9         MR. MCCOY:  That should be it.

10        THE COURT:  I want the designations clear today

11   for the attorneys' benefit.  That's part of what I just

12   said in terms of closing the record.  But I don't need

13   the format done today that I want ultimately with the

14   briefing.  Okay?  That's for later.  That's when I want

15   it to be prettier.  Today doesn't have to be pretty,

16   today just has to be clear.

17        MR. MCCOY:  So actually, from what I'm

18   gathering then, you want our page and lines on past

19   testimony and our list of exhibits, and then everything

20   else really goes to the briefing consistent with

21   everything we've been discussing here.

22        THE COURT:  I think that's an accurate

23   characterization of what the Court is looking for today.

24   Mr. Watson?

25        MR. WATSON:  I was just going to say it sounds

1   like we're at a point where the parties can confer,

2   identify those documents, and tender to the Court any

3   written submission or oral submissions and take the

4   Court's lead here in order to wrap this up this morning.

5           THE COURT:  Sure.  Exactly right.  So let's

6   talk about briefing.  Mr. McCoy, I don't know who's

7   going to be doing most of the typing.  I'm guessing this

8   is where Mr. Hausman gets to shine.  We've got major

9   winter holidays coming up.  I'm not going to jam anyone

10  up.  This case has been pending since 1999 in one form

11  or another.

12      You tell me.  How much time do you want to do this?

13  And there's a lot to be done.  I understand that.  So

14  any reasonable offer, any date before the autumnal

15  equinox of 2016 would be acceptable to the Court.

16          MR. MCCOY:  Given the holidays, I'll be there

17  and Dan will probably be there a lot, but most everybody

18  else won't for about two weeks almost in there because

19  of whatever.  And this is intense, for sure it will be,

20  and we want to make it, like I say, very easy for Your

21  Honor because it's very -- there's a lot of things.  So

22  I'm thinking then probably, I would say, about 45 days,

23  which is really more like about 30.

24          THE COURT:  What if I give you until the end of

25  January?  That's more time than you're asking for, but

1  that will give you 45 working days and give you the

2  holidays off.

3  　　　　MR. MCCOY:  I want to make sure my client is

4  okay with that long.  So let me ask him what he thinks.

5  He asked me if that's enough time.  I think that is

6  enough time.  So --

7  　　　　THE COURT:  I trust your judgment on that.  So

8  the last workday of January is January 29.  That's a

9  Friday.  And let's be clear, Mr. McCoy.  I'm not going

10 to rush anybody, but that's why I want to build in the

11 friction in the margins today.  You think you need 30.

12 You asked for 45 because of the holidays.  I'm giving

13 you about 60.  That's it.  Don't come to the Court on

14 January 27 and say I need three more weeks because I'll

15 say no.  Understood?

16 　　　　MR. MCCOY:  (Nods)

17 　　　　THE COURT:  I'll take your nodding head as a

18 yes.

19 　　　　MR. MCCOY:  Yes.  Too tired to keep it up here

20 this morning.  Got my shoulder down.  Prop me up.

21 　　　　THE COURT:  There's a coffee shop a block away.

22 You guys go get your expresso as soon as we're done

23 here.

24 　　　　MR. MCCOY:  That's not going to work.

25 　　　　THE COURT:  All right.  Mr. Casmere,

1   Mr. Watson, same deal.  I'll accept any reasonable

2   suggestion.

3        MR. CASMERE:  I'm deferring to Mr. Watson at

4   the moment, Your Honor.  There's a certain synergy with

5   selecting the Ides of March, Your Honor, so we'll take

6   March 15th.

7        THE COURT:  A Tuesday.  If that has metaphoric

8   significance to your client, that's fine.  We've already

9   invoked the Lord of the Flies, let's go with Julius

10  Caesar.  I don't know what else we can add to great

11  works of literature.

12       MR. CASMERE:  Feeling literary this morning,

13  Your Honor.

14       THE COURT:  March 15 for the response.  I think

15  you guys understand you picked it, you live with it.

