IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

MONTGOMERY DIVISION

| | |
|---|---|
| MONTGOMERY COUNTY BOARD OF EDUCATION, | ) ) ) |
| Plaintiff, | ) C/A NO. 83-V-779-N ) |
| v. | ) ) |
| W. R. GRACE COMPANY, et al., | ) ) |
| Defendants. | ) |

**ANSWERS OF OWENS-ILLINOIS, INC.
TO PLAINTIFF'S INTERROGATORIES**

PRELIMINARY STATEMENT

Some of the events which may be relevant to the matters inquired about by Plaintiffs' Interrogatories apparently occurred more than thirty-five years ago. In addition, more than twenty-five years ago, effective April 30, 1958, Owens-Illinois, Inc. disposed of the business involved in this action by way of sale of that business to Owens-Corning Fiberglas Corporation. Since that time, Owens-Illinois, Inc. has not engaged in any such business. It does not now and it has not since that sale manufactured, distributed or sold any asbestos-containing products. As a result of the foregoing factors, many of the individuals who might have had personal knowledge of the matters to which plaintiffs' interrogatories relate are deceased, or are otherwise unavailable to Owens-Illinois, Inc., and investigations to date indicate that at least some documents which relate to matters inquired about by these interrogatories may have been transferred to Owens-Corning Fiberglas Corporation with the transfer of the business in question in 1958. Owens-Illinois, Inc. is engaged in a continuing investigation in an attempt to locate, confirm the transfer of, or confirm the absence of, such

Attachment 8

documents and is also engaged in a continuing investigation into the matters inquired about in these interrogatories. Unless otherwise stated in an answer to a specific interrogatory, the answers set out hereinafter are limited to the period during which Owens-Illinois, Inc. manufactured asbestos-containing insulation products and to the facilities related to that business. The following is a part of and is incorporated by reference in every answer provided hereinafter:

> This answer is accurate as of the date made. However, Owens-Illinois, Inc.'s investigation is continuing, and Owens-Illinois, Inc. cannot exclude the possibility that it may be able to obtain more complete information or even information which indicates that the answer being supplied is incorrect. Owens-Illinois, Inc. objects to answering this interrogatory in regard to any period of time other than the period during which it engaged in the business involved in this case which ended in mid-1958 or concerning any facility not related to that business, on the basis that any such answer would be irrelevant to the subject matter of the pending litigation, would not be reasonably calculated to lead to the discovery of admissible evidence, and would be burdensome and oppressive.

Furthermore, Owens-Illinois, Inc. objects to the instructions and definitions supplied by plaintiffs with regard to these interrogatories, on the basis that the definitions are overbroad, vague, and often inconsistent with the normal usage and meaning of such words, and the instructions are overbroad, burdensome, and constitute an unreasonable expansion of the interrogatories themselves. Owens-Illinois, Inc. therefore gives notice that it does not consider itself bound by the instructions and definitions propounded by plaintiffs, and instead shall

-2-

A. 8.   (a-d)  Owens-Illinois Glass Company began limited pilot plant operations involving the production of asbestos-containing products in 1943.  It began the manufacture of commercial quantities of "Kaylo" asbestos-containing products in about 1948 and continued such manufacture until about April 30, 1958.  This defendant's asbestos-containing industrial insulation was manufactured in two forms, block and pipe covering.  It was a premolded, rigid product which was not intended or required to be molded or mixed in application.  It was manufactured in standard premolded shapes and sizes intended to minimize cutting of pieces in application.  It appears that the product was applied by methods including glueing, tieing, strapping, or wiring it to pipe.  It appears that a limited amount of its product was cut during application.  Roof deck was intended to be laid on or fastened to building frame members and waterproofed.  Core material was intended to be used as a center layer for fire doors.

(e-f)  This defendant's manufacturing plants were located in Berlin, New Jersey and Sayreville, New Jersey.  The Berlin plant was in operation from approximately 1943 until on or about April 30, 1958.  The Sayreville plant was in operation from February, 1948 until about April 30, 1953.