16  Okay?

17       MR. CASMERE:  Yes, sir.

18       THE COURT:  Plaintiff gets a reply as the party

19  with the burden here.  If I give you four more weeks

20  after the 15th to -- we could go to April 15, tax day.

21  That has metaphoric significant to some people.

22       MR. MCCOY:  Let me check the trial schedule in

23  there, Judge, just to make sure.  We might have one

24  right around that time.  But not here.  It's an Eastern

25  District.  We have a trial March 28.

1          THE COURT:  Okay.

2          MR. MCCOY:  Firm date.  Judge Randa over in the

3   Eastern District.

4          THE COURT:  So you'll be in trial prep mode

5   until then.  How long is that trial predicted to go?

6          MR. MCCOY:  That's about a two-weeker.

7          THE COURT:  Really.

8          MR. MCCOY:  Hopefully less.  Yes, I mean I'd

9   love them all to be like this, two days.  But four days

10  with the deps probably.  But yeah.  That's the hitch on

11  that.

12         THE COURT:  So you'll be in trial the week of

13  March 28 through April 8 give or take.

14         MR. MCCOY:  Yeah.  Not longer than that.

15  Probably a day or two less.

16         THE COURT:  Well, there's a couple ways we

17  can --

18         MR. MCCOY:  We can -- I don't mean to cut you

19  off, Judge, but I'm just thinking we could make it

20  contingent on -- I mean the date could be contingent on

21  whether that trial happens or not for the brief here

22  because if for some reason it did get kicked, which --

23         THE COURT:  But here is another way to approach

24  this that removes any ambiguity.  Notwithstanding the

25  metaphoric power of the Ides of March, I could just give

1  the defendant the benefit of your trial prep time and

2  perhaps require their response by April 1, which perhaps

3  has its own metaphoric value on a completely different

4  level, and then give you until the end of the month to

5  respond.

6           MR. CASMERE:  That's fine with me, Your Honor.

7           THE COURT:  Mr. McCoy, is that acceptable?

8           MR. MCCOY:  My concern on that one would be if

9  it does go to trial and we're not able to start until --

10  I think the reply on this is going to take, like you

11  said, about four weeks because --

12           THE COURT:  Right.  But if you start your trial

13  on March 21.

14           MR. MCCOY:  28.

15           THE COURT:  I'm sorry, March 28.  You'll be

16  done by the 8th.  If you want until May 6, I'll give you

17  until May 6.

18           MR. MCCOY:  Okay.

19           THE COURT:  Like I said, the Court is not in a

20  hurry, and as long as the parties are good with this, I

21  would want to make sure everybody has enough time.  So

22  plaintiff's first submission, which would be briefs on

23  -- a brief on all issues and any supplements that

24  present the evidence in the fashion the Court has

25  requested by January 29.  Defendant's response by April

1.  Plaintiff's reply by May 6, at which point the bench

trial is submitted to the Court for decision.  Okay?

    Mr. McCoy, is that acceptable?

        MR. MCCOY:  Yes.

        THE COURT:  Mr. Casmere, is that acceptable?

        MR. CASMERE:  Yes, Your Honor.

        THE COURT:  Okay.  Then we're done for now.

You guys sort and winnow.  When you're ready, why

doesn't someone just go down to the clerk's office on

the third floor and let our people know that you'd like

to reconvene.  I've got a couple of short matters, one

at 10:30, one at 11:00.  If you're done before then,

great.  If not, the 10:30 is another initial appearance

on an Indictment, so probably by 10:45 that will be

done.  So we'll make it work this morning.  I assume

you'll be ready this morning.  I assume you want to be

on your way home before lunch, but I won't rush you.

Just let us know when you're ready.  Okay?  So we're

adjourned for the time being.

    (Recess              9:40-1:12 p.m.)

        THE COURT:  All right.  Counsel, welcome back.

I'll let you control the input at this point, but I will

note that I've received the handwritten stipulation, and

as our clerk has directed, we would want you to followup

with a captioned document.  But I will read this into

1  the record and obtain the parties' acknowledgement that

2  they have so stipulated.  I'll do that at the

3  appropriate time.