(g)  This defendant objects to this interrogatory on the basis that it seeks information which is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

(h)  W. G. Hazard was employed as this defendant's industrial hygienist during the period of time in which this defendant engaged in the manufacture, sale and distribution of asbestos-containing products.  Mr. Hazard has retired from this defendant's employ and currently resides at 3609 Mapleway Drive, Toledo, Ohio 43614.

(i-j)  This defendant ceased the manufacture, sale and distribution of asbestos-containing products in 1958.  Its

-6-

investigation as to the composition of each such product, including the type of asbestos contained therein (i.e., amosite or chrysotile) and the quantitative percentage of asbestos in each product, is continuing, although defendant now believes that its asbestos-containing products were hydrous calcium silicates containing between 13% and 25% asbestos. Chrysotile asbestos was the primary type apparently used. Amosite was used to a lesser extent.

    (k)  This defendant believes that the chrysotile which was the primary type of asbestos used in its insulation products was imported from Canada, and that at least some of this chrysotile was purchased from Canadian Johns-Manville, Ltd. This defendant further believes that the amosite asbestos used in some of its insulation products was imported from South Africa and at least a portion of such amosite was purchased from the African and European Agencies. This defendant ceased the manufacture, sale and distribution of asbestos-containing products in 1958 and does not have information sufficient to further answer this interrogatory. Its investigation as to the source or sources from which mined asbestos was obtained is continuing.

    (l)  This defendant ceased the manufacture, sale and distribution of asbestos-containing products in 1958. Its investigation as to the physical appearance of each such product is continuing. This defendant now believes that Kaylo and Kaylo-20 were premolded, rigid products, and were manufactured in two forms, block and pipe covering. Kaylo was white or off-white in color, and Kaylo-20 was pinkish in color.

    (m)  This defendant believes that some of its asbestos-containing insulation products were packaged in corrugated cartons with the trademark Kaylo on the carton. This defendant ceased the manufacture, sale and distribution of asbestos-containing products in 1958 and does not have information sufficient to further answer this interrogatory. Its investigation into the subject matter referred to in this interrogatory is continuing.

    (n)  Kaylo and Kaylo-20.

-7-

Q. 15. Identify any instructions, directions, technical bulletins, material data sheets, or other documents provided to distributors, contractors, supply houses, sales persons, or building owners pertaining to the application, maintenance, or repair of each asbestos construction product ever manufactured or distributed by you.

A. 15. This defendant ceased the manufacture, sale and distribution of asbestos-containing products in 1958. This defendant has not found information in its records sufficient to enable it to answer this interrogatory. Its investigation into the subject matter referred to in this interrogatory is continuing.

Q. 16. Identify all of your chief medical officers from 1930 until the present time, listing the periods of time each such person was employed in that capacity and the facility or office to which the person was assigned. If you did not have a medical officer, please identify the person or persons who performed that function and the dates thereof.

A. 16. Charles Shook, M.D., deceased, employed from March 25, 1946 until June 30, 1960; Glenn S. Usher, M.D., 4254 Bonnie Brook, Toledo, Ohio, employed from April 1, 1961 until December 31, 1969; George N. Bates, M.D., 2102 Shenandoah, Toledo, Ohio, employed March 15, 1971 until present. Dr. Shook was the Medical Director during the period in which this defendant manufactured, sold or distributed asbestos-containing products.

Q. 17. Identify all persons employed by you from 1930 until the present time who functioned as industrial hygienists, listing the periods of time each such person was employed in that capacity and the facility or office to which the person was assigned. As used in this Interrogatory, an industrial hygienist is one who performs engineering or health studies to identify and

-14-

Each of the objections noted in the foregoing instrument are hereby signed by the undersigned attorneys for defendant Owens-Illinois, Inc.

*[signature: Bert S. Nettles]*

BERT S. NETTLES
REGGIE COPELAND JR.
FORREST S. LATTA
Attorneys for Defendant Owens-Illinois, Inc.

OF COUNSEL:

NETTLES, BARKER & JANECKY
3311 First National Bank Building
Post Office Box 2987
Mobile, Alabama 36652

## CERTIFICATE OF SERVICE

This is to certify that I have on this 31st day of October, 1983, served all counsel of record by depositing a copy of the foregoing in the United States mail, properly addressed with adequate postage thereon.

*[signature: Bert S. Nettles]*

BERT S. NETTLES