4      I don't know if there are other issues or other

5  explanations you all wanted to make at this point, so

6  let me just check.

7          MR. CASMERE:  No, Your Honor.  I think we can

8  start with that and I'll fill in the details.

9          THE COURT:  Very well.  Then let me just read

10 this into the record.  It is dated December 2, 2015.  It

11 is titled *Stipulation*.  It reads as follows:  "The

12 Cascino Vaughan Law Offices litigation file from the

13 Suoja state court litigation in Dane County, Wisconsin,

14 Case Number 97-CV-2370, was lost and is no longer in the

15 possession of the Cascino Vaughan law offices.  That

16 litigation file was never produced to Owens-Illinois,

17 Inc. or its counsel.

18     Cascino Vaughan did produce the deposition

19 transcript of Harold Haase from the state court

20 litigation and Owens-Illinois was able to obtain some

21 materials that were in the Dane County court file."  And

22 it is signed by Edward Casmere as counsel for

23 Owens-Illinois, Inc. and by Robert G. McCoy as counsel

24 for plaintiff.

25     Mr. McCoy, can you confirm that it is so stipulated

1   by the plaintiffs?

2           MR. MCCOY:  Yes.

3           THE COURT:  All right.  Thank you.  And

4   Mr. Casmere, can you confirm that it is so stipulated by

5   the defendant?

6           MR. CASMERE:  Yes, Your Honor.

7           THE COURT:  All right.  Record made.  Back to

8   you, Mr. Casmere.

9           MR. CASMERE:  We have tendered to the Court a

10  written or typed-up version of the status of all of the

11  exhibits which identify the exhibits that both parties

12  are in agreement on can come into evidence; that the

13  parties have disagreement or objections about, and the

14  803.18 category of documents as well.

15          THE COURT:  Okay.  I have two hard copy

16  documents in front of me, and let me just read the

17  titles and if you need to distinguish between them,

18  please do.  But the one in -- currently in my left hand

19  is *Plaintiff's and Owens-Illinois Exhibits Offered at*

20  *Trial*.  The one in my right hand is *Plaintiff's and*

21  *Owens-Illinois, Inc.'s Designation of Prior Testimony*.

22  Just two pieces of the same -- no.

23          MR. CASMERE:  The one in your left hand, the

24  exhibits at trial is what I just mentioned, the status

25  of the exhibits.

1        THE COURT:  All right.  And there's no dispute

2   about this.

3        MR. CASMERE:  What you have there is what the

4   parties have agreed to and it's signed.

5        MR. MCCOY:  It's got signatures at the end.

6        THE COURT:  Okay.  Well, I'm not trying to make

7   it hard, I want to make sure the record is clear.  Okay.

8   We've got it.

9        MR. CASMERE:  We are done with exhibits as

10  evidence.  The thing -- the document that was in your

11  right hand, Your Honor, is a listing of the deposition

12  designations of both parties, page and line designations

13  that both parties have submitted to the Court, and some

14  of them are contingent on whether the Court accepts

15  pieces of evidence.  All that will be made clear in the

16  briefs.

17       THE COURT:  Understood.

18       MR. CASMERE:  There is one wrinkle in that and

19  that is the deposition designation of Donald Popalisky

20  was a -- from the June 13, 1980, transcript which is a

21  designation that is contingent, made by the plaintiff,

22  on some of Owens-Illinois's designations.  The parties

23  in the room back there did not have the full transcript

24  for that.  I was unable to provide any counters to their

25  transcript, and what we've agreed, if it's okay with the

1  Court, is that within 48 hours I will submit only any

2  counters I want, only from the June 13, 1980,

3  deposition, and Mr. McCoy will have 24 hours after that

4  to submit any further designations only from the June

5  13, 1980, deposition.  Period.

6          THE COURT:  That's absolutely fine with the

7  Court.  But let me just note this:  Today is Wednesday.

8  Your 48 hours will run early afternoon on Friday.  Are

9  we talking 24 hours from then or 24 work hours?  In

10 other words by Monday afternoon?

11         MR. CASMERE:  How about we do this:  By the end

12 of the day on Thursday we will file anything that we

13 want in.  By the end of the day on Friday, plaintiff

14 should file theirs.

15         THE COURT:  Is that acceptable to the

16 plaintiff?

17         MR. MCCOY:  Agreed.

18         THE COURT:  And again, just to be clear, from

19 the Court's perspective, end of the day is 11:59:59.  I

20 hope nobody is up that late, but you've got until then

21 if you need it.

22         MR. CASMERE:  Thank you.  Therefore, we are now

23 done with the deposition designations subject to this

24 one Popalisky, of which I may not have anything.  But

25 that's the only asterisk by these deposition

1    designations.

2              THE COURT:  Understood.

3              MR. CASMERE:  And with that, my understanding

4    is that's all of the evidence in this case, Your Honor.

5              THE COURT:  Okay.  So from the defendant's

6    perspective, in light of these submissions and your

7    explanation, the bench trial evidence is closed.

8    Everybody knows what the universe is.

9              MR. CASMERE:  The defense rests, Your Honor.

10   The evidence is in.  And I, on behalf of Owens-Illinois,

11   would renew our motion for directed verdict after the

12   close of all the evidence pursuant to Rule 50.

13             THE COURT:  Which you are entitled to do.

14             MR. CASMERE:  Our bases will be set forth in

15   the paper.

16             THE COURT:  Understood.  But I just want to

17   confirm with Mr. McCoy on the record that you agree with

18   Mr. Casmere that we now have all of the evidence in, the

19   evidentiary record is closed, and the parties are ready

20   to brief.

21             MR. MCCOY:  That's correct, Judge.

22             THE COURT:  Okay.  So we've got the renewed

23   motion.  As Mr. Casmere acknowledges, that will be

24   subject to the briefing.  I think it all blends.  It's

25   going to become intertwined.  But the Court is not going

1  to do any more work than it has to here.  Actually

2  that's probably not true, we might offer some

3  alternatives, but I want to look at what you give me

4  first.  We've got a fairly long briefing schedule, so

5  we'll be looking at this probably early spring.

6       Okay.  I think we're done.

7           MR. CASMERE:  The last thing, Your Honor, is

8  Owens-Illinois has a copy of its exhibit list and a copy

9  of -- on a flash drive the PDF images of its exhibits

10  that we can tender to the Court so the record is

11  complete on our exhibits.

12          THE COURT:  I will accept that.  Thank you.

13          MR. CASMERE:  Thank you.

14          THE COURT:  All right.  Anything else on behalf

15  of the plaintiff then?

16          MR. MCCOY:  The only thing I can say, Judge, is

17  all our exhibits we had printed out in hard copy and

18  that's -- our PDF set has not been updated to match

19  that.  I mean it's pretty close, but we have hard copies

20  if you want us to tender hard copies, otherwise we'll

21  just tender PDFs later.

22          THE COURT:  PDFs is fine -- are fine.  I assume

23  that this is just a courtesy copy you're giving me,

24  Mr. Casmere?

25          MR. CASMERE:  Yes, Your Honor.

1          THE COURT:  Okay.  I don't require that.  I'm

2    not going to tell plaintiff or plaintiff's attorneys you

3    have to match them.  Okay?  So when you -- my concern

4    today is that you all know what the universe is before

5    you walk out of the courthouse.  And we've accomplished

6    that.

7          In terms of getting PDFs in or perfecting the

8    record in terms of presenting these documents to the

9    court, there's no rush because nobody is going to look

10   at this file until we get at least the first brief and

11   we'll probably wait until we get the second brief and

12   then start looking at it.  When I say we, frankly I

13   don't think the law clerks can help me with this because

14   I'm the fact-finder.  I will be the one who finds the

15   facts and does all the reviewing and I really don't

16   benefit by looking at anything until I have at least one

17   brief in.

18         So, Mr. McCoy, to the extent that you'd like to

19   follow up with PDFs, that's fine, because we all know

20   what the universe is and I'm sure that if you were to

21   step outside the line, I would hear about that.  But I'm

22   not going to look for trouble.

23         MR. MCCOY:  That's fine, and I'm sure we will

24   be following up and we will do that with PDFs.  Let me

25   ask this question though:  Do you want hard copies or do

1  you just want PDFs?

2  THE COURT:  No.  The only judge left in this

3  building who wants hard copies or chambers copies of

4  documents is Judge Crabb.  Everyone else just works

5  straight off the computer.  So I appreciate the offer.

6  I mean I've got it.  I'll take it.  Maybe I'll mark it

7  up.  But I certainly don't require parties to do this

8  for the Court.

9  MR. MCCOY:  Okay.

10  THE COURT:  Does that answer your question?

11  MR. MCCOY:  Well, then we -- do you want -- do

12  you actually want us to tender hard copies?  I mean

13  that's the question.  You're saying you don't need it.

14  THE COURT:  No.  This is done.  I will take it.

15  I may use it.  I may not.  But as long as I've got it,

16  I'll take it upstairs.  But I'm not going to make you

17  guys do the extra effort and it's not like we're keeping

18  score here.  It's not like they get bonus points for

19  giving me a three-ring binder and the plaintiff did not.

20  MR. MCCOY:  Judge, if we can save carrying one

21  box back to our hotel.

22  THE COURT:  Oh, in other words you want me to

23  take the hard copies.  I was misinterpreting the

24  question.  We can -- we can do whatever you want.

25  MR. MCCOY:  Dan Hausman corrects me on that,

1  Judge.  That was a bit of a joke.  He says we've got to

2  keep the hard copies to confirm the PDFs to check them

3  against.  So we'll have to do that.

4         THE COURT:  I'm in receptive mode today.

5  Whatever is fine with you is fine with the Court.  Okay?

6         MR. MCCOY:  Okay.  So we will then be tendering

7  PDFs and that's what I'll do.

8         THE COURT:  Absolutely fine.  All right.  One

9  more time.  Mr. McCoy, are we done with this one for

10  today and are we prepared to adjourn?

11         MR. MCCOY:  Yes, Judge.  For sure.

12         THE COURT:  All right.  Mr. Casmere, same

13  question to you.

14         MR. CASMERE:  Yes, Your Honor.

15         THE COURT:  Then we are done.  I would be

16  remiss if I didn't thank you all for a well tried and

17  quick bench trial.  Obviously the rules were a little

18  different, sort of a cage match I think.  But we got it

19  done.  We got it done in the time frame.  I know you

20  guys worked hard to make it happen and the Court is

21  appreciative of that.  We know that it's not easy to do

22  this, even in front of a judge as opposed to a jury, so

23  I think everybody deserves to be commended for what you

24  did here.

25         With that go forth.  Safe trips home.  I guess

1  you're here tomorrow, aren't you, Mr. McCoy?

2          MR. MCCOY:  I'll be right upstairs.  Different

3  hotel.  Different experts.

4          MR. CASMERE:  Thank you, Your Honor.  Thank you

5  to everyone.

6          THE COURT:  We're done.

7      (Proceedings concluded at 1:24 p.m.)

8

9                        * * * * *

10          I, LYNETTE SWENSON, Certified Realtime and
   Merit Reporter in and for the State of Wisconsin,
11  certify that the foregoing is a true and accurate record
   of the proceedings held on the 2nd day of December 2015
12  before the Honorable Stephen L. Crocker, Magistrate
   Judge for the Western District of Wisconsin, in my
13  presence and reduced to writing in accordance with my
   stenographic notes made at said time and place.
14  Dated this 16th day of December 2015.

15

16                          /s/_____

17                          Lynette Swenson, RMR, CRR
                            Federal Court Reporter

18

19

20

21  The foregoing certification of this transcript does not
   apply to any reproduction of the same by any means
22  unless under the direct control and/or direction of the
   certifying court reporter.

23

24

